# EXHIBIT A

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☐ EEOC

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Cheryl Butler | (713) 828-3958 | 1/27/1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3341 Charleston Street | Houston, TX 77021 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Southern Methodist University (hereinafter "SMU") | 500+ | (214) 768-3233 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 750132 | Dallas, TX 75275 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE ☐ COLOR [X] SEX ☐ RELIGION ☐ NATIONAL ORIGIN

[X] RETALIATION [X] AGE [X] DISABILITY ☐ GENETIC INFORMATION

[X] OTHER *(Specify)* FMLA Interference and Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| **August 2011** | **March 2, 2017** |

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am currently employed at the Dedman School of Law at Southern Methodist University ("SMU") as an Assistant Professor of Law. I began working at SMU in August of 2011. At all times, before my complaints of race, gender, and disability discrimination, I was on track for the award of tenure and promotion to the rank of Associate Professor. On May 27, 2016, SMU denied my application for promotion and tenure.

As previously noted, prior to my complaints of discrimination, I was on track for tenure. Under SMU's policies and procedures, 18 months prior to the tenure vote, each professor that will be considered for tenure undergoes a "third year review." This review is the first step in the tenure process and a professor's contract renewal is evidence that the candidate is making significant progress toward tenure. I received my third year review in Spring of 2014. At that time, the committee concluded that "I was on track for promotion and tenure." I had an outstanding level of achievement in legal scholarship; satisfactory teaching evaluations; and extraordinary evidence of service and collegial support—as documented in my review.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

Melissa Avila

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Cheryl Butler

3/2/17 Cheryl Butler

Date Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

3/2/17

MELISSA A. AVILA
Notary Public, State of Texas
Comm. Expires 08-16-2020
Notary ID 126255531

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☐ EEOC | |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

However, throughout my time at SMU, I have been the victim of race, gender and disability discrimination, as well as retaliation. The semester before I was up for tenure vote, I initiated formal complaints to the law dean, tenure committee, and the SMU Office of Institutional Equity about discrimination at work. For example, I complained about the apparent difference in the way that African American employees were treated and promoted at the law school. In addition, I complained of SMU's failure to consider me and promote me to the Director of Center for Human Trafficking—a new position created by the law school. Specifically, the law school received a million-dollar gift to create a Center and Clinic for Human Trafficking.

While SMU reported that I was denied tenure based on "teaching," several faculty members who voted on my tenure application state that this proffered reason is mere pretext and that tenure was denied as part of a pattern and practice of race, gender and disability discrimination and in retaliation for my complaints of discrimination. My tenure committee chair, Professor Roy Anderson, told me that "the university was no longer invested in me because I complained about discrimination." During an internal investigation, Professor Anderson reportedly denied making this statement. However, our conversations about SMU's plan to retaliate – and what if anything I could do to fight it - were recorded. Additionally, other faculty members corroborate his repeated claim that SMU has a policy and practice of terminating faculty who file discrimination complaints. "You could never come back here after what you have done [complain about discrimination]," a supportive colleague warned me. Another warned me that appealing the denial of tenure was a waste of time because "as we told you before, SMU does not keep people who complain about discrimination…" My colleagues also confirm on tape that SMU administrators intentionally sabotaged my efforts to "stop the tenure clock" for medical reasons, i.e., delay the tenure evaluation process and vote at time when I was not battling ADA and FMLA protected-illness. The night before the tenure vote, a member of the tenure committee revealed that Dean Collins had not told the faculty that I was granted FMLA leave. Instead, Dean Collins and others had convinced the faculty that "I lied" about being sick and entitled to ADA or FMLA protection. Members of the committee agreed that the vote should be stopped so that "[they] could investigate whether [I was] lying," but there was nothing they could do because "their hands were tied" by the administration. According to recorded conversations with law faculty, Dean Collins led a "witch-hunt" in which she fraudulently convinced the law faculty, SMU President Gerald Turner and the SMU Board of Trustees that I "was lying about needing ADA or FMLA protection because I was not really sick. And, even though an internal investigation of the complaints had not been completed, Professor Anderson, at the direction of Dean Jennifer Collins, Interim Provost Harold Stanley and Provost Julie Forrester, distributed a tenure report recommending the denial of tenure because "I lied" about being eligible for ADA or FMLA, and I lied about other discrimination at the law school."

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

3/2/17 — Cheryl Butler

Date — *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

Melissa Avila

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Cheryl Butler

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

3/2/17

MELISSA A. AVILA
Notary Public, State of Texas
Comm. Expires 08-16-2020
Notary ID 126255631

**ATTACHMENT TO CHARGE OF DISCRIMINATION FOR CHERYL BUTLER**

Professor Anderson's tenure report recommends that tenure be denied because "Professor Butler complained so much about discrimination that Dean Collins could not run the law school."

