# EXHIBIT B

EEOC Form 161-B (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Cheyrl Butler**
**3341 Charleston Street**
**Houston, TX 77021**

From: **Houston District Office**
**Mickey Leland Building**
**1919 Smith Street, 7th Floor**
**Houston, TX 77002**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **460-2017-01925** | **Lewis Wilkerson, Investigator** | **(713) 651-4995** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [X] More than 180 days have passed since the filing of this charge.
- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.
- [X] The EEOC is terminating its processing of this charge.
- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.
- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

[signature]

**For: Rayford O. Irvin, District Director**

DECEMBER 19, 2017
*(Date Mailed)*

Enclosures(s)

cc:

**Alfonso Kennard Jr.**
**Kennard Attorneys At Law**
**2603 Augusta Dr., 14th Floor**
**Houston, TX 77057**

**Lowell Keig, Division Director**
**TWC – Civil Rights Division**
**101 E. 15th ST. 144-T**
**Austin, TX 78778-0001**

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

## PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

***Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*** For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☐ EEOC 460-2017-01925

Texas Workforce Commission Civil Rights Division and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Cheryl Butler | (713) 828-3958 | 1/27/1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3341 Charleston Street | Houston, TX 77021 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Southern Methodist University (hereinafter "SMU") | 500+ | (214) 768-3233 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 750132 | Dallas, TX 75275 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN

[X] RETALIATION [X] AGE [X] DISABILITY [ ] GENETIC INFORMATION

[X] OTHER *(Specify)* FMLA Interference and Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: August 2011 Latest: March 2, 2017

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am currently employed at the Dedman School of Law at Southern Methodist University ("SMU") as an Assistant Professor of Law. I began working at SMU in August of 2011. At all times, before my complaints of race, gender, and disability discrimination, I was on track for the award of tenure and promotion to the rank of Associate Professor. On May 27, 2016, SMU denied my application for promotion and tenure.

As previously noted, prior to my complaints of discrimination, I was on track for tenure. Under SMU's policies and procedures, 18 months prior to the tenure vote, each professor that will be considered for tenure undergoes a "third year review." This review is the first step in the tenure process and a professor's contract renewal is evidence that the candidate is making significant progress toward tenure. I received my third year review in Spring of 2014. At that time, the committee concluded that "I was on track for promotion and tenure." I had an outstanding level of achievement in legal scholarship; satisfactory teaching evaluations; and extraordinary evidence of service and collegial support—as documented in my review.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

Melissa Avila

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Cheryl Butler

3/2/17 Cheryl Butler

Date Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

3/2/17

MELISSA A. AVILA
Notary Public, State of Texas
Comm. Expires 08-16-2020
Notary ID 128256531

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☐ EEOC

Texas Workforce Commission Civil Rights Division and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

However, throughout my time at SMU, I have been the victim of race, gender and disability discrimination, as well as retaliation. The semester before I was up for tenure vote, I initiated formal complaints to the law dean, tenure committee, and the SMU Office of Institutional Equity about discrimination at work. For example, I complained about the apparent difference in the way that African American employees were treated and promoted at the law school. In addition, I complained of SMU's failure to consider me and promote me to the Director of Center for Human Trafficking—a new position created by the law school. Specifically, the law school received a million-dollar gift to create a Center and Clinic for Human Trafficking.

