# EXHIBIT E

kennard
ATTORNEYS AT LAW

ALFONSO KENNARD, JR.
ATTORNEY AT LAW
DIRECT: 713.742.0906
ALFONSO.KENNARD@KENNARDLAW.COM

Super Lawyers
BOARD CERTIFIED Labor and Employment Law
LEGAL LEADERS

February 14, 2018

***Via Email to All Defendants***
***Via Email to kim.askew@klgates.com***
***Via Certified Mail***
Kim J. Askew
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, TX 75201

**Re:** *Cheryl Butler v. Southern Methodist University, et al.;*
*Request for Retraction of Defamatory Statements in Defendants' EEOC Position Paper dated August 2017; Amended Request for Retraction of Defamatory Statements listed in Plaintiff's July 2017 & October 2017 Request; Amended Request for Retraction Based on Other Texas State Law Claims. Tex. Civ. Prac. & Rem. Code § 73.054.*

Dear Ms. Askew:

Our client has asked us to convey the following:

First, Plaintiff writes to request that Defendants SMU, Provost Currall, and Dean Jennifer Collins provide Plaintiff with a copy of her Employment File, including her tenure dossier. Even though the SMU Bylaws provide professors with a right to see their employment files, Dean Collins and several senior SMU administrators refused to provide Professor Butler with a copy of these documents during her tenure evaluation period and employment at SMU. Further, Plaintiff needs her employment file to attempt to find alternative employment. As Provost Currall and Dean Collins know, any law school considering her candidacy for a teaching position will want to see her tenure dossier, including but not limited to, the Tenure Advisory Committee Report.

Defendants continue to fraudulently conceal defamatory statements made in her tenure report and during the tenure process. Dean Jennifer Collins and Samantha Thomas, the Assistant to President Gerald Turner and Executive Director of SMU's Office of Institutional Equity, engaged in outrageous misconduct by repeatedly lying to Professor Butler about the tenure report. During both her tenure process and the investigation of her allegations of discrimination in the tenure process, they lied over and over, stating in writing that the tenure report does not contain any character attacks or accusations of wrongdoing. However, Dean Collin's own faculty balked at that assertion as dishonest and fraudulent.

Second, and therefore, Plaintiff persists in her requests that Defendants retract the defamatory statements identified in her previous Requests for Retraction dated July 2017 and the October 2017. In this letter, Plaintiff has amended her request for retraction by eliminating some of the previous alleged Counts/Incidents. Plaintiff persists in her request for retraction of the remaining statements. As explained below, the statements listed therein are defamatory and Defendants have no viable defenses to excuse them. The Defendants made the statements with malice, *i.e.*, defendants had knowledge that the statements were false and/or published these falsehoods with reckless disregard for the truth. As explained in detail below, none of the statements are time-barred.

Third, Plaintiff writes to request that Defendants correct, clarify and retract additional defamatory statements that Defendants admit that they published during the tenure process but disclose *for the first time* in SMU's EEOC Position Paper. As discussed below, Defendants identified in this request for retraction include, but may not be limited to, Defendants SMU, Collins, Currall, Ward, Anderson, Colangelo, Weaver, Thornburg, Forrester, Rogers, Hernandez, and Thomas. In December 2017, the U.S. Equal Employment Opportunity Commission ("EEOC") provided Plaintiff with a Right to Sue Letter, a prerequisite for pursuing civil rights claims under Title VII of the Civil Rights Act and the Americans with Disabilities Act (ADA). The EEOC, following its standard procedures, also provided Plaintiff with a copy of Defendant SMU's EEOC Position Letter. Therein, SMU admits that Defendants made certain defamatory statements about Professor Butler. To be clear, Plaintiff does not request retraction because the statements were made to the EEOC but instead, due to Defendants' own admission that the statements were first made in private during the tenure process and that, Defendants relied upon the statements to deny Professor Butler's application for tenure and promotion. Many of the defamatory statements were completely unknown to Plaintiff until she discovered them in SMU's Position Paper. The statements are distinct, separate and apart from the defamatory statements previously disclosed by the faculty.

The newly discovered defamatory statements, admitted to by Defendants in SMU's Position Paper, were unknown to Plaintiff because Defendants had fraudulently concealed the statements or otherwise made them undiscoverable. While Defendants Collins, Thomas and Ward lied to plaintiff's face, denying any defamatory statements before the EEOC, they quickly changed their story. However, after SMU denied attacking Professor Butler's character in any way during the tenure process, Defendants was made aware that there are tape recordings to prove that its denials were fraudulent. To try to save face and obscure its deceit, SMU used the EEOC Position Paper to change its story. SMU now claims that the otherwise defamatory statements made in the "still-fraudulently-concealed-but-about-to-be-produced-as-part-of-a-lawsuit" tenure report supposedly are defensible as "true."

Now, in the Position Paper, Defendants admit to the statements but claim that they can defend them as "true." SMU cannot meet its summary judgment burden of defending any of these statements as true. Plaintiff, on the other hand, will present evidence at trial that each and every statement is false and that statements made them with an intentional and reckless disregard for the truth – and for her civil rights. Indeed, SMU's shifting explanations as to what happened behind closed doors during the tenure process is *prima facie* evidence of pretext for discrimination. The evidence shows that Defendants knew that these statements were made with malice, *i.e.*, that they knew the statements were false and or had reckless disregard for their truth. The tenure chair himself – Professor Roy Anderson warned Professor Butler that such statements were not of his true opinion.

Fourth, Plaintiff request that Defendants retract the statements to mitigate damages for Plaintiff's discrimination claims as well. SMU's tenure letter and other attacks on Professor Butler's character risks liability for not only defamation but also continuing violation of her civil rights. Because SMU violated its own Bylaws (and breached its contract with Plaintiff) by withholding Plaintiff's Tenure Report, the EEOC Position Paper is the first time in which Defendant SMU gives Plaintiff notice of the specific grounds upon which Defendants rejected her application for tenure and promotion.

Thus, regardless of whether the statements at issue are "defamatory" as a matter of law, the statements expose Defendants to liability under several common law and civil rights claims, including, but not limited to, fraud, conspiracy to defame, invasion of privacy, breach of contract, and negligent hiring, supervision, and training. In addition to providing evidence of defamatory statements made during the tenure process, the Position Paper is replete with several other admissions of Defendants' illegal discrimination and retaliation against Plaintiff based on race, gender, disability in violation of Texas Labor Code Section 21.051 (Race, Sex & Disability Discrimination), Section 21.105 (Disability Discrimination), Section 21.056 (Aiding & Abetting Discrimination), the FMLA, ADA, Title VII, and other federal laws. Several statements made by SMU in the EEOC Position Paper may amount to civil obstruction of justice in violation of Texas Labor Code Section 21.058 (Prevention of Compliance: Civil Obstruction of Justice) and Section 21.057 (Interference with the Commission).

## I. Statement of Facts

Between October 2015 and March 2017, SMU law professors warned Professor Butler that Dean Collins and other administrators planned to deny Professor Butler's application for tenure and promotion in retaliation for her complaints about discrimination. Prior to her application for tenure and promotion, Professors Weaver and Butler, the only two Black female

professors on the law faculty had informally complained of a hostile work environment based on race and gender, racially discriminatory hiring practices, and racial discrimination in the application of tenure standards. However, according to Professor Roy Anderson, filing of a *formal* complaint with the Office of Institutional Equity, including claims of FMLA and race discrimination against Dean Collins and Associate Dean of Faculty Beth Thornburg, was “the last straw.” Several SMU administrators and faculty then conspired to deny Professor Butler’s application for tenure in part by secretly publishing defamatory statements in her tenure report and then depriving her of a due process right to review and refute the allegations. Before SMU could enforce its “code of silence” – demanding that the faculty lie to Professor Butler and deny what had happened, several faculty members had already gone behind Dean Collins’ back, and over the course of a year, gave Professor Butler “the play by play” as the retaliatory scheme unfolded. A tape recorder happened to document the conversations.

Within three short days of filing a formal complaint of discrimination, SMU moved quickly to sabotage Professor Butler’s tenure process and undermine her credibility. Dean Collins removed Professor Butler’s current tenure committee Chair, Professor Joe Norton, who had observed her teaching and scholarship for years and concluded in writing that Professor Butler “met the standards for tenure” and “is a good person.” Dean Collins replaced Professor Norton with tenure chair Professor Roy Anderson. While two male candidates for tenure had the benefit of years of evaluation from their tenure committees, Professor Butler’s new tenure committee, which also consisted of Professor Anthony Colangelo and Associate Dean Mary Spector were given only one month to evaluate her teaching. Professor Anderson told Professor Butler that Dean Collins had already convinced President Turner and others to sabotage her bid for tenure. “They are going to ruin your career,” Professors Jessica Dixon Weaver, Ndiva Kofele-Kofe, and Roy Anderson told Professor Butler, “You need to get a lawyer to protect yourself.” On tape, several colleagues contacted Professor Butler to describe several other procedural irregularities in her tenure process and evidence of sabotage. Several testified that Dean Collins was so hostile and antagonistic toward Professor Butler that there was nothing that Professor Butler could do to change Dean Collin’s or President Turner’s mind that the plan was to deny Professor Butler’s application for promotion and tenure.