SMU has also violated federal anti-discrimination law as well as its own Bylaws by (1) including discriminatory content in my tenure report; (2) using the tenure vote meeting to disparage me for complaining about discrimination, attack the merits of my discrimination complaints instead of allowing the Office of Institutional Equity to conduct an internal investigation; and secretly denying tenure on the grounds that they were annoyed by the discrimination complaints; and then, (2) cover up the discrimination by intimidating faculty into being silent about the discussion and (3) cover up by fraudulently deleting the content before submitting the report for litigation. The closed faculty tenure vote meeting became a minority candidate's worst nightmare—an outrageous free for all in which the faculty deprived me of my due process contractual rights and ADA and FMLA protection by accusing me of faking being sick (even though SMU had granted FMLA leave and was re-evaluating my application for ADA accommodation), "lying" about "other things" still not disclosed to me, and otherwise defaming my character. Further, they determined that even if I were entitled to FMLA protection, I complained too much about discrimination, such that Dean Collins could not run her law school. Thus, the faculty who engaged in discrimination and lied about it, somehow did not undermine the Dean's ability to run the law school; but, complaining about the discrimination was fatal. Several colleagues stated the tenure committee also wrote these accusations into the tenure report as intentional discrimination and retaliation. "They wrote these things into the tenure report with your complaints about discrimination in mind. They knew they could not deny tenure based on poor teaching evaluations because white male candidates also have bad evaluations. So, they put that paragraph in there to make sure [they could secure a negative vote.]."

SMU also discriminated by subjecting me to discriminatory tenure standards and an alternative tenure process as compared to other candidates. As just one of many examples, the two male candidates who were granted tenure were recommended for tenure by a committee which had years to observe their teaching skills. In contrast, my tenure chair Roy Anderson complained on record that his committee worked at a disadvantage, having been assigned only a few weeks before the scheduled tenure vote and only having a semester in which my family members and I battled ADA/FMLA illness while being evaluated. SMU also subjected me to higher standards, making me write longer articles with more prestigious placements to be considered for tenure. SMU downplayed these accomplishments, refused to allow me to include favorable reviews of teaching in my dossier and fraudulently induced other professors to write negative assessments of my teaching. According to my tenure chair, SMU also falsified student evaluations to make them appear more negative. SMU deprived me of the opportunity to appeal the denial of tenure outside of an ADA leave period and failed to provide a timely investigation of my complaints of discrimination in the tenure process.

SMU also created a hostile work environment in response to my request for ADA accommodation and FMLA protection. Several administrators intentionally sabotaged and denied my request for an ADA accommodation based on disability and asthma. SMU engaged

in associational ADA discrimination by making disparaging comments about an immediately family member's ADA disability and need for chronic hospitalization and medical treatment. When I developed depression and stress induced asthma attacks due to caregiving and harassment from work, I requested several ADA accommodations and FMLA leave. Each request for accommodation or designation BEFORE the end of the tenure evaluation period was sabotaged so that I would not have a legitimate legal right to delay the tenure vote or discount negative teaching evaluations based on ADA or FMLA. The only requests for leave that were granted were for AFTER the faculty voted to deny tenure. SMU acknowledged that, as a matter of policy, that a professor would be eligible for FMLA leave or ADA accommodation in the form of a Stop the Tenure Clock accommodation - – a contractual agreement to defer the vote on tenure for a semester or year later so that the candidate could be evaluated while free of illness. However, SMU administrators then engaged in a concerted effort to fraudulently sabotage my requests for the ADA accommodation and FMLA leave. For example, Dean Collins and former-Provost Harold Stanley failed to follow ADA law and SMU policy by evaluating and denying my request for a delayed tenure vote instead of directing me to the ADA coordinator who, by her own admission, was the sole person assigned to evaluate ADA requests. Provost Stanley hazed me with a discriminatory 72 hour deadline for the submission of medical records to him, violated my privacy rights under the ADA, FMLA and HIPAA by judging the medical records himself and then denied the ADA accommodation on the grounds that I wanted to continue working next semester (in other words, he did not see a need for an accommodation at work if I wasn't so sick that I could still work a little.) On tape, SMU ADA coordinator, Carolyn Hernandez, told me Dean Collins and Provost Stanley had violated the ADA and SMU policy in handling my accommodation request. However, at the urging of Dean Collins, Ms. Hernandez sent me several emails denying that she made the statements. Later, even though I stated that I had evidence of Ms. Hernandez' own hand in this fraud and cover-up, SMU assigned Ms. Hernandez as the internal investigator of my ADA discrimination claim, even though, as I protested, it is discriminatory to allow the accused to investigate itself. For over a year, Ms. Hernandez also served as henchmen, denying my subsequent requests for reasonable accommodation, failing to engage in the interactive process – or only granting accommodations after long protracted hostile fights on email (I would describe her response to my requests for accommodation as "harassment" more than "engaging in the interactive process.") SMU discriminated by compelling me by treating me less favorably than other professors with disability including my Roy Anderson, Beth Thornburg, and my late dear friend, Sarah Fran, all three who battled cancer, or tenure committee member Professor Anthony Colangelo, who yelled at me in meetings and has otherwise engaged in misconduct at work while battling alcoholism.