While SMU reported that I was denied tenure based on "teaching," several faculty members who voted on my tenure application state that this proffered reason is mere pretext and that tenure was denied as part of a pattern and practice of race, gender and disability discrimination and in retaliation for my complaints of discrimination. My tenure committee chair, Professor Roy Anderson, told me that "the university was no longer invested in me because I complained about discrimination." During an internal investigation, Professor Anderson reportedly denied making this statement. However, our conversations about SMU's plan to retaliate – and what if anything I could do to fight it - were recorded. Additionally, other faculty members corroborate his repeated claim that SMU has a policy and practice of terminating faculty who file discrimination complaints. "You could never come back here after what you have done [complain about discrimination]," a supportive colleague warned me. Another warned me that appealing the denial of tenure was a waste of time because "as we told you before, SMU does not keep people who complain about discrimination…" My colleagues also confirm on tape that SMU administrators intentionally sabotaged my efforts to "stop the tenure clock" for medical reasons, i.e., delay the tenure evaluation process and vote at time when I was not battling ADA and FMLA protected-illness. The night before the tenure vote, a member of the tenure committee revealed that Dean Collins had not told the faculty that I was granted FMLA leave. Instead, Dean Collins and others had convinced the faculty that "I lied" about being sick and entitled to ADA or FMLA protection. Members of the committee agreed that the vote should be stopped so that "[they] could investigate whether [I was] lying," but there was nothing they could do because "their hands were tied" by the administration. According to recorded conversations with law faculty, Dean Collins led a "witch-hunt" in which she fraudulently convinced the law faculty, SMU President Gerald Turner and the SMU Board of Trustees that I "was lying about needing ADA or FMLA protection because I was not really sick. And, even though an internal investigation of the complaints had not been completed, Professor Anderson, at the direction of Dean Jennifer Collins, Interim Provost Harold Stanley and Provost Julie Forrester, distributed a tenure report recommending the denial of tenure because "I lied" about being eligible for ADA or FMLA, and I lied about other discrimination at the law school."

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

3/2/17 Cheryl Butler

Date Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

Melissa Avila

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Cheryl Butler

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

3/2/17

MELISSA A. AVILA
Notary Public, State of Texas
Comm. Expires 08-18-2020
Notary ID 128266631

# ATTACHMENT TO CHARGE OF DISCRIMINATION FOR CHERYL BUTLER

Professor Anderson's tenure report recommends that tenure be denied because "Professor Butler complained so much about discrimination that Dean Collins could not run the law school."

SMU has also violated federal anti-discrimination law as well as its own Bylaws by (1) including discriminatory content in my tenure report; (2) using the tenure vote meeting to disparage me for complaining about discrimination, attack the merits of my discrimination complaints instead of allowing the Office of Institutional Equity to conduct an internal investigation; and secretly denying tenure on the grounds that they were annoyed by the discrimination complaints; and then, (2) cover up the discrimination by intimidating faculty into being silent about the discussion and (3) cover up by fraudulently deleting the content before submitting the report for litigation. The closed faculty tenure vote meeting became a minority candidate's worst nightmare—an outrageous free for all in which the faculty deprived me of my due process contractual rights and ADA and FMLA protection by accusing me of faking being sick (even though SMU had granted FMLA leave and was re-evaluating my application for ADA accommodation), "lying" about "other things" still not disclosed to me, and otherwise defaming my character. Further, they determined that even if I were entitled to FMLA protection, I complained too much about discrimination, such that Dean Collins could not run her law school. Thus, the faculty who engaged in discrimination and lied about it, somehow did not undermine the Dean's ability to run the law school; but, complaining about the discrimination was fatal. Several colleagues stated the tenure committee also wrote these accusations into the tenure report as intentional discrimination and retaliation. "They wrote these things into the tenure report with your complaints about discrimination in mind. They knew they could not deny tenure based on poor teaching evaluations because white male candidates also have bad evaluations. So, they put that paragraph in there to make sure [they could secure a negative vote.]."

SMU also discriminated by subjecting me to discriminatory tenure standards and an alternative tenure process as compared to other candidates. As just one of many examples, the two male candidates who were granted tenure were recommended for tenure by a committee which had years to observe their teaching skills. In contrast, my tenure chair Roy Anderson complained on record that his committee worked at a disadvantage, having been assigned only a few weeks before the scheduled tenure vote and only having a semester in which my family members and I battled ADA/FMLA illness while being evaluated. SMU also subjected me to higher standards, making me write longer articles with more prestigious placements to be considered for tenure. SMU downplayed these accomplishments, refused to allow me to include favorable reviews of teaching in my dossier and fraudulently induced other professors to write negative assessments of my teaching. According to my tenure chair, SMU also falsified student evaluations to make them appear more negative. SMU deprived me of the opportunity to appeal the denial of tenure outside of an ADA leave period and failed to provide a timely investigation of my complaints of discrimination in the tenure process.