Several faculty members warned Professor Butler that part of SMU’s retaliation included a cat’s paw scheme in which Dean Jennifer Collins and then-Interim Provost Harold Stanley would sabotage Professor Butler’s application by placing defamatory and discriminatory statements in her employment file without her knowledge or any due process. SMU’s faculty testified that Dean Collins and Interim Provost Harold Stanley had ordered tenure chair Professor Roy Anderson and others to secretly place defamatory and discriminatory statements in the tenure committee report and recommend the denial of tenure.

The Faculty Warn Professor Butler of a Conspiracy to Defame Her Character in Retaliation for Complaints about Discrimination

It was the tenure committee itself that repeatedly warned Professor Butler that the university administration was conspiring to defame her and deprive her of her civil rights. First, Tenure Chair Roy Anderson told Professor Butler that Professor Anderson warned "the university is not invested in you because you complained too much about discrimination." As the tenure evaluation process unfolded, several faculty warned Professor Butler that SMU's scheme to defame her had come to fruition. Professor Weaver and Professor Kofele-Kafe warned Professor Butler to stop trusting the SMU administration, and to follow Professor Anderson's instructions and hurry up and get a lawyer to protect herself: "The university is not on your side." She added: "It's like Roy told you from the beginning, SMU does not keep people who complain about discrimination. But, they will settle. They are good about that." Professor Anderson in turn argued that he wanted to support her but there was only so much that he could do. "I have to be loyal to the university . . . I'm an employee of the university. There is only so much I can do."

Likewise, a day before the tenure vote, Dean Mary Spector, another member of the tenure committee, secretly disclosed to Professor Butler that the university was discriminating against Professor Butler by planning to recommend the denial of tenure based on accusations of lying on her FMLA application. In January 2016, Dean Spector told Professor Butler that Dean Collins and members of the tenure committee had met with Rhonda Adams, SMU's FMLA coordinator and that Rhonda Adams told them that Professor Butler "lied" on her FMLA application, and accusation that Ms. Adams hid from Professor Butler. Dean Spector thought that the waging of such accusations without notice or due process was discriminatory but there was little that the tenure committee could do because "our hands are tied" by "central administration." Professor Butler was also shocked that Dean Spector did not even know that the university had granted Professor Butler's FMLA leave even though Professor Butler had reminded Dean Collins to share this information with the faculty. On the call, Professor Butler began crying and begged Dean Spector to protest the discrimination to the administration. Professor Butler told Dean Spector that, as proof that she had not lied about FMLA, the university had granted her FMLA leave request. Dean Spector promised Professor Butler that she would go to Provost Stanley and ask him to "stop the vote" so that they could "sort this whole thing out" to determine whether Professor Butler had lied about being sick and needing FMLA. If the request was made, SMU ignored it. The faculty quickly assembled and voted to recommend that the university deny Butler's bid for tenure and promotion.

Several faculty members warned Professor Butler of the administration's conspiracy to defame her character in retaliation for complaints about discrimination. Less than a week before the faculty vote on tenure candidates, Professor Weaver told Professor Butler that Professor Anderson was correct and that his warning of what was to come was now playing itself out. Discussing what she observed was a discriminatory scheme to sabotage (to paraphrase): "It's like Roy said when you all first met. The 'university is no longer on your side or whatever' because you complained about discrimination." Throughout conversations over the course of a year, Professor Weaver stood her ground, warning Professor Butler over and over, in essence: "It's like Roy [Professor Anderson] said from the beginning. SMU does not keep people who complain about discrimination."

<u>The Defamatory Tenure Report & Tenure Process</u>

As part of their scheme to defame and retaliate against Professor Butler, Dean Collins and Provost Stanley ordered Professor Butler's tenure committee to go behind her back and prepare a defamatory tenure report and then deprive her of any notice or due process of the accusations therein. On tape, several faculty insist that it is the practice and/or policy is to provide tenure candidates with a copy of their tenure reports before the report is distributed to the faculty. For example, Professor Weaver states that, in prior years, all law faculty candidates for tenure her employment received copies of their tenure report. This practice gives the candidates a due process right to advocate changes to the report before publication to the faculty.

However, in Professor Butler's case, Professors Anderson and Colangelo placed defamatory information in the report without notice and refused to provide Professor Butler with a copy of the report. In the report, the tenure committee recommended that the faculty vote to deny Professor Butler's application for tenure and promotion. By refusing to provide Professor Butler with a copy of her tenure report, SMU intentionally deprived Professor Butler with the specific reasons that the tenure committee used for recommending that the faculty deny her application for tenure and promotion.

The defamatory tenure report included knowingly false accusations that Professor Butler had a habit of "lying" to Dean Collins and other SMU administrators about various matters. Behind her back, Dean Collins and others accused Professor Butler of "lying" about needing FMLA and ADA medical leave, falsifying FMLA paperwork, and filing a "meritless" internal discrimination complaint. The employment file also accused Professor Butler of acts of moral turpitude for which faculty members "demanded that she repent and ask God for forgiveness." In the private meeting in which tenured faculty voted on the application of tenure candidates, Professor Anderson stood up and screamed that Professor Butler was a "pathological liar" that

"never was going to change." Associate Provost Julie Forrester started "crying" and, according to Professor Maureen Armour, called Professor Butler "uppity" and made other racist innuendos.

Professor Weaver testified that Associate Provost Forrester read from a prepared statement in which she accused Professor Butler of "lying to her students" and engaging in unspecified unethical misconduct, Dean Collins brought a folder of all of the printed emails in which Professor Butler had complained about discrimination (including complaints about Dean Collins herself) and using the large file as "proof" that Professor Butler "had complained so much about discrimination that the dean could no longer run the law school" and therefore, should be denied tenure. Professor Anderson and Professor Anthony Colangelo "sealed the deal" by suggesting in the tenure report that Professor Butler's character flaws made her "unfit to be a lawyer and a law professor" and suggesting to the faculty that "we do not want someone who has a penchant for lying" as a member of SMU's law faculty. In some cases, the faculty identified the words used to defame Professor Butler but in most cases, fearing retaliation, the faculty withheld some facts about the defamation.

Several colleagues shared their eye witness accounts of the egregious defamation and discrimination in this case. In January-February 2016, Professor Weaver also warned Professor Butler that other SMU personnel had defamed Professor Butler's character; but she expressly refused to provide Professor Butler with all the details. To paraphrase Professor Weaver: "They wrote the report with your complaints of discrimination in mind. They knew they could not deny tenure due to mixed teaching evaluations because they had granted tenure to white men with even worst teaching evaluations. So, they put that paragraph in there to discredit you and retaliate against you." Professor Josh Tate also reported on tape that Dean Collins and others had attacked Professor Butler's character in the tenure report and during the behind-closed-doors private meeting in which the faculty members voted on tenure candidates. Professor Tate warned Professor Butler "you will never be able to come back to SMU after what [Dean] Jennifer [Collins] and [Associate Provost] Julie [Forrester] said about you."

Statements by the faculty also prove that the defamatory statements were published with malice, *i.e.*, that the speakers knew the statements were false or had reckless disregard for the truth. Taped conversations between Professor Butler and Professor Roy Anderson contradict SMU's claims that the tenure committee opined that Professor Butler was "unfit" or even "unqualified" to be a tenured professor at SMU. Furthermore, taped conversations with several members of the SMU faculty, including members of the tenure committee who authored the tenure report itself, confirm their opinion that SMU was discriminating against Professor Butler by wrongfully accusing her of misdeeds without a thorough investigation.

On tape, Associate Dean Mary Spector, a member of the Tenure Advisory Committee, discusses how SMU accused Professor Butler of lying on her application for FMLA leave and that the committee used those alleged lies as grounds to recommend the denial of tenure. In separate conversations other faculty including tenure chair Roy Anderson and Professor Weaver discuss how SMU President Turner, Associate Provost Stanley, Dean Collins and others accuse Professor Butler of "lying" about being sick and forging or making false statements on FMLA paperwork. On tape, Professor Butler's colleagues explain that throughout the tenure evaluation process, Dean Collins and other defendants disclosed Professor Butler's private medical history to faculty who had neither a right or need to know about such private medical facts.

Dean Collins exposed these medical facts to subject Professor Butler to humiliation, public speculation, and reputation harm. For example, Professor Weaver advises Professor Butler that the faculty discussed at a Christmas party whether "Professor Butler was really sick" or "just faking it." Professor Butler's colleagues also called to ask whether "she had cancer" or "whether she was so sick that she was in the hospital" and that, "if she were in the hospital, the tenure committee would change its recommendation that she be denied tenure. But they were not going to do that just for asthma." Here, SMU violated its own internal policies by disclosing Professor Butler's FMLA file.

By publishing statements that SMU recommended the denial of tenure and promotion because Professor Butler "lied about being sick" or "complained too much discrimination," and or that she was "unfit to be an attorney or law professor" due to alleged acts of moral turpitude, defendants not only defamed Professor Butler's character but also violated her civil rights under the FMLA, ADA, Rehabilitation Act, and Texas law. Here, SMU's actions are also a breach of contract.