SMU also engaged in ADA discrimination and harassment by refusing to provide an opportunity to appeal the denial of tenure outside of the job protected leave of absence that the university itself granted. SMU's FMLA coordinator also engaged in a pattern of interference and obstruction that curiously mirrored the missteps in the handling of my ADA claim. FMLA coordinator Rhonda Adams likewise intentionally sabotaged my application for FMLA retroactive designation and FMLA leave by (1) claiming that she could evaluate my ADA claim via FMLA paperwork but then rejected the claim; (2) denying my request for intermittent leave by stating on letterhead that Dean Collins and Associate Dean Beth Thornburg are correct that the FMLA does not give me a right to emergency intermittent leave even though this is a gross misstatement of the law; (3) intentionally delaying the grant of FMLA leave and otherwise

sabotaging the application; (4) making false statements in writing about my FMLA application that were inconsistent with tape recorded conversations.

After SMU denied tenure, SMU refused to conduct a timely and fair internal investigation of discrimination in the tenure process. SMU refused to consider evidence of discrimination, including tape recordings, BEFORE tenure was denied. SMU refuses to turn over the tenure report even though I allege that it contains discriminatory content in violation of Title VII; ADA and the FMLA; SMU only allowed administrators accused of discrimination to conduct the investigation and rejected my requests to have an independent faculty panel review my complaint as allowed for other professors under the SMU bylaws; SMU refused to interview key witnesses; for example, SMU issued a determination letter that there was no discrimination against African American female professors but refused to interview Professor Weaver – the only Black woman present at the tenure vote and privy to the tenure report. Colleagues told me to stop writing SMU to demand an investigation because, in violation of privacy, administrators were disclosing my confidential complaints to antagonize the faculty. Others told me that SMU was not going to conduct a fair investigation because Dean Collins had told the Office of Institutional Equity to make false statements and to not call key witnesses. The faculty members who did talk to me, including Tenure Chair Roy Anderson, are audibly intimidated and afraid on tape, expressing worries that Dean Collins or other administrators will retaliate against them if they are caught telling me about the discrimination or otherwise trying to help me fight for my right to tenure and promotion.

The rejection of my application for tenure and promotion is evidence of a hostile work environment against African American tenured and tenure-track professors at SMU. For almost 90 years, SMU refused to promote or grant tenure to Black women on the law faculty until Spring 2015, when Professor Jessica Dixon Weaver was finally granted tenure. However, notwithstanding this milestone, Professor Weaver and I continued to be subjected to discrimination and retaliation at the Law School. Even before I was denied tenure and promotion, SMU's current law dean, Jennifer Collins, and its former law deans, Dean Paul Rogers and Interim Dean Julie Forrester subjected Professor Weaver and/or me to intimidation, harassment, and retaliation for challenging SMU's discriminatory hiring practices and hostile work environment. Examples of SMU's hostile work environment based on race include: (1) failing to provide the same terms and conditions of employment provided to male professors; (2) failing to protect me and Professor Weaver from abusive students, including physical harassment in violation of Title IX; (3) accusing me of being a "bad colleague" and "bad mother" because I did not live in the same city as my husband and children; (4) refusing to promote Professor Weaver or me to serve as Directors of Law Centers and instead hiring less qualified White female candidates and also engaging in threats or retaliation to silence such dissent; (5) engaging in a campaign of public mockery, shaming, and defamation for complaining about race and disability discrimination; and (6) submitting a tenure report that rebukes me outright for complaining about discrimination.