SMU also created a hostile work environment in response to my request for ADA accommodation and FMLA protection. Several administrators intentionally sabotaged and denied my request for an ADA accommodation based on disability and asthma. SMU engaged

in associational ADA discrimination by making disparaging comments about an immediately family member's ADA disability and need for chronic hospitalization and medical treatment. When I developed depression and stress induced asthma attacks due to caregiving and harassment from work, I requested several ADA accommodations and FMLA leave. Each request for accommodation or designation BEFORE the end of the tenure evaluation period was sabotaged so that I would not have a legitimate legal right to delay the tenure vote or discount negative teaching evaluations based on ADA or FMLA. The only requests for leave that were granted were for AFTER the faculty voted to deny tenure. SMU acknowledged that, as a matter of policy, that a professor would be eligible for FMLA leave or ADA accommodation in the form of a Stop the Tenure Clock accommodation -- a contractual agreement to defer the vote on tenure for a semester or year later so that the candidate could be evaluated while free of illness. However, SMU administrators then engaged in a concerted effort to fraudulently sabotage my requests for the ADA accommodation and FMLA leave. For example, Dean Collins and former-Provost Harold Stanley failed to follow ADA law and SMU policy by evaluating and denying my request for a delayed tenure vote instead of directing me to the ADA coordinator who, by her own admission, was the sole person assigned to evaluate ADA requests. Provost Stanley hazed me with a discriminatory 72 hour deadline for the submission of medical records to him, violated my privacy rights under the ADA, FMLA and HIPAA by judging the medical records himself and then denied the ADA accommodation on the grounds that I wanted to continue working next semester (in other words, he did not see a need for an accommodation at work if I wasn't so sick that I could still work a little.) On tape, SMU ADA coordinator, Carolyn Hernandez, told me Dean Collins and Provost Stanley had violated the ADA and SMU policy in handling my accommodation request. However, at the urging of Dean Collins, Ms. Hernandez sent me several emails denying that she made the statements. Later, even though I stated that I had evidence of Ms. Hernandez' own hand in this fraud and cover-up, SMU assigned Ms. Hernandez as the internal investigator of my ADA discrimination claim, even though, as I protested, it is discriminatory to allow the accused to investigate itself. For over a year, Ms. Hernandez also served as henchmen, denying my subsequent requests for reasonable accommodation, failing to engage in the interactive process – or only granting accommodations after long protracted hostile fights on email (I would describe her response to my requests for accommodation as "harassment" more than "engaging in the interactive process.") SMU discriminated by compelling me by treating me less favorably than other professors with disability including my Roy Anderson, Beth Thornburg, and my late dear friend, Sarah Fran, all three who battled cancer, or tenure committee member Professor Anthony Colangelo, who yelled at me in meetings and has otherwise engaged in misconduct at work while battling alcoholism.

SMU also engaged in ADA discrimination and harassment by refusing to provide an opportunity to appeal the denial of tenure outside of the job protected leave of absence that the university itself granted. SMU's FMLA coordinator also engaged in a pattern of interference and obstruction that curiously mirrored the missteps in the handling of my ADA claim. FMLA coordinator Rhonda Adams likewise intentionally sabotaged my application for FMLA retroactive designation and FMLA leave by (1) claiming that she could evaluate my ADA claim via FMLA paperwork but then rejected the claim; (2) denying my request for intermittent leave by stating on letterhead that Dean Collins and Associate Dean Beth Thornburg are correct that the FMLA does not give me a right to emergency intermittent leave even though this is a gross misstatement of the law; (3) intentionally delaying the grant of FMLA leave and otherwise

sabotaging the application; (4) making false statements in writing about my FMLA application that were inconsistent with tape recorded conversations.

After SMU denied tenure, SMU refused to conduct a timely and fair internal investigation of discrimination in the tenure process. SMU refused to consider evidence of discrimination, including tape recordings, BEFORE tenure was denied. SMU refuses to turn over the tenure report even though I allege that it contains discriminatory content in violation of Title VII; ADA and the FMLA; SMU only allowed administrators accused of discrimination to conduct the investigation and rejected my requests to have an independent faculty panel review my complaint as allowed for other professors under the SMU bylaws; SMU refused to interview key witnesses; for example, SMU issued a determination letter that there was no discrimination against African American female professors but refused to interview Professor Weaver – the only Black woman present at the tenure vote and privy to the tenure report. Colleagues told me to stop writing SMU to demand an investigation because, in violation of privacy, administrators were disclosing my confidential complaints to antagonize the faculty. Others told me that SMU was not going to conduct a fair investigation because Dean Collins had told the Office of Institutional Equity to make false statements and to not call key witnesses. The faculty members who did talk to me, including Tenure Chair Roy Anderson, are audibly intimidated and afraid on tape, expressing worries that Dean Collins or other administrators will retaliate against them if they are caught telling me about the discrimination or otherwise trying to help me fight for my right to tenure and promotion.