Other faculty members echoed Professor Armour's warning that the defamation was part of a scheme to retaliate against Professor Butler for asserting her civil rights. As stated above, Professor Anderson and Professor Weaver told Professor Butler that "the university was not invested in you because you complained about discrimination." Professor Weaver warned that "SMU does not keep people who complain about discrimination." Professor Armour told Professor Butler that the faculty "targeted you because you asserted your rights under the civil rights code" and that the faculty's decision to deny tenure based on "spelling errors on an exam" was "pretext for discrimination." In a separate conversation, Professor Weaver agreed, stating [to paraphrase]: "They knew they could not deny tenure based on imperfect teaching evaluations because several white candidates had even worst teaching evaluations. So, they put that paragraph in there [attacking your character and calling you a liar] with your discrimination complaints in mind. The goal was to discredit your complaints of discrimination."

Faculty members also warned that SMU further retaliated by sabotaging her student evaluations, placing negative evaluations in the file and persuading the students to write negative statements. One student was less discrete noting that the law faculty told him or her that "Professor Butler was the worst professor at the law school."

The EEOC Position Paper: SMU Uncovers More Defamation from the Tenure Process

In addition to statements from the faculty, SMU's EEOC Position Paper sheds new light on some of the additional defamatory statements that the Defendants used to wage war on Professor Butler. Prior to reviewing the EEOC Position Paper, Professor Butler was warned by the faculty that defendants had accused her of lying about FMLA, discrimination, and unknown matters. The Position Paper adds to the list first of defamatory statements made about her by Defendants during the tenure process or otherwise during her employment.

These additional accusations further impeach SMU's credibility in this case – many of the accusations are more than false statements made negligently or with malice (reckless disregard for the truth). Many of the statements are total fabrications, shamefully made to a federal investigative agency in an effort to obstruct justice. Here too, SMU would have gotten away lying to the EEOC. Before SMU submitted the Position Paper to the EEOC, Professor Butler and her counsel repeatedly warned SMU that tape-recorded conversations exist to impeach SMU's defamation of her character. As Defendants note in the Position Paper, Plaintiff's counsel even provided Defendants with a sampling of transcripts. But, with hubris and repeated reckless disregard for the truth, SMU extended its lies beyond its communications with plaintiff and into the EEOC's investigation of her claims.

Even though Defendants originally told Professor Butler that no accusations of misconduct whatsoever were made against her during her tenure process, they tell a different story in the EEOC Position Paper. For example, Defendants accuse Professor Butler of "going AWOL" and failing to teach her classes during the Fall 2015 semester. They also make the false claim that the professor failed to prepare her Fall 2016 semester by refusing to order books or contacting SMU about her schedule. Perhaps the most bizarre and outrageous claim is that each time Professor Butler came to the SMU Office of Institutional Equity for a meeting to complain about discrimination, she could not identify any person or act of discrimination to support her claim. So, as the defendants' lame story goes, the university officials helped her to "see reality" and "agree" that there was no basis whatsoever for her complains. Now, who is going to believe this complete fabrication? How could it be that the only member of the full-time faculty who taught Employment Discrimination courses now, did not know how to articulate a claim of discrimination to SMU's Office of Institutional Equity? Was she, as Dean Collins told the faculty, "crazy" or "not all there mentally?" Defendants themselves appear foolish and a bit

"crazy" themselves for making such a farfetched claim against a law professor who warned the university that she walked with a tape recorder in her purse.

These and other statements in the EEOC Position Paper are sheer fabrications which SMU made as part of its scheme to first lie to plaintiff, then lie to the EEOC, and if necessary, lie to the judge and jury. These shamefully false accusations are made in part by Executive Director Samantha Thomas and former ADA Coordinator Carolyn Hernandez. Ms. Thomas is the Assistant to the President Gerald Turner, and the Executive Director of the Office of Institutional Equity – the office charged with protecting SMU employees from civil rights violations like sexual harassment, racial discrimination and retaliation. How can employees at SMU trust that their employer will protect them from discrimination when the head of civil rights investigations at the university has now been caught intentionally lying the EEOC about her investigations? Further, notwithstanding tape recorded accusations by a diverse group of her own law faculty (male, female, Black and White) that she engaged in egregious discrimination and fraud, Dean Collins remains Dean of the SMU Dedman School of Law.

Faculty Testify that Defamation & Retaliation are SMU Law's *Motis Operandi* for Black Female Professors & Others Who Complain about Discrimination

To be fair, Dean Collins did not create the culture of discrimination and coercion at the law school; rather, upon her hire in 2014, she simply resolved to preserve and enforce it. The Butler tenure case is not the first time SMU has discriminated against or harassed Black female professors but instead, part of a long-standing hostile work environment. Professor Jessica Dixon Weaver, the first Black woman tenured at the law school (in 2014) testified that the scheme to defame and retaliate against Professor Butler was not unique to Professor Butler but was part of a hostile work environment based on race and gender. In her view, SMU systemically sought to keep Black women off the tenured law faculty and discouraged faculty members from reporting race discrimination. This hostile work environment based on race and gender included a pattern and practice of discrimination in hiring, retaliation, defamation, and other forms of sabotage. Several members of the law faculty, including Associate Provost Julie Forrester and former Dean and Professor Paul Rogers (who are romantic partners), whose *motis operandi* was to defame and humiliate Black women. Professor Weaver recounts examples of how these colleagues led attempts to sabotage Professor Weaver, Professor Butler, Professor Beverly Moran (a candidate for the deanship) and Professor Lolita Buckner-Innis by attacking their character and credentials.

For example, when Professor Beverly Moran was a candidate for dean, Paul Rogers openly defamed her in a faculty meeting as a "con artist" and was "unfit" as compared to then Interim-Dean Julie Forrester. Within days of the faculty vote, Professor Tate likewise called

Professor Butler to warn that Dean Collins, Professor Anderson, and Provost Julie Forrester were sabotaging her tenure in retaliation in part for Professor Butler's active support on the Dean Search Committee for a Black female dean candidate, Vanderbilt Law Professor Beverly Moran, over Professor Forrester. Professor Weaver also independently that SMU was also retaliating for Professor Butler's successful efforts to gain faculty support for the Black female candidate over the racist objections of Professor Forrester and her romantic partner, Professor Paul Rogers.

Professor Weaver testified that several Black female finalists for tenured positions at SMU Law were subjected to defamation, racial harassment and other forms of discrimination to thwart their hire or promotion. For example, Professor Weaver testified that SMU law faculty denied her a promotion in retaliation for her complaints about discriminatory hiring practices. When Professor Weaver applied for a renewal of her contract (a prerequisite for tenure), her tenure chair, Professor Forrester wrote a lackluster "no confidence" tenure committee letter, compelling Professor Butler to protest in Professor Weaver's defense.

Professor Weaver and others argue that, in Professor Butler's tenure case as well, Professors Rogers and Forrester again led the campaign – attacking Professor's character during the faculty tenure meeting and encouraging publication of the "devastating" tenure report. On tape, Professor Weaver discusses how the witch hunt against Professor Butler was making her physically sick with stress in part because it reminded her how the law faculty tried to derail her application for promotion a few years earlier until Professor Butler spoke up in her defense, raising concerns about race discrimination.

Even after the faculty recommended to deny tenure to Professor Butler, Professor Weaver tried to persuade the faculty to hire another Black female for tenure, Professor Lolita Buckner-Innis. On tape, Professor Weaver expressed outrage, that again Professor Rogers and Associate Provost Forrester tried to block the appointment by attacking Professor Buckner-Innis' credentials and maligning her as not collegial and unqualified. Professor Weaver stated on tape that, if SMU did not hire Professor Buckner-Innis, she was going to "support Cheryl by telling it all" and "turn over the defamatory tenure report and file" to Professor Butler's lawyers.

Professor Weaver also complained to Professor Butler that the SMU law faculty has a pattern and practice of applying its tenure standards in a racially discriminatory manner. Professor Weaver recalled how the law deans would raise the requirements for scholarly publications and teaching evaluations when she and Professor Butler applied for promotions but would lower the standards when men, particularly white men, sought tenure and promotion – and that both Weaver and Butler were marked for retaliation for speaking out about these alleged practices. The hostile work environment also included a "code of silence" in which Dean Collins

coerced and intimidated faculty members from reporting acts of discrimination, including the defamatory statements published throughout Professor Butler's tenure process.

Similarly, Tenure Chair Roy Anderson tried to console Professor Butler by claiming that SMU's scheme to retaliate against her was "not personal" or unique to her case. He repeatedly told her that "universities are quirky institutions" and are just not set up to "tolerate so many complaints about discrimination." He said that he personally liked and supported Professor Butler but that the university's decision "to no longer invest in her" was "more of a business decision." Professor Anderson then explained that he had to support SMU's instructions to him to withdraw his support of her because "I am an employee of the university." He said that he wanted to support Professor Butler but if "you are going to sue the university, then, I am out."

<u>Dean Collins and SMU fraudulently Conceal the Defamatory Report by Lying to Plaintiff</u>

Dean Collins and others not only defamed Professor Butler's character and recommended the denial of tenure because Professor Butler "complained too much about discrimination," but also engaged in a scheme to fraudulently conceal the defamatory and discriminatory statements. Upon information and belief, SMU not only placed false and defamatory character attacks in Professor Butler's employment file, without her knowledge, but then engaged several top administrators and the entire tenured law faculty in a bold scheme to deny that the defamatory content was ever placed in the tenure report in the first place.