SMU denied tenure even though my tenure chairs and several other recommenders stated that I met the standards for tenure or could do so with a reasonable accommodation or FMLA leave. Tenure Chair Joe Norton wrote that "I met the standards for tenure and that I am a good person." Indeed, I obtained my Bachelor's degree from Harvard University and my Juris

Doctorate degree for New York University School of Law. Prior to joining SMU, I worked as the Executive Director and General Counsel for Top Teens of America, Inc. in Houston, Texas. I have also worked at numerous other leading advocacy organizations. Further, my legal experience spans from working as an associate from major law firms including Debevoise & Plimpton and Cleary Gottlieb Steen & Hamilton to clerking for a United States District Judge in the District of Columbia. At SMU, I developed a reputation as a prolific up and coming expert in my field and received outstanding teaching evaluations in most of my classes, with some evaluations suffering in the semesters when my immediate family member or I battled hospitalization and disability. Although another tenure chair Roy Anderson authored a tenure report recommending the denial of tenure, he acknowledges on tape, that I am being targeted for discrimination and retaliation. He states that all of my credentials for tenure are outstanding except the evaluations in one course is mixed. He stated that if I were given an extra semester to teach free of illness and be mentored by a veteran master teacher such as himself, he was more than confident that I could make all corrections and earn tenure. He expressed that I was a collegial friend and he encouraged me to try to get an ADA accommodation. When the administration in turn rejected that request for accommodation, he apologetically informed me that he would have to follow their cue and deny tenure by disparaging my teaching and defaming my character. As a last resort, he pushed me to retain an attorney. Other law professors also fought back under cover, helping me outline the very claims that I make here in this EEOC complaint.

For these reasons, I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 1981, the Americans with Disabilities Act, the Family Medical Leave Act and Chapter 21 of the Texas Labor Code. SMU's actions also constitute fraud, defamation, breach of contract and other state law violations.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements*<br>Melissa Avila |
| I declare under penalty of perjury that the above is true and correct.<br><br>3/2/17 Cheryl Butler<br>*Date* *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>Cheryl Butler<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>3/2/17<br>MELISSA A. AVILA Notary Public, State of Texas Comm. Expires 08-16-2020 Notary ID 126255531 |

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
# INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1. Personal Information**

Last Name: Butler First Name: Cheryl MI: ____

Street or Mailing Address: 3341 Charleston Street Apt Or Unit #: ____

City: Houston County: Harris State: Texas ZIP: 77021

Phone Numbers: Home: ( 713 ) 828-3958 Work: ( ____ ) ____

Cell: ( ____ ) ____ Email Address: cherylbutler2002@gmail.com

Date of Birth: 1/27/1967 Sex: Male ☐ Female ☒ Do You Have a Disability? ☒ Yes ☐ No

**Please answer each of the next three questions.** i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaska Native ☐ Asian ☐ White ☒ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? USA

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Alfonso Kennard and Keenya Harrold Relationship: Attorneys at Kennard Richard, P.C.

Address: 2603 Augusta Drive, Suite 1450 City: Houston State: TX Zip Code: 77057

Home Phone: ( 713 ) 742-0900 Other Phone: ( ____ ) ____

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer ☐ Union ☐ Employment Agency ☐ Other (Please Specify) ____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

**Organization Name:** Southern Methodist University

Address: P.O. Box 750132 County: Dallas

City: Dallas State: TX Zip: 77042 Phone: ( 214 ) 768-3233

Type of Business: Education Job Location if different from Org. Address: 3315 Daniel Ave. Dallas, Texas 75205

Human Resources Director or Owner Name: R. Gerald Turner, President Phone: (214) 768-2000

**Number of Employees in the Organization at All Locations:** Please Check (√) One

☐ Fewer Than 15 ☐ 15 - 100 ☐ 101 - 200 ☐ 201 - 500 ☒ More than 500

**3. Your Employment Data** (Complete as many items as you can) **Are you a Federal Employee?** ☐ Yes ☒ No

Date Hired: 8/1/2011 Job Title At Hire: Assistant Professor of Law

Pay Rate When Hired: $110,000 Last or Current Pay Rate: $137,000

Job Title at Time of Alleged Discrimination: Assistant Professor of Law Date Quit/Discharged: ____

Name and Title of Immediate Supervisor: Jennifer M. Collins (Dean of Law)

**If Job Applicant,** Date You Applied for Job Not Applicable. Job Title Applied For Not Applicable.

**4. What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to* Race. *If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to* Retaliation.

☒ Race ☒ Sex ☐ Age ☒ Disability ☐ National Origin ☐ Religion ☒ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing ☐ ii. family medical history ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: ______

If you checked genetic information, how did the employer obtain the genetic information? ______

Other reason (basis) for discrimination (Explain). FMLA, Interference, Retaliation and Title IX

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 8/1/2011 Action:
Please see the attached Charge of Discrimination.