The rejection of my application for tenure and promotion is evidence of a hostile work environment against African American tenured and tenure-track professors at SMU. For almost 90 years, SMU refused to promote or grant tenure to Black women on the law faculty until Spring 2015, when Professor Jessica Dixon Weaver was finally granted tenure. However, notwithstanding this milestone, Professor Weaver and I continued to be subjected to discrimination and retaliation at the Law School. Even before I was denied tenure and promotion, SMU's current law dean, Jennifer Collins, and its former law deans, Dean Paul Rogers and Interim Dean Julie Forrester subjected Professor Weaver and/or me to intimidation, harassment, and retaliation for challenging SMU's discriminatory hiring practices and hostile work environment. Examples of SMU's hostile work environment based on race include: (1) failing to provide the same terms and conditions of employment provided to male professors; (2) failing to protect me and Professor Weaver from abusive students, including physical harassment in violation of Title IX; (3) accusing me of being a "bad colleague" and "bad mother" because I did not live in the same city as my husband and children; (4) refusing to promote Professor Weaver or me to serve as Directors of Law Centers and instead hiring less qualified White female candidates and also engaging in threats or retaliation to silence such dissent; (5) engaging in a campaign of public mockery, shaming, and defamation for complaining about race and disability discrimination; and (6) submitting a tenure report that rebukes me outright for complaining about discrimination.

SMU denied tenure even though my tenure chairs and several other recommenders stated that I met the standards for tenure or could do so with a reasonable accommodation or FMLA leave. Tenure Chair Joe Norton wrote that "I met the standards for tenure and that I am a good person." Indeed, I obtained my Bachelor's degree from Harvard University and my Juris

Doctorate degree for New York University School of Law. Prior to joining SMU, I worked as the Executive Director and General Counsel for Top Teens of America, Inc. in Houston, Texas. I have also worked at numerous other leading advocacy organizations. Further, my legal experience spans from working as an associate from major law firms including Debevoise & Plimpton and Cleary Gottlieb Steen & Hamilton to clerking for a United States District Judge in the District of Columbia. At SMU, I developed a reputation as a prolific up and coming expert in my field and received outstanding teaching evaluations in most of my classes, with some evaluations suffering in the semesters when my immediate family member or I battled hospitalization and disability. Although another tenure chair Roy Anderson authored a tenure report recommending the denial of tenure, he acknowledges on tape, that I am being targeted for discrimination and retaliation. He states that all of my credentials for tenure are outstanding except the evaluations in one course is mixed. He stated that if I were given an extra semester to teach free of illness and be mentored by a veteran master teacher such as himself, he was more than confident that I could make all corrections and earn tenure. He expressed that I was a collegial friend and he encouraged me to try to get an ADA accommodation. When the administration in turn rejected that request for accommodation, he apologetically informed me that he would have to follow their cue and deny tenure by disparaging my teaching and defaming my character. As a last resort, he pushed me to retain an attorney. Other law professors also fought back under cover, helping me outline the very claims that I make here in this EEOC complaint.

For these reasons, I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 1981, the Americans with Disabilities Act, the Family Medical Leave Act and Chapter 21 of the Texas Labor Code. SMU's actions also constitute fraud, defamation, breach of contract and other state law violations.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* Melissa Avila |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| 3/2/17 Cheryl Butler<br>*Date* *Charging Party Signature* | SIGNATURE OF COMPLAINANT Cheryl Butler<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 3/2/17<br>MELISSA A. AVILA Notary Public, State of Texas Comm. Expires 08-16-2020 Notary ID 128255531 |

U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
HOUSTON DISTRICT OFFICE
Mickey Leland Federal Building
1919 Smith Street, 7th Floor
Houston, TX 77002-8049

OFFICIAL BUSINESS
Penalty for Private Use $300

UNITED STATES POSTAGE
PITNEY BOWES
02 1P $ 000.67⁰
0000805339 DEC 19 2017
MAILED FROM ZIP CODE 77002

RECEIVED
DEC 2 2 2017
BY: ..............................

7705786145 C051