Dean Collins then deprived Professor Butler of an opportunity to appeal the negative faculty vote by trying to fraudulently conceal the scheme. In violation of SMU Policies and Procedures, Dean Collins and the tenure committee refused to provide Professor Butler with a copy of the report. Instead, Dean Collins and SMU lied to Professor Butler, claiming that SMU never provides professors with copies of their tenure reports, a bold claim which members of the law faculty refuted. By refusing to provide her with her tenure report, defendants deprived Professor Butler of the opportunity to appeal the negative faculty vote by repeatedly denying that the defamatory statements existed in the tenure report.

Dean Collins and other administrators then fraudulently concealed the defamatory tenure report by outright denying that the statements were ever published. Unaware that Professor Butler had taped conversations with the faculty about discrimination and defamation in the tenure process, SMU told Professor Butler that it had investigated her claims and that Dean Collins testified that her tenure report did not contain any attacks on Professor Butler's character at all, including but not limited to, defamatory statements. Dean Collins herself told Professor Butler that there were no attacks on her character made in the tenure report.

Dean Collins and her co-conspirators almost got away with the fraud.

Dean Collins and other administrators repeatedly lied to Professor Butler, denying that the tenure report contained any defamatory statements, any attacks on her character (true or false), and any accusations of misconduct. Administrators across the university co-conspired with Dean Collins, denying that defamation or discrimination played a part in the tenure process. Even SMU's Office of Institutional Equity claimed to have conducted "a thorough investigation" and found no wrong-doing. Instead, Ms. Thomas claimed that the "only reason" that the tenure committee recommended the denial of tenure was for "poor teaching." However, SMU refused to allow Professor Butler to review the tenure report to see for herself what the faculty meant by "poor teaching."

Professor Weaver also suggested that Dean Collins and others continued to defame Professor Butler throughout the 2016-2017 school year in order to thwart exposure of the defamatory statements in an internal investigation. In Professor Weaver's words: "Her fate is the same as yours . . . she's scared." Thus, Dean Collins continued to defame Professor Butler. Professor Weaver and others, throughout the 2016-2017 school year, Dean Collins republished the defamatory statements that plagued the tenure process. Further, in response to Professor Butler's request for an internal investigation of discrimination in the tenure process, Dean Collins told the faculty that Professor Butler "crazy" and "not all there mentally" and, for that reason, she and SMU General Counsel Ward, told the faculty not to support the internal investigation.

In separate conversations, Professor Armour also told Professor Butler that Dean Collins and others were defaming her in response to her internal investigation. For example, Professor Armour, meaning well, told Professor Butler to stop participating in the internal investigation because Dean Collins was arguing to the faculty that Professor Butler's complaints therein "was just more of the same" and "proof" that plaintiff complained too much about discrimination and was "too difficult to deal with." Professor Armour told Professor Butler that instead, a more productive strategy was to get an attorney.

SMU also tried to fraudulently conceal the defamatory statements by refusing to provide Professor Butler with a copy of the report and then, falsely claiming that the university's policy and practice is to withhold tenure reports from tenure candidates. Dean Collins told Professor Butler in writing that it was against university policy to provide faculty with their tenure reports. When Professor Butler contacted Samantha Thomas, Executive Director of the Office of Institutional Equity, and Paul Ward, SMU General Counsel, to protest this discriminatory treatment, these administrators perpetuated the fraudulent scheme by claiming in writing that SMU does not provide tenured faculty with copies of their tenure reports. Certainly, as General

Counsel, Mr. Ward knows that the SMU Bylaws provide that employees have a right to access their employment files.

Professor Weaver baulked at SMU's refusal to provide Professor Butler with a copy of her tenure report – stating over and over on tape that SMU was lying about its tenure process and personnel policies to fraudulently conceal defamatory statements. In several conversations over the course of a year, Professor Weaver states on tape that SMU provided her and several other tenure candidates with the right to review their tenure reports. Professor Armour stated that some, but not all, tenure chairs allowed tenure candidates to see their reports, even if it was not an official policy. Other law professors directed Professor Butler to the SMU Bylaws which expressly states that employees, including Professors, have a right to access their employment files. SMU's refusal to provide the tenure report is fraud and breach of contract.

SMU engaged in fraud by directing its Office of Institutional Equity to conduct a sham investigation into her claims of defamation, discrimination and retaliation. In December 2016, Carolyn Hernandez of SMU's Office of Institutional Equity, (OIE) wrote Professor Butler a letter stating that her office had conducted "a thorough and fair" investigation of Professor Butler's claim of race discrimination in the tenure process (including accusations of wrongdoing expressed in the tenure report) and concluded that there was no discrimination. In private communications with Professor Butler, Professor Weaver baulked at SMU's claim that there was a fair investigation, stating that SMU did not allow Professor Weaver to give a full and truthful account of what really happened and stating on tape that "Dean Collins told them not to allow her" to tell the truth.

From January-May 2017, SMU's Professor Butler smelled more smoke when Samantha Thomas, OIE's Executive Director REFUSED in writing, to tell Professor Butler whether the tenure report contained any defamatory statements, attacks on character or accusations of wrongdoing. Faculty witnesses also told Professor Butler outright that SMU was using other fraudulent tactics to block her attempt to discover the defamatory contents in the tenure report. Faculty members suggested that Paul Ward, SMU's General Counsel, thwarted the investigation by telling faculty members to withhold the tenure report from Professor Butler. Professor Weaver and Professor Kofele-Kale stated that Dean Collins succeeded in discouraging an investigation by telling the faculty members that Professor Butler was "going crazy" and "not all there mentally." Professor Weaver told Professor Butler that therefore, the investigation was a waste of time, that the law faculty would not help. Professor Weaver even opined that appealing to SMU President Gerald Turner was a "waste of time" because Dean Collins had successfully convinced him and the Board of Trustees to get rid of Professor Butler in retaliation for complaints about discrimination.

Further, Professor Butler provided Ms. Thomas with case law from the United States Supreme Court and United States Court of Appeals for the Fifth Circuit holding that universities do not have a privilege of withholding tenure reports in cases where discrimination is alleged. Further, Professor Butler advised Ms. Thomas that SMU's refusal to provide her with a copy of her tenure report both during the tenure process AND during the investigation was breach of contract because these acts violated the policies of American Association of University Professors. Finally, when Professor Butler filed a Charge of Discrimination with the Equal Employment Opportunity Commission, she gave SMU notice that she had taped conversations proving the statements were published. Most telling, Ms. Thomas knew that the SMU Policies and Procedures (Bylaws) state on their face that SMU professors have a right of access to their employment files.

Several faculty members testified that Dean Collins and SMU General Counsel Paul Ward coerced the faculty into refusing to cooperate or testify truthfully. For example, Professor Weaver explains that Dean Collins outright asked her to lie about or deny that any discrimination against Professor Butler took place during the tenure evaluation process. For example, Professor Weaver stated that, early on, Dean Collins told her [to paraphrase] "We need you to say that there was no discrimination during this process." Professor Weaver told Professor Butler that, in response, [to paraphrase] "I told her that I am not going to say that there was no discrimination in the Cheryl thing. So, she knows where I stand on that." In a later conversation, Professor Weaver stated that Dean Collins discouraged Professor Weaver from participating in the internal investigation during the 2016-2017 school year "because she knows where I stand on the race discrimination thing."

At first, Professor Weaver promised Professor Butler that she would testify that SMU placed these defamatory remarks in the tenure report. Professor Weaver promised to be a witness against Dean Collins, promised to help her get her tenure report before Dean Collins edited the defamatory content out, and to preserve a legal file with all the evidence against Dean Collins and others. Professor Weaver also encouraged Professor Butler to have faith that the litigation and discovery process would expose the truth. In Professor Weaver's words: "she is not going to be able to hide what's in the report during the [lawsuit] discovery process." I am not going to lie for her. If there is litigation, I am going to tell it all. And, I know what I have told you. I did not tell you the worst of it. I did not tell you the parts that is most devastating" to Dean Collins.

Professor Weaver also told Professor Butler that Dean Collins was coercing her to remain silent with promises of professional advancement. "They said that I have a future here. They could make me a provost. I could get a promotion." But, Professor Weaver also expressed guilt for considering Dean Collins' efforts to buy her silence. "They keep offering me things. But, I

keep feeling that it is not enough . . . Ndiva [Professor Kofele-Kafe] and I know it's not right that you have to be the sacrificial lamb" for us.

Professors Weaver and Kofele-Kafe promised to give Professor Butler her tenure report, but she had to do some things for them first. Even though Professor Butler was on FMLA leave from work in Houston during Spring 2016, the professors interfered with her FMLA by explaining to Professor Butler (on a recorded line) that, if she wanted the tenure report, she had to come to campus and meet with them. Prior to the meeting, Professor Weaver lamented that she did not want to be left in a racist environment "alone" (as the only Black female professor). Professor Kofele-Kale came up with a plan. Some faculty members were defaming Professor Innis' character as well; therefore, they needed help to get her hired. If Professor Butler went to the press with her story, SMU would "get scared" and hire Professor Innis. (Professor Weaver had already indicated that she would not give the report out of fear of retaliation and that instead, a "senior" professor like Kofele-Kale would have to give it to her). The professors expressed doubt that the university would grant Butler's application for tenure and did admit that, if Butler went public, SMU was going to respond with a "firestorm" and defame her character in public. Professor Weaver admitted that Professor Josh Tate advised against any such plan to go public because Dean Collins had Torts students standing ready to berate Butler has "the worst professor ever." But, Professors Weaver and Kofele-Kale still told Professor Butler that she could get something out of it. Professor Butler could do a good deed by helping them to get SMU to hire Lolita Buckner-Innis and in turn, Professor Kofele-Kale would give her the defamatory tenure report. However, when Professor Butler shared the plan with her counsel, they both advised her to take no part. Professor Kofele-Kale in turn "became outraged" that Professor Butler did not give him a statement to turn over to the press. And, in turn, told Professor Weaver that he changed their mind about giving Professor Butler the tenure report.