Name and Title of Person(s) Responsible: Jennifer M. Collins (Dean of Law), Steven C. Currall (Provost)

B) Date: Action:

Name and Title of Person(s) Responsible: ______

**6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
Please see the attached Charge of Discrimination.

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

Please see the attached Charge of Discrimination.

**8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.**

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Keith Robinson | African American, Male, 42 | Associate Professor of Law |
| Description of Treatment: I was subjected to more difficult tenure standards, a discriminatory tenure process and different terms and conditions of employment as compared to Mr. Robinson. | | |
| **B. Full Name** | **Race, sex, age, national origin, religion or disability** | **Job Title** |
| David O. Taylor | White, Male, 40 | Associate Professor of Law |
| Description of Treatment: I was subjected to more difficult tenure standards, a discriminatory tenure process and different terms and conditions of employment as compared to Mr. Taylor. | | |

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Unknown at this time. | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Unknown at this time. | | |

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Jessica Dixon Weaver | African American, Female, 45 | Associate Professor of Law |

Description of Treatment Like myself, Professor Weaver has been subjected to harassment, discrimination, retaliation, further SMU refused to interview her as part of my internal investigation.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

**9. Please check all that apply:**

- ☒ Yes, I have a disability
- ☐ I do not have a disability now but I did have one
- ☐ No disability but the organization treats me as if I am disabled

**10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

I suffer from moderate to severe asthma and I also suffer from clinical depression and anxiety

Yes these disabilities limit me from doing the following things (asthma) - breathing, lecturing, driving, walking, concentrating, reading, caring from myself and sleeping(depression and anxiety) - sleeping, relaxing, concentrating, thinking, breathing

**11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**

**Yes** ☒ **No** ☐

If "Yes," what medication, medical equipment or other assistance do you use?

Asthma - Breathing Machine, Montelukast, Flonaise, Albuterol, and Simbacort

Depression - Lexapro and other medication

**12. Did you ask your employer for any changes or assistance to do your job because of your disability?**

**Yes** ☒ **No** ☐

If "YES", when did you ask? 04/2016 How did you ask (verbally or in writing)? writing

Who did you ask? (Provide full name and job title of person)

Paul Ward, SMU General Counsel

Describe the changes or assistance that you asked for:

There are several instances SMU denied my requests for reasonable accommodation. In one of the last instances, the Office of Institutional Equity granted me a reasonable accommodation for asthma in the form of leave from work, however the only time the Provost allowed for me to appeal his decision was while I was on ADA leave from work.

How did your employer respond to your request?

The Provost decided that the only time I could appeal the denial of tenure was during my ADA leave from work. When I rreturned to work from ADA leave I was not given time to appeal.

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| **A. Full Name** | **Job Title** | **Address & Phone Number** |
|---|---|---|
| Please see the attached witness list. | | |

**What do you believe this person will tell us?**

| **B. Full Name** | **Job Title** | **Address & Phone Number** |
|---|---|---|
| Please see the attached witness list. | | |

**What do you believe this person will tell us?**

**14. Have you filed a charge previously in this matter with EEOC or another agency?** **Yes** ☐ **No** ☒

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**
Not Applicable.

**16. Have you sought help about this situation from a union, an attorney, or any other source?** **Yes** ☒ **No** ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Alfonso Kennard and Keenya Harrold of Kennard Richard, P.C.
2603 Augusta Drive, Suite 1450, Houston, TX 77057

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.**

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

Box 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

Cheryl Butler — **Signature**    3/2/2017 — **Today's Date**

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. **ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

**CHERYL BUTLER EEOC WITNESS LIST**

1. Jessica Dixon Weaver
   Associate Professor SMU Law
   Telephone No. (214) 394-2627
   Email: jdweaver@smu.edu

2. Maureen Armour
   Associate Dean & Professor SMU Law
   Telephone No. (214) 215-6065

3. Shubha Ghosh
   Professor Syracuse Law
   Telephone No. (315) 443-2532
   Email: sghosh01@law.syr.edu

4. Joe Norton
   Associate Professor SMU Law
   Telephone No. (214) 768-2777
   Email: projjnorton@yahoo.com

5. Roy Anderson
   Associate Professor SMU Law
   Telephone No. (713) 748-3279

6. Jeff Kahn
   Associate Professor SMU Law
   Telephone No. (214) 768-2792

7. Josh Tate
   Associate Professor SMU Law
   Telephone No. (214) 768-2791

8. Ndiva Kofele Kale
   Associate Professor SMU Law
   Telephone No. (214) 768-2568

The above persons listed will describe how SMU treats its minority, disabled and/or older employees differently and less favorably than their white, non-disabled, and younger counter parts.