In Fall 2016, Professor Weaver warned Professor Butler that she was under increased pressure from SMU to support the university by withholding the tenure report and support Dean Collins' defense. Professor Weaver describes how several faculty, including Professor Kofele-Kale and Professor George Martinez, told her to "take a back seat" and "be loyal to the university." In one of their last phone conversations, Professor Weaver stated that SMU now "knows that I am contacting you now" and warned Professor Butler that if she did not settle, the faculty was ready to further defame her character.

Professor Butler continued to press Professor Weaver to report the discrimination to President Gerald Turner and to turn over the tenure report which Weaver promised to get for her. Professor Weaver stated that it was useless to continue to complain to President Turner because Dean Collins had persuaded him and the Board of Trustees to first block the tenure bid regardless of the outcome of the internal investigation. In Fall 2016, Professor Weaver continued

to insist that the Board of Trustees had already turned against her, suggesting that they were biased because Professor Butler complained about discrimination.

Professor Weaver grew impatient with Professor Butler's requests that she press President Turner to confront Dean Collins and the Board of Trustees. Professor Weaver repeated that this was a waste of time and instead, warned Professor Butler that if she did not settle the matter, SMU was going to keep defaming her character. Professor Weaver herself began badgering and or threatening Professor Butler: "You don't want a reputation in the legal community as a liar. You've been lying to the faculty for years. You need to repent for what you did. You need to ask God for forgiveness. Why couldn't you just apologize? I am talking about what they said about you in your Tenure Letter [report]." In response, Professor Butler told Professor Weaver "Okay, Okay. I will repent right now. Just tell me what they accused me of. What am I repenting for?" Professor Weaver responded, "I don't know." Worn out, Professor Butler told Professor Weaver she had had enough and ended the conversation. Professor Weaver eventually stopped trying to assist Professor Butler in protesting discrimination. Notwithstanding her promises to serve as a witness, Professor Weaver began to ignore Professor Butler's text messages and phone calls asking her to assist with her EEOC investigation.

Professor Butler repeatedly asked several other colleagues for the report. Professor Weaver responded by stating that Professor Butler had a right to the report and she wanted to give it to her but would not because she knew that SMU would retaliate against her for turning it over. Professor Weaver states on tape that other faculty members advised her to stop trying to help Professor Butler's investigation. Finally, Professor Butler appealed to Associate Dean of Faculty Beth Thornburg, reminding her that Dean Thornburg had allowed Professor Weaver to review her tenure report when Weaver was a candidate for tenure. Dean Thornburg refused to provide Professor Butler with a copy of her report.

After Professor Butler filed her Charge with the EEOC and provided SMU's Office of Institutional Equity with the abovementioned proof that SMU was lying about the contents of the tenure report and that the faculty accused Dean Collins of trying to spoil the evidence, SMU further retaliated by "closing shop." Samantha Thomas, Executive Director of SMU's Office of Institutional Equity and Paul Ward, SMU General Counsel and Secretary to the Board of Trustees, each wrote Professor Butler, stating that university would no longer communicate with her at all even though she was still an employee and warned her not to communicate with Dean Collins.

## II. Plaintiff Amends Her Requests for Retraction Dated August & October 2017

As originally stated in her August 2017 and October 2017 letters, Plaintiff persists in her request that Defendants retract, correct, or clarify the following defamatory statements admitted to by SMU faculty during Plaintiff's employment at SMU. Note that, for efficiency, Plaintiff has combined some of the previous Counts/Incidents. Here, we also wish to clarify our inclusion of Defendants President Turner, Dean Collins, Interim Provost Stanley, and FMLA coordinator Rhonda Adams as publishers of defamatory statements in the tenure report even though the tenure committee members – Anderson, Colangelo and Spector – are the presumed authors of the report. A publisher is responsible for defamatory statements republished in a subsequent publication.

The following Counts remain as a basis for her request for retraction and lawsuit:

**Count 1**: Statement: On or about July 28-29, 2016, Professor Weaver discloses to Professor Butler that, in the tenure report and or the tenure vote meeting, Dean Collins and the tenure committee (both orally and in its report) recommended that the faculty deny Professor Butler's application because "Professor Butler complained so much about discrimination that Dean Collins could no longer run the law school."
Publishers: SMU, Collins, Stanley, Thornburg, Anderson, Colangelo, Spector, Martinez, Ward, Currall, Turner, Thomas, Hernandez
Type of Statement: Defamation *Per Se*. The statement is also defamation per se because it accuses her of lacking skill unique to her profession. These statements harmed Professor Butler in her profession as a lawyer and law professor. Honesty, credibility, professionalism are criteria for tenure and employment as a professor at SMU. The false statements also hurt Professor Butler immediately because they resulted in an adverse action.
Context: Professor Weaver states that Professors Anderson and Colangelo signed the report but that Professor Spector, a third member of the Tenure Advisory Committee, refused to sign the report based on the defamatory and discriminatory content. We request that Dean Spector clarify whether she in fact signed or endorsed the undisclosed tenure report and is therefore a defendant to this and other defamation Counts. In conversations with Professor Butler, Dean Spector agreed that SMU was discriminating against her by allowing the tenure committee to argue that she was lying about something without a due process hearing. Therefore, Plaintiff is unsure whether Dean Spector ultimately endorsed the tenure report and therefore, is a defendant to allegations about defamation in the report. Professors Thornburg, George Martinez, Dean Collins and Interim Dean Stanley are the original publishers of the defamatory statement; therefore, they too are liable for the foreseeable republication of the defamatory statement.

Witnesses state that, in the tenure meeting, Dean Collins and Associate Dean Beth Thornburg spoke out in support of the defamatory contents of the tenure report. As further support that the statement was published, Professor Weaver stated that "they put that paragraph in there at the end with your discrimination complaints in mind. They knew they could not deny tenure due to poor teaching evaluations because white people also had worst evaluations and were granted tenure."

As Professor Weaver discloses in July 2016, the defamatory statement was republished to a second audience – the entire tenured faculty of the law school – and done so in an entirely new publication – the tenure report in January 2016. However, Plaintiff had no knowledge of its republication until the July 2016 conversation with Professor Weaver. This tenure report was signed by Professors Anderson and Colangelo.

<u>Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations)</u>: Original Publication in November 2016; Republication in January 2016 to the faculty, in Fall 2016 by Professor Weaver to a new audience, Professor Butler's husband and children, who were capable of comprehending the defamatory meaning. January-May 2017 to senior administration and faculty at SMU.

<u>Request for Retraction, Correction, or Clarification is Timely</u>:

(1) The request for retraction is timely under the TDMA and its case law, which provide that in the case of confidential documents, a statute of limitations for a request for retraction, a defamation claim, and the right to exemplary damages are preserved until Plaintiff receives and reads the document for herself and or learns of the "exact words" used to defame her.

(2) The request for retraction is timely based on the last date of republication of the statement. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016 and forwarded the defamatory tenure report to Provost Currall in May 2016. From January 2017-May 2017, Dean Collins republished the defamatory statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides

notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Plaintiff requested retraction in July 2017, less than a year after that notice.

(3) The request for retraction is likewise timely under the fraudulent concealment doctrine which preserves the claim until plaintiff receives notice of the defamation. In July 28-29, 2016, Professor Weaver, disclosed for the first time that, Dean Collins, Interim Provost Stanley, Professor Anderson, and Professor Colangelo republished the defamatory statement in the tenure report and during the tenure discussion.

(4) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**Count 2:** Statements: Defendants accuse Plaintiff of "lying on her FMLA application" and or "forging or conspiring to forge FMLA documents" or otherwise "faking" the need for FMLA protection.
Publishers: SMU, Turner, Stanley, Adams, Anderson, Colangelo, Spector, Collins, Thornburg, Currall, Thomas, Hernandez
Type of Statement: Defamation and Defamation *Per Se*. Forgery is criminal activity.
Falsity: Any statement accusing Plaintiff of "lying" about anything related to her employment is a false statement of fact that is independently verifiable as false. Any statements accusing Plaintiff of 'forging" medical documents or planning or attempting to forge medical documents is a false statement made with malice and in bad faith. The statement is made with malice and in bad faith. Professor Butler did not lie to her tenure committee about any material facts related to her employment or application for tenure and promotion. On tape, members of the law faculty opine that SMU's accusations that Plaintiff lied were "evil," "questionable" and retaliatory. Defendant Professor Anderson makes the allegation on tape that President Turner was in communication with Professor Anderson about Professor Butler's application for tenure and promotion as well as her application for FMLA leave. Professor Anderson suggests that he could not acknowledge her FMLA-qualifying events in part because Dean Collins and President Turner accused her of "lying about FMLA" even before she submitted her application for tenure and promotion. In January 2016, tenure committee member Dean Spector, gives a similar account by reporting that Rhonda Adams told Dean Collins and the tenure committee that Professor Butler lied

on her application for tenure and promotion. An original publisher of a defamatory statement, such as Adams, is liable when others republish the statement.

Professor Weaver also confirmed that the faculty accused Professor Butler of lying about FMLA. On or about September – October 2016, Professor Weaver discloses to Professor Butler that her tenure report stated that Professor Butler "had a penchant for lying" and that therefore, the faculty advocated that the denial of her application for tenure because, to paraphrase, we "do not want someone like her on the law faculty who is a liar" or "we do not want someone like her on the faculty because she is a liar." Professor Weaver confirmed that some of the allegations related to Professor Butler's requests for FMLA leave, which SMU granted.

Dean Spector's recorded conversations with Professor Butler corroborate Professor Anderson's taped allegation that President Turner warned him that Professor Butler allegedly falsified her FMLA application. Dean Spector also corroborates that SMU administrators were accusing Professor Butler behind her back about "lying about FMLA." On the eve of the tenure vote, Dean Spector told Professor Butler: "you lied to me" about FMLA. Professor Spector also stated that Rhonda Adams told the tenure advisory committee that plaintiff allegedly lied on her FMLA application. On tape, Dean Spector told Professor Butler that she agreed with Professor Butler's argument that SMU was discriminating against her by accusing her of lying about FMLA without due process. In response, Dean Spector agreed that tenure process was discriminatory and/or violated Professor Butler's civil rights under the ADA and FMLA. On the eve of the tenure vote, Professor Spector told Professor Butler that she was going to go to Provost Stanley and to the faculty on Professor Butler's behalf to argue that it was discriminatory to proceed with the tenure vote given that the faculty had not investigated accusations that Professor Butler had "lied" about her FMLA.
<u>Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations)</u> Original Publication in November 2016; Republication in January 2016 to the faculty, in Fall 2016 by Professor Weaver to a new audience, Professor Butler's husband and children, who were capable of comprehending the defamatory meaning.
January-May 2017 to senior administration and faculty at SMU. The statement was fraudulently concealed until Fall 2016. In September-October 2016, Professor Weaver told Professor Butler that the tenure committee republished this accusation about lying about FMLA in the tenure report. At first, Professor Weaver told Professor Butler that the tenure report suggested that Professor Butler should be denied tenure because she is a "liar" but opined that the tenure report was not talking about FMLA. She said that she would check

the report. In Fall 2016, Professor Weaver reported that the accusations about lying "were about FMLA to tell you the truth."

Request for Retraction, Correction, or Clarification is Timely:

(1) The request for retraction is timely based on the last date of republication of the statement. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016 and forwarded the defamatory tenure report to Provost Currall in May 2016. From January 2017-May 2017, Dean Collins republished the defamatory statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Professor Weaver repeated the statements to Professor Butler's family in Fall 2016. Plaintiff requested retraction in July 2017, less than a year after that notice.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on undisclosed specific words when the documents in which the defamatory words are published is disclosed. Therefore, plaintiff reserves her rights until the court compels discovery during litigation.

(3) Plaintiff's right to demand retraction and seek exemplary damages for defamation is also preserved under the discovery rule which, in the case of confidential documents, tolls the statute of limitations until Plaintiff receives the undisclosed document.

(4) The request for retraction is likewise timely under the fraudulent concealment doctrine which preserves the claim until plaintiff receives notice of the defamation. Here, the limitations period runs from September-October when Professor Weaver disclosed the statement.

(5) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**<u>Count 3:</u>** In January 2016, Professor Weaver disclosed that Associate Provost Forrester stated that Professor Butler "lied to her students" and lied about something related to her work responsibilities. Professor Weaver did not disclose the exact words that Associate Provost used to accuse Professor Butler of misconduct. Professor Weaver also suggests on tape that Professor Paul Rogers likewise accused Professor Butler of unspecified misconduct. Professor Weaver stated on tape that, after the tenure vote, several faculty members confronted Provost Forrester and Professor Rogers about their misconduct but suggested that the professors would not retract their statements.
<u>Publishers</u>: SMU, Turner, Stanley, Rogers, Forrester, Collins, Currall, Thomas, Hernandez
Type of Statement: Defamation and Defamation *Per Se*. The statement accuses Plaintiff of lacking skill unique to her profession.
<u>Context</u>: On tape, Professor Weaver advised that Provost Forrester published her defamatory attacks in a letter and that the letter was placed in Professor Butler's employment file. However, SMU has refused to disclose the employment file so that Professor Butler could learn of the exact words that Provost Forrester allegedly used and to assess whether the content is defamatory. Professor Butler then engaged in due diligence to try to verify the accuracy of Professor Weaver's claims and evaluate for herself whether there were any defamatory statements in her employment file.

Therefore, Professor Butler wrote to Dean Collins in January 2016 asking whether any defamatory statements, character attacks (even if not legally 'defamatory') or accusations of misconduct were made during her tenure process. Dean Collins wrote Professor Butler back stating that no accusations of misconduct played a role in the faculty's vote to recommend denial of tenure.

Seeing a conflict between the testimonies of Dean Collins, on the one hand, and several faculty members on the other hand, Professor Butler reached out to the Office of Institutional Equity to request a copy of her employment files. Samantha Thomas and Dean Collins told her that the tenure report was confidential. Professor Butler then continued her reasonable diligence and relayed these determinations to faculty members who were advising her. One of them, Professor Weaver, baulked at the claim that the tenure report and other parts of the employment file were confidential. Professor Weaver and others advised Professor Butler to review the SMU Bylaws, which expressly state that an employee has a right to the employment file. The faculty also advised that the discrepancy lied in

Dean Collins attempts to edit out the defamatory content of the report and otherwise make the defamatory content of the report difficult for Professor Butler to discover.

Publication Dates for Timeliness: (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January 2016 to the faculty, in Fall 2016 by Professor Weaver to a new audience, Professor Butler's husband and children, who were capable of comprehending the defamatory meaning.

January-May 2017 to senior administration and faculty at SMU.

Request for Retraction, Correction, or Clarification is Timely:

(1) The request for retraction is timely based on the last date of republication of the statement. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016. From January 2017-May 2017, Dean Collins republished the defamatory statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Plaintiff requested retraction in July 2017, less than a year after that notice.

(2) The request for retraction is timely under the TDMA and its case law, which provide that in the case of confidential documents, a statute of limitations for a request for retraction, a defamation claim, and the right to exemplary damages are preserved until Plaintiff receives and reads the document for herself and or learns of the "exact words" used to defame her.

(3) Under the Discovery Rule, where defendant withholds confidential documents, the statute of limitations is tolled until Plaintiff receives a copy of the document. Therefore, plaintiff reserves her rights until the court compels discovery of the fraudulently concealed her tenure report and employment files. Plaintiff's right to demand retraction and seek exemplary damages for defamation is also preserved under the discovery rule which tolls the statute of limitations until Plaintiff receives the undisclosed document.

(4) The doctrine of Equitable Estoppel preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on undisclosed specific words when the documents in which the defamatory words are published is disclosed.

(5) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**Count 4:** In a four-hour phone call from July 29-30, 2016, Professor Weaver, for the first time discloses to Professor Butler that the tenure report not only accused her of lying but also recommended the denial of tenure because she was **"**unfit to be a lawyer or a law professor." In context, Professor Weaver says that the faculty said she was "unfit to be a lawyer or law professor" because of the attacks on her character published in the tenure report.

Publishers: SMU, Turner, Stanley, Adams, Anderson, Colangelo, Spector, Collins, Thornburg, Thomas, Hernandez, Currall, Forrester, Rogers

Type of Statement: Defamation and Defamation *Per Se.* The statement is defamation Per Se because it accuses her of lacking skill unique to her profession.

Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January 2016 to the faculty, in Fall 2016 by Professor Weaver to a new audience, Professor Butler's husband and children, who were capable of comprehending the defamatory meaning.

January-May 2017 to senior administration and faculty at SMU.

Request for Retraction, Correction, or Clarification is Timely:

(1) The request for retraction is timely based on the last date of republication of the statement. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016 and forwarded the defamatory tenure report to Provost Currall in May 2016. From January 2017-May 2017, Dean Collins republished the defamatory statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides

notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Plaintiff requested retraction in July 2017, less than a year after that notice.

(2) The request for retraction is timely under the TDMA and its case law, which provide that in the case of confidential documents, a statute of limitations for a request for retraction, a defamation claim, and the right to exemplary damages are preserved until Plaintiff receives and reads the document for herself and or learns of the "exact words" used to defame her.

(3) The request for retraction is likewise timely under the fraudulent concealment doctrine which preserves the claim until plaintiff receives notice of the defamation. Here, the limitations period runs from September-October when Professor Weaver disclosed the statement.

(4) The doctrine of Equitable Estoppel preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on undisclosed specific words when the documents in which the defamatory words are published is disclosed.

**Count 5:** On or about September – October 2016, Professor Weaver told Professor Butler for the first time that her tenure committee report included a "paragraph" that accused her of lying about experiencing discrimination at SMU and recommended the denial of tenure based on these lies. Professor Weaver did not disclose the exact words used in this "paragraph" but explained the intent and overall meaning.

Publishers: SMU, Adams, Anderson, Colangelo, Spector, Forrester, Collins, Stanley, Turner, Thornburg, Thomas, Martinez, Currall

Type of Statement: Defamation and Defamation *Per Se*. Professor Butler teaches Employment Discrimination. Therefore, accusations of lying to the administration would injure a law professor in her profession as a teacher and citizen of the university. The SMU Bylaws state that material statements of dishonesty to the university community are incompatible with one's role as a university professor. Further, lying about a civil rights matter is inconsistent with the Code of Conduct of most Bar Associations.

Context: Professor Weaver explained that they "wrote a paragraph in the tenure report with your discrimination complaint in mind." Professor Weaver explained that defendants SMU intended that paragraph give the impression that Professor Butler made intentionally false or misleading statements in an internal employment complaint and or that Professor Butler

made meritless claims of discrimination. Professor Butler stated that the tenure report recommended the denial of tenure in part because the tenure advisory committee opined that the complaints had no merit. Professor Weaver also suggested that the statements in the tenure report were placed there to intentionally undercut Professor Butler's credibility in an anticipated lawsuit.

November 2016: Along these lines, in a separate conversation, Professor Armour also Professor Butler that the tenure process and tenure report defamed her character by deeming her unfit to be a tenured faculty member at SMU Law because she complained about discrimination and asserted her civil rights. Professor Armour discloses to Professor Butler that, during the faculty meeting on tenure candidates, Associate Dean Beth Thornburg slandered Professor Butler by labeling Professor Butler "as difficult to work with." Professor Armour suggested that the context was not merely of opinion but had a specific defamatory meaning and code for the SMU law faculty. According to Professor Armour, law faculty uses the code word "difficult" to label candidates to defame a candidate as unqualified once the candidate files civil rights complaints against professors or the university. Professor Armour further explained that the faculty used this word in the context of a complaint or repute that Professor Butler "insisted on asserting her rights under the Civil Rights Code." Professor Armour provided more context saying they "targeted you" by "calling you difficult." To further demonstrate the meaning of the label had also been used on a former tenure candidate who filed a sexual harassment complaint in the past against a former member of Professor Butler's tenure committee. Professor Armour said that in retaliation for the sexual harassment complaint, the faculty labeled the tenure candidate "difficult" and as a result, they derailed her tenure application in the same way that the same faculty members now derailed Professor Butler's application for tenure. This label injured Professor Butler in her profession as a law professor because collegiality and professionalism are used as criteria for tenure decisions.
<u>Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations)</u>: Original Publication in November 2016; Republication in January 2016 and January-May 2017.

<u>Request for Retraction, Correction, or Clarification is Timely:</u>

(1) The request for retraction is timely because last date of republication of the statement is within the one-year statute of limitations. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016. From January - May 2017, Dean Collins republished the defamatory

statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Plaintiff requested retraction in July 2017, less than a year after that notice.

(2) The request for retraction is timely under the TDMA and its case law, which provide that in the case of confidential documents, a statute of limitations for a request for retraction, a defamation claim, and the right to exemplary damages are preserved until Plaintiff receives and reads the document for herself and or learns of the "exact words" used to defame her.

(3) The request for retraction is likewise timely under the fraudulent concealment doctrine which preserves the claim until plaintiff receives notice of the defamation. Here, the limitations period runs from September-October when Professor Weaver disclosed the statement.

(4) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**Count 6:** On or about September – October 2016: For the first time, Professor Weaver discloses to Professor Butler that, during that time-period, Dean Collins was going around telling the faculty that Professor Butler "is crazy" or "going crazy." Professor Weaver explained that the context for the statement was that Professor Butler was mentally unfit to serve as a law professor. Professor Weaver discloses that Dean Collins motive for spreading this knowingly false rumor, even though the tenure process is over, is to discourage the faculty from helping Professor Butler investigate her claim of discrimination in the tenure process. Professor Weaver also said that Dean Collins was advancing this statement to develop a defense or mount a defense for herself and SMU in the event Professor Butler sued.

Publishers: SMU, Collins, Ward, Turner, Stanley, Thomas, Hernandez, Adams

Type of Statement: Defamation and Defamation *Per Se*. Under the SMU Bylaws, Moral depravity, in most cases, is inconsistent with the ability to serve as a law professor at the university.

Defendants Thomas, Adams and Hernandez shared Plaintiff's medical records with faculty. Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in September 2016-May 2017.

Request for Retraction, Correction, or Clarification is Timely:

(1) The request for retraction is timely because the request was made within one year of publication. Professor Weaver stated that Dean Collins was publishing these defamatory statements at the same time that Professor Butler disclosed them – in September 2016. The request for retraction was first made less than a year later, in July 2017.

(2) The demand for retraction is timely under the fraudulent concealment doctrine. The demand for retraction is within one year of the discovery of the fraudulently concealed doctrine.

(3) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**Count 7:** On September 30, 2016, Professor Weaver tells Professor Butler that the tenure committee and report accused her of "lying to the faculty for years even way before the FMLA" incidents. Professor Weaver stated to Professor Butler for that reason, the tenure decision "really all came down to your credibility."
Publishers: SMU, Adams, Anderson, Colangelo, Spector, Collins, Stanley, Turner, Thornburg, Currall
Type of Statement: Defamation and Defamation *Per Se*
As to the context of the statement, Professor Weaver urged Professor Butler to settle her case because SMU would perpetually defame her character if she persisted with a lawsuit. "You don't want a reputation for being a liar . . . I'm talking about what they said about you in your [tenure] letter.
Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January 2016 to the faculty, in Fall 2016 by Professor Weaver to a new audience, Professor Butler's husband and children, who were capable of comprehending the defamatory meaning, and in January-May 2017 to senior administration and faculty at SMU.

Request for Retraction, Correction, or Clarification is Timely:

(1) The request for retraction is timely based on the last date of republication of the statement. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016. From January 2017-May 2017, Dean Collins republished the defamatory statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Plaintiff requested retraction in July 2017.

(2) The request for retraction is timely under the TDMA and its case law, which provide that in the case of confidential documents, a statute of limitations for a request for retraction, a defamation claim, and the right to exemplary damages are preserved until Plaintiff receives and reads the document for herself and or learns of the "exact words" used to defame her.

(3) The request for retraction is likewise timely under the fraudulent concealment doctrine which preserves the claim until plaintiff receives notice of the defamation. Here, the limitations period runs from September-October when Professor Weaver disclosed the statement.

(4) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**Count 8:** September 2016: Professor Weaver told Professor Butler for the first time that the tenure report accused her of some unholy act or conduct involving turpitude. Professor Weaver insisted that: "You need to repent to God for the things that you've done. Why couldn't you just apologize for what you did? . . . I'm talking about what they said about you in the [tenure] letter." Professor Weaver refused to disclose the exact words that were used.

Publishers: SMU, Adams, Anderson, Colangelo, Spector, Collins, Stanley, Turner, Thornburg, Currall, Thomas, Adams, Hernandez

Type of Statement: Defamation and Defamation *Per Se*. Crimes or acts of serious moral turpitude are considered defamation *Per Se.*

As to the context of the statement, Professor Butler asks Professor Weaver to clarify whether, by this conversation, she meant that other faculty members published this statement during the process or whether she was admitting that she too previously published these statements.

Publication Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication January-May 2017.

Request for Retraction, Correction, or Clarification is Timely:

(1) The request for retraction is timely based on the last date of republication of the statement. Under Texas common law, the limitations period for a request for retraction beings anew each time the defamatory statement is republished to a new audience and/or each time the defendants publish a new defamatory statement. The defamatory statement was republished by Dean Collins in her own report to Provost Currall in May 2016. From January 2017-May 2017, Dean Collins republished the defamatory statements to Samantha Thomas who conducted an internal "investigation" into discrimination in the tenure process, Dean Collins republished these false allegations as grounds for arguing that the denial of tenure was not discriminatory. SMU provides notice of this third publication via its EEOC Position Paper when it claims Professor Butler repeatedly went to the Office of Institutional Equity at SMU but failed to articulate who discriminated against her or the nature or type of discrimination she was experiencing. Plaintiff requested retraction in July 2017, less than a year after that notice.

(2) The request for retraction is timely under the TDMA and its case law, which provide that in the case of confidential documents, a statute of limitations for a request for retraction, a defamation claim, and the right to exemplary damages are preserved until Plaintiff receives and reads the document for herself and or learns of the "exact words" used to defame her.

(3) The request for retraction is likewise timely under the fraudulent concealment doctrine which preserves the claim until plaintiff receives notice of the

defamation. Here, the limitations period runs from September-October when Professor Weaver disclosed the statement.

(4) The request for retraction is also timely under the doctrine of equitable estoppel. SMU coerced and intimidated Professor Butler and several witnesses from sharing her tenure report or protesting the discriminatory content with threats of reprisal.

**III. The Defamatory Statements Published During Plaintiff's Employment and Disclosed by Defendants in the SMU's EEOC Position Paper**

Plaintiff requests retraction, correction and or clarification for the following statements published by Defendants of or concerning Plaintiff during her tenure process and or employment and disclosed in the Position Paper.

**Count 9**: "Plaintiff turned in her grades late every semester." Along these lines, SMU also stated: "It [The Tenure Advisory Committee noted that Butler . . . missed her grading deadlines in every semester."
Publishers: SMU, Dean Collins, Professor Anderson, Professor Colangelo, Stanley, Currall
Type of Statement: Defamation and Defamation *Per Se* because it accuses her of lacking skill unique to her profession.
Context: This statement is false. SMU, by its own admission, concedes that this the statement injured Plaintiff in her profession in that SMU used the statement as grounds for denying Plaintiff's application for tenure and promotion. The false statement further injured Professor Butler in her profession by suggesting that she was not committed to performing her teaching duties with the requisite time, care, attention, and due diligence required of a law professor. Plaintiff adds Collins as a Defendant because she originally published the false accusation that Plaintiff turned in all her grades late and therefore, presumably republished the statement.

Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

Request for Retraction, Correction, or Clarification is Timely:

(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application

for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed document.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on the specific words in the tenure report and other documents in which the defamatory words are published is disclosed.

**Count 10**: "Butler did not care about teaching . . . The Tenure Advisory Committee also concluded that Butler lacked a commitment to teaching."
Type of Statement: Defamation *Per Se*
Publishers: SMU, Collins, Stanley, Anderson, Colangelo, Spector, Currall
The statement is not excused as opinion because it is independently verifiable as false and made in bad faith and with malice, i.e., knowledge of its truth and reckless disregard for its truth. Further, the tenure chair, Defendant Professor Roy Anderson states that this is not his true opinion. Rather, Dean Collins and Provost Stanley told him to place in the tenure report knowingly false and misleading statements. The statement is also defamation per se because it accuses her of lacking skill unique to her profession.
Context: This accusation is distinct from the claims that Professor Butler is not skilled as a teacher. The statement is defamation *per se* as it injures Professor Butler in her profession. A law professor, no matter how talented or skilled, is not fit to teach if she does not care about any of her three major job responsibilities: scholarship, teaching, and service. SMU admits that this the statement injured Plaintiff in her profession in that SMU used the statement as grounds for denying Plaintiff's tenure and promotion.
Type of Statement: Defamation and Defamation *Per Se*.

Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

Request for Retraction, Correction, or Clarification is Timely**:**

(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time

when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed document.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on the specific words in the tenure report and other documents in which the defamatory words are published is disclosed.

**Count 11:** "Butler alleges that SMU purportedly discriminated against her by not promoting her to a newly created Director of Human Trafficking Position in the law school . . . The facts show that Butler never applied for the position, never expressed an interest in the position, and never raised this as a basis for discrimination with SMU."
Type of Statement: Defamation and Defamation *Per Se*. The statements impute an ill motive by Plaintiff. They also injure her in her profession as a law professor. Professor Weaver states that the tenure committee and faculty recommended the denial of tenure in part because plaintiff lied about experiencing discrimination at SMU.
Publishers: SMU, Currall, Collins, Thornburg, Ward, Thomas
Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

Request for Retraction, Correction, or Clarification is Timely:

(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed document.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on the specific words in the tenure report and other documents in which the defamatory words are published is disclosed.

**<u>Count 12</u>:** "Butler then claims that she and Jessica Dixon Weaver, a tenured African American professor in the law school in 2014 and has never complained of discrimination, retaliation or a hostile work environment. And when IAE questioned Butler regarding facts that might support such claims, she could identify none. Her assertion amounted to concern regarding general discrimination in the academic environment of society at-large and nothing that could support a claim against SMU." Along these lines, SMU falsely stated: "Butler contacted IAE in September 2015 but identified no discrimination or retaliation by SMU or the tenure committee and asked IAE not to take further action." SMU similarly stated: "IAE met with Butler to determine her complaint and fully investigate it. Butler had none. Butler was unable to specifically point to any issue with SMU, stating only that she believed that society generally discriminated against African Americans and females in the academic field. By the conclusion of the meeting with IAE, it seemed clear that both IAE and Butler understood that there was no specific misconduct on the part of anyone at SMU and nothing that SMU could remedy. Butler had identified no individual at SMU who had discriminated against her, and she specifically asked IAE not to further investigate." Defendants also state:

"Her complaints of alleged civil rights violations dealt with general discriminatory treatment in the academic world as it related to African American women law professors. She did not identify any member of the tenure committee who had engaged in civil rights violations and could point to no actions of SMU that were discriminatory or retaliatory."

<u>Publishers:</u> SMU, Hernandez, Thomas, Collins, Anderson, Colangelo, Stanley, Ward, Spector, Adams, Currall, Martinez, Thornburg

<u>Type of Statement:</u> Defamation and Defamation *Per Se*. The statements suggest moral depravity and mental instability and or statements suggest that Plaintiff was harassing or menacing or interfering with the ability of the school to conduct business by repeatedly making baseless claims.

<u>Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations)</u>: Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

<u>Request for Retraction, Correction, or Clarification is Timely:</u>

(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for

tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed doctrine in December 2017.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on specific words in the tenure report and other documents are disclosed to Plaintiff.

**Count 13**: "On one occasion, Butler did not even write her exam until the day of the test, resulting in an exam that was inadequate and far different than what the students were expecting." SMU also stated: "The Dean also noted other issues such as Butler's failure to prepare for class as demonstrated by Butler not preparing a December 2014 exam until the very day of the exam and a May 2015 [sic] containing multiple choice questions that failed to ask a question."
Publishers: SMU, Collins, Thornburg, Stanley, Anderson, Colangelo, Currall
Type of Statement: Defamation and Defamation *Per Se.* The statement is defamation *per se* because it accuses her of lacking skill unique to her profession.
Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

Request for Retraction, Correction, or Clarification is Timely:

(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed statement.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on the specific words in the tenure report and other documents in which the defamatory words are published is disclosed.

**Count 14**: "Butler failed to submit her textbook selection on a timely basis, did not agree to the times or dates of the courses to be taught, and had not confirmed her availability for teaching with the Dean. In light of this, SMU informed Butler that she would not be

assigned any classes and could use her final year to continue to advance her scholarship or to continue to recover as she saw fit."

Publishers, SMU, Collins, Hernandez, Thomas, Currall, Ward

Type of Statement: Defamation and Defamation *Per Se*. The statement is also defamation per se because it accuses her of lacking skill unique to her profession.

Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

Request for Retraction, Correction, or Clarification is Timely:

(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed statements.

(2) The Texas Defamation Mitigation Act preserves Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on the specific words in the tenure report and other documents in which the defamatory words are published is disclosed.

**Count 15**: "Butler just began failing to appear for class or cancelling classes at the last minute with no explanation until the students complained. . ."

Type of Statement: Defamation and Defamation *Per Se*. The statement is defamation *per se* because it accuses her of lacking skill unique to her profession.

Publishers: SMU, Collins, Ward, Thornburg, Stanley, Currall, Anderson, Colangelo, Thomas

Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper.

Request for Retraction, Correction, or Clarification is Timely**:**
(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed document.

(2) The Texas Defamation Mitigation Act and the doctrine of Equitable Estoppel preserve Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on undisclosed specific words when the tenure report and employment files in which the defamatory words are published is disclosed.

**Count 16**: "The first mention of any discrimination complaints came in the Fall 2015 semester (September) when it became clear to Butler that her teaching evaluations were negative and this could impact her tenure decision. Butler began vaguely complaining of discrimination in the academic environment as it related to African American Women professors. She did not file any formal or informal complaint of discrimination."
Publishers: SMU, Collins, Ward, Thornburg, Stanley, Anderson, Colangelo, Thomas
Type of Statement: Defamation and Defamation *Per Se*. The statement is also defamatory because it imputes a dishonorable motive to Plaintiff. Professor Weaver testified that SMU denied tenure because Plaintiff allegedly lied about experiencing discrimination at SMU.
Publication / Disclosure Dates for Timeliness (Under Texas law, each republication triggers a new one-year statute of limitations): Original Publication in November 2016; Republication in January-May 2017. Fraudulently concealed until December 2017 when the EEOC sent the SMU Position Paper. The position paper is the first time Defendants admit to having published the statements during Plaintiff's employment.

Request for Retraction, Correction, or Clarification is Timely**:**
(1) The demand for retraction is timely under the fraudulent concealment doctrine. As SMU now reveals, this statement was first published in the tenure report in January 2016 and or during the tenure process from January 2016 to May 2016 and then used as a ground to deny Plaintiff's application for tenure and promotion. Plaintiff discovered the statement for the first time when SMU told the EEOC the grounds for the denial of her application for tenure and promotion. The demand for retraction is within one year of the discovery of the fraudulently concealed doctrine in December 2017.

(2) The Texas Defamation Mitigation Act and the doctrine of Equitable Estoppel preserve Plaintiff's right to demand retraction, sue for defamation, and seek exemplary damages based on undisclosed specific words when the documents in which the defamatory words are published is disclosed.

Given SMU's own admissions about publishing the abovementioned defamation, we hope that Defendants will mitigate damages and retract the statements. If you have any questions about Plaintiff's requests for retraction, correction or clarification, please contact me.

Very truly yours,

kennard richard P.C.

Alfonso Kennard, Jr.

AK/kh

cc:

Keenya R. Harrold [Firm]
Senior Counsel

Cheryl Butler
Client