IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CHERYL BUTLER, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 3:18-CV-37 |
| | § | |
| JENNIFER P. COLLINS, ET AL., | § | |
| Defendant | § | |

RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

I. TABLE OF CONTENTS

II. TABLE OF AUTHORITIES

III. ARGUMENTS AND AUTHORITIES

**A.** Standard of Review

   1.  Professor Butler has Plead Prima Facie Claims of Defamation and Defamation Per Se

**B.** The Texas Commission on Human Rights Act Does Not Preempt Defamation or Other Tort Claims Against These Individual Defendants

**C.** The TCHRA Does Not Preempt All Tort Claims Against SMU

   1.  This Court Has Allowed Defamation and TCHRA Claims to Proceed Together

   2.  Texas Courts Use Evidence of Discrimination to Support, Not Preempt,  Defamation Claims

   3.  The Gravamen of Professor Butler's Claim is Libel & SMU's Defamation "Goes Well Beyond the Sort of Discrimination that the TCHRA was Designed to Preempt"

C.      Plaintiff's Conspiracy to Defame Claim is Not Preempted

**D.** Under the Texas Defamation Mitigation Act, Professor Butler's Retraction Requests and Defamation Claims are Both Timely

      **1.**  Retraction Requests Were Timely Sent

      **2.**  The Limitations for Libel and Retraction Requests Do Not Run Until Plaintiff Receives the Publication – Which Has Not Occurred

      **3.**  The TDMA's Remedy for Failure to Request Retraction is Abatement, Not Dismissal, of the Suit

**E.** Alternatively, the Suit is Timely Under the Multiple Publication Rule

**F.** Alternatively, the Defamation Suit is Timely Based on Equitable Exceptions

      1.  Like the TDMA, the Modified Discovery Rule Tolls the Limitations Period Until Plaintiff Receives a Copy of the Publication
      2.  The Suit is Timely Under the Fraudulent Concealment Doctrine
      3.  Equitable Estoppel Applies: Defendants Coerced Witnesses & Spoliated Evidence

**G.** The Absolute Privilege Does Not Apply

1.  Plaintiff Has Not Pleaded that Her Claim is Based on Publication  to the EEOC

2.  SMU's Statements to the EEOC Were Previously Published in the Workplace Where the Absolute Privilege Did Not Attach

3.  The Statements Were Not Related to an Imminent Judicial Proceeding

**H.**  Plaintiff Has Stated a Claim for Fraud

**I.**  The Defendants Are Individually Liable for Violating Plaintiff's FMLA Rights

**J.**  The Individual Defendants are Liable Under the Sec.1981

CONCLUSION

## II. TABLE OF AUTHORITIES

**CASES**

*Aguilar v. Ashbury Motive Group, Inc*., H- 6-467 (S.D. Tex. 2016)          3

*Alaniz v. Hoyt*, 105 S.W.3d 330, 333 (Tex. App. - Corpus Christi 2003, no pet.)          17

*Al-Khazraji v. St. Frances College*, 784 F.2d 505, 518 (3rd Cir.1986)), *aff'd on other grounds*, 481 U.S. 604, 107 S. Ct. 2022 (1987))          23, 24

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.  Ct. 1937, 173 L.Ed 2d 868 (2009))          1

*Azadpour v. Blue Sky Sports of Keller*, 3:17-cv-1335-n-BK (N.D. Tex.  2018)          3, 5

*Bancpass Inc. v. Highway Toll Administration LLC,* (W.D. Tex. Aug. 25, 2016)          9, 10

*Bancpass Inc. v. Highway Toll Admin.  LLC*, 863 F.3d 391 (5th Cir. 2017)          18

*B.C. v. Steak N Shake Operations, Inc.,* no. 15-0404 *8-9 (Tex. 2017)          3

*Block v. Tanenhouse*, No. 6-30966 (5th Cir. 2017)          6

*Brown v. PetroLite Corp*., No. 91-8020 (5th Cir. 1992)          6

*Brown v. Sessions*, 774 F.3d 1016, 1021 (D.C. Cir. 2014)          25

*Cinel v. Connick,* 15 F. 3d 1338, 1341 (5th Cir. 1994)          1

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)          11

*Cuba v. Plant*, no. 15-10213 (5th Cir. 2016)          19

*D Magazine Partners, LP v. Rosenthal*, 529 S.W.3d 429 (2017)          2

*Doe v. St. Stephens Episcopal School,* 09-41108 (5th Cir. 2010)          14

*Donavan v. Grim Hotel Grim Hotel*, 747 F.2d 966 (5th Cir. 1984)          21, 22

*Duffy v. Leading Edge Product, Inc*., no. 93-2850 (5th Cir. 1995)          6

*Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)          14

*EEOC v. Emcare, Inc.,* 857 F.3d 678 (5th Cir. 2017)          25

*Ehrhardt v. Electrical & Instrumental*, 1:00-cv-831, 200 F. Supp. 649 (E.D. Tex. 2002)          5

*Exxon Corp. v. Emerald Oil Co. L.C.*, 348 S.W.3d 194, 217 (Tex. 2011)   20

*Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), *cert. den.*, 422 U.S. 1006 (1975)   23

*Foley vs. University of Houston Sys.*, 355 F.3d 333 (5th Cir. 2003)   23, 25

*Fracks v. Crete Carrier Corp.,* 579 F.3d 426 (5th Cir. 2009)   12

*Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612 (Tex. App. – Houston [14th Dist.] 1984, writ ref'd n.r.e), cert. den., 478 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed. 720 (1985)   6

*Garcia v. Randall's Food & Drugs LP*, 3:13-cv-1248-0 (N.D. Tex. 2014)   5

*Gore Scotland Golf, Inc.*, 136 S.W.3d 26, 32 (Tex. App. – San Antonio 2003, pet. den.)   4

*Goswami v. DePaul Univ.,* 2015 U.S. Dist. LEXIS 5937 (N.D. Ill. 2015)   25

*Haire v. Bd. La. State Univ.*, 719 F.3d 356, 365-66 (5th Cir. 2013)   25

*Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013)   2

*Hardwick v. Houston Light. & Pow. Co.*, 881 S.W.2d 195, 198 (Tex. App. – [Corpus Christi] 1994, writ. dism. w.o.j.)   17

*Hardy v. Comm'cn Workers of Am. Local*, 62195 AFL-CIO, no. 05-16-00829-cv-2017 WL 1192800, *8 (Tex. App. – Dallas March 2017, reh'g den.)   10, 11

*Hersh v. Tatum,* No. 16-0096 (Tex. June 30, 2017)   24

*Holloway v. Butler,*  662 S.W.2d 688  (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.)   11

*Inge v. Walker*, no. 3-16-cv-0042-B_ (N.D. Tex.  2017)   11

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)   2, 11

*Jackal v. Affirmative Serv., Inc.*, no. 3:13-cv-3954-L (N.D. Tex. 2015)   5

*James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)   15

*JLG Trucking LLC v. Garza*, 466 S.W.3d 157, 164 (Tex. 2015)   8

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984)   11

*Kelley v. Rinkle,* 523 S.W.2d 947 (Tex. 1976)   13

*Klein v. O'Neal Inc.*, 7:03-cv-102-D  (N.D. Tex. 2008)                                14

*Kostic v. Texas A&M Commerce*,  3:10-cv-2263-M, 2015 WL 4775398
  (N.D. Texas  2015)                                                                    5

*Mangreso v. Oceanside Unified School District*, 88 Cal. App. 2d 725 (1979)            13

*McClennan v. Oncor Elec. Delivery Co.*, 3:12-cv-00531-G BF 2012 WL 3072340
  (N.D. Tex. 2014)                                                                      24

*McLennan v. Veitch*, 519 F. App'x 260 (5th Cir. 2013)                                 24

*McNeil v. Lovelace*, 529 S.W.2d 633, 636-37 (Tex. Civ. App. – Ft. Worth 1975, no writ) 15

*Medina v. Houston Intern. Ins. Group Ltd.*, 4:13-CV-3343, 2015 WL 459256, at *4 (S.D. Tex.
  Feb. 2, 2015)                                                                         23

*Memorial Hermann Health System v. Khalil*, No. 01:16-00512 (Tex. App.-Houston March 28,
  2017 _____)                                                                           12

*Miller v. Wachovia Bank, N.A.*, 541 F. Supp.2d 858 (N.D. Tex. 2008) _____     23

*Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006)                                  20, 21

*Moyer v. Jos. A. Bank*, 3:11-cv-3076-1 (N.D. Tex. 2013)                               5

*Neely v. Wilson*, No. 11-022 (Tex. 2012)                                             13

*Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013)                                       2

*Ohemeng v. Delaware,* 643 F. Supp. 1575 (1986)                                        24

*Overall v. Estate of Klotz*, 94-7407 (2nd Circ.1995)                                  15

*Patton v. Adesa Tex., Inc.,* 985 F. Supp. 2d at 822 (N.D. Tex. 2013)                  3

*Pisharodi v. Barrash*, 116 S.W.3d 858, 864 (Tex. App. 2013)                           16

*Rendon v. Roman Catholic Dioses of Amarillo*, 60 S.W. 389, 391 (Tex. App. – Amarillo, 2001,
  *pet. den.*).                                                                         15

 *Roark v. Kidder Peabody Co.,* 959 F. Supp. 379 (N.D. Tex. 1997)                      5

*Russell v. Clark*, 620 S.W.2d 865, 870 (Tex. Civ. App. – Dallas 1981, writ ref'd n.r.e.) 18

*Roque v. Natchitoches Parish School Bd*, no. 14-30053 (5th Cir. 2014)        25

*Rose v. _____*, 907 S.W.2d at 642 (  )        17

*St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)        6

*Schribner v. Waffle House, Inc.*, 993 F. Supp. 976, 978-79 (N.D. Tex. 1998)        7

*Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex. App. 1997, pet. den.)        14

*Shell v. Writt*, no. 13-0552 (Tex. 2014)        18,19

*Shively v. Bozanich,* 80 P.3d 676 (Cal. 2003)        13

*Smith v. Bd. Of Supervisors of Southern Univ. & Agricultural and Mechanical College,* no. 16-30097 (5th Cir. 2016)        25

*Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)        1

*Staheli v. Smith* 548 So.2d 1299, 1303 (Miss. 1989 )        13

*Stephan v. Baylor*, _____  (5th Cir. _____)        11, 17

*Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002)        1

*Smith v. Shred-It USA*, 3:10-cv-831-0BK, *8-9 (N.D. Tex. 2010)        12

*Tatum v. Dallas Morning News*, 050140011017-CV (Tex. App. - Dallas 2015 _____)        2

*Tavoulareas v. Pico*, 817 F.2d 762, 789 (D.C. Cir.)(en banc), cert. den. 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed 2d 151 (1987)        6

*Tubbs v. Nicol*, 15-CV-00002, 2016 WL 7757386, at *3 (S.D. Tex. Apr. 19, 2016)        10

*Tubbs v. Nicol*, 675 F. App'x 437 (5th Cir. 2017) (unpublished)        10, 11

*Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000)        2

*U.S. Ex. Rel. Bias v. Tangipahoa Parish School Bd.*, 15-30193, 816 F.3d 320, 321 (5th Cir. 2016).        1

*Velocity Databank v. Shell*, 2014 WL 7473797, __ SW 3d __ (Tex. App. – Houston [1st Dist.] 2014, pet. filed)        13

*Waffle House v. Williams*, 313 S.W.3d 796, 799 (Tex. 2010)                3, 4, 5

*Walker v. FDIC*, 970 F.2d. 114 (5th Cir. 1992)                4

*Warner Bros. Entert'mt, Inc. v. Jones*, no. 03-16-00009-cv
    (Tex. App. - Austin Dec. 21, 2017)                11

*Watkins v. Tex. Dep't of Crim. Just.,* 06-20843 (5th Cir. 2008)                5

*Watson v. Graves*, 909 F.2d 1549, 1533 (5th Cir. 1990)                *21*

*Westfall v. GTE North, Inc.*, 956 F. Supp. 707 (N.D. Tex. 1996)                5

*Wheeler v. Methodist Hospital,* 95 S.W.3d 628, 639-40 (Tex. App. - Houston [1st Dist.] 2002, no
    pet.)                12

*White v. Gurnsey*, 48 Or. App. 931, 618 P. 1975 (1980)                13

*Wilson v. Retail Credit Report*, 438 F.2d 1043 (5th Cir. 1971)                13

Wilson, 667 F. 3d at 595                1

*Wu v. Mississippi State University*, 2015 U.S. LEXIS 7354 (5th Cir. 2015)                24

**RULES OF COURT**

Federal Rule of Civil Procedure 8(d)(2)(3)-(4)                8

Federal Rule of Civil Procedure 12(b)(6)                11


Texas Rule of Civil Procedure 48                1

**FEDERAL STATUTES**

29 U.S.C. § 201 *et seq.*,  Fair Labor Standards Act ("FLSA")                21, 22

29 U.S.C. § 203(d)                21

29 U.S.C. § 2601, et seq. Family and Medical Leave Act ("FMLA")                5, 20, 21, 22, 23

29 U.S.C. § 2611(4)(A)(ii)(I)                21

42 U.S.C. § 1981 (a),  The Civil Rights Act of 1866                1, 23, 24

42 U.S.C. § 2000 (e) et seq., Title VII                3

**TEXAS STATUTES**

Tex. Civ. Prac. & Rem. Code §16.063                                    9

Tex. Civ. Prac. & Rem. Code §73.001                                   2

Tex. Civ. Prac. & Rem. Code §§73.055(a)-(b)                      8, 10

Tex. Civ. Prac. & Rem. Code § 73.055(c)(3), (d)(3)               10

Tex. Lab. Code Ann. § 21.001, et seq. , Texas Commission on Human Rights Act    *passim*

**OTHER AUTHORITIES**

Restatement (Second) Torts § 563 (1977), comment d                 *passim*

Restatement (2d) Torts §§ 570-57 (1977)                            *passim*

Restatement (Second) torts Sec. 577A, cmt a (1977)                 *passim*

Restatement (Second) of Torts §577A *cmt. A & cmt. B* (1977)       *passim*

Restatement (Second) Torts Sec. 588 (1981)                         *passim*

## III. ARGUMENTS AND AUTHORITIES

### K.  Standard of Review

Dismissals under Federal Rule of Civil Procedure 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).   A complaint survives a motion to dismiss under Rule 12(b)(6) if its facts, accepted as true, "state a claim to relief that is plausible on its face." *U.S. Ex. Rel. Bias v. Tangipahoa Parish School Bd.*, 15-30193, 816 F.3d 320, 321 (5th Cir. 2016).   This standard requires only that a plaintiff "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.  Ct. 1937, 173 L.Ed 2d 868 (2009)).

The Court is to "focus on the complaint as a whole." *Wilson*, 667 F. 3d at 595.  Thus, a Rule 12(b)(6) motion tests the formal sufficiency of the statements of the claims for relief. It is not a proceeding for resolving contests about the facts or the merits of the case. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) "The issue is not whether a plaintiff will prevail, but whether the claimant is entitled to offer evidence to support the claims."   Dismissal is improper if the allegations support relief on any possible theory'" *U.S. Ex. Rel. Bias,* 816 F.3d at __ *(quoting Cinel v. Connick,* 15 F. 3d 1338, 1341 (5th Cir. 1994)).

### A.  Professor Butler has Plead Prima Facie Claims of Defamation and Defamation *Per Se*

To state a *prima facie* case of defamation, a "plaintiff must prove that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the

10

plaintiff was a private individual, regarding the truth of the statement; (4) Plaintiff suffered harm. *D Magazine Partners, LP v. Rosenthal*, 529 S.W.3d 429 (2017).

Under the Texas law, "a libel is a defamation expressed in written or other graphic form that . . . tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule or financial injury or to impeach any person's honesty, integrity, virtue or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule or financial injury." Tex. Civ. Prac. & Rem. Code 73.001.   A statement is defamation *per se* if it "(1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity; or (2) is a falsehood that injures one in his office, business, profession, or occupation." *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013) (citing Restatement (2d) Torts §§ 570-57; *Tatum v. Dallas Morning News*, 050140011017-CV (Tex. App. [Dallas 2015]).

Whether a statement is defamatory or defamatory *per se* is a question of law for the Court. *Neely v. Wilson*, 418 S.W.3d 52, 63 (2013).  To determine whether a statement is defamatory, the Court must "examine its 'gist' -  that is construe the publication -'as a whole in light of surrounding circumstances based on how a person of ordinary intelligence would perceive it."  *D Magazine Partners, LP*, 529 S.W.3d at __. (quoting *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000)).  Plaintiff's Second Amended Complaint (the "Live Complaint") pleads facts to support each element of her defamation and defamation *per se* claims. CITE.

To contend that Plaintiff fails to plead facts supporting "publication," Defendants only reference the text of the Live Complaint, while ignoring the Requests for Retraction appended to and incorporated within the Complaint.[8] Yet, "[P]leadings in the Rule 12(b)(6)" context "include attachments to the complaint."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) Thus, the retraction requests painstaking detail of the substance and context of  the

---

[8] The Requests for Retraction are found at Exhibit __ to the Complaint.

11

"publication" of the defamatory and Professor Butler's EEOC Charge, are part of the Live Complaint. Defendants' disregard of the exhibits thus renders their argument meritless. Professor Butler plead that Defendants published the Statements. ("Exh. __ at __). Moreover, Defendants admit in their EEOC Position Paper (CITE) that they published these statements in the workplace prior to confessing them to the EEOC.  Defendants do not challenge Plaintiff's *prima facie* case on any other grounds. Therefore, Defendants' Motion to Dismiss should be denied.

## L.  The Texas Commission on Human Rights Act Does Not Preempt Defamation or Other Tort Claims Against These Individual Defendants

Plaintiff has asserted tort claims against Defendants _____ (CITE) in addition to its TCHRA claims against Southern Methodist University ("SMU"). Defendants' argue that the Texas Commission on Human Rights Act (**"**TCHRA") preempts Professor Butler's tort claims against the individual Defendants on the grounds that the claims are based on the same facts. . Courts in this District, and within the Fifth Circuit, have repeatedly rejected Defendants' argument. Following *Waffle House v.* _____ _____, courts have held that the TCHRA does not bar tort claims against individual defendants *even if* the Tort claims intersect with TCHRA or Title VII claims.[9]

As the decision in *Patton v. Adesa, Inc.,* 985 F. Supp.2d 818, 822 (2013) illustrates, Defendants misconstrue *Waffle House* to be a bar to suits against individual co-workers when plaintiffs have complained that the employer has discriminated in violation of the TCHRA. In *Patton*, the plaintiff sued her employer under the TCHRA and brought tort claims against her co-

---

[9] *See Azadpour v. Blue Sky Sports of Keller*, 3:17-cv-1335-n-BK (N.D. Tex. Jan. 5, 2018), *accepting findings*, (N.D. Tex. January 19, 2018); *Patton v. Adesa Tex., Inc.,* 985 F. Supp. 2d at 822 (N.D. Tex. 2013) (statutory claims against corporate employer do not bar plaintiff from asserting defamation, conspiracy and negligence against individual employees) (citing *Waffle House v. Williams*, 313 S.W.3d 796, 799 (Tex. 2010)) and *B.C. v. Steak N Shake Operations, Inc.,* no. 15-0404 *8-9 (Tex. 2017)); *Aguilar v. Ashbury Motive Group, Inc.*, H- 6-467 (S.D. Tex. 2016)(citing *Patton,* 985 F. Supp. 2d at 822).

12

workers for defamation, conspiracy, and tortious interference with contract. *Id.*   Defendants moved to dismiss, relying upon *Waffle House* to argue that plaintiff's tort claims were preempted because they were "rooted in the same facts inseparable" from the TCHRA claims against the employer. *Id.*   The court found that:

> Defendants read *Waffle House* too broadly. *Waffle House* held that the conduct forming the basis of the statutory TCHRA claim against the employer cannot form the basis of common law negligence claims against the same employer . . . Yet, that rule applied to the *employer*. There is nothing in *Waffle House* that bars a plaintiff from also asserting intentional torts against individuals.

*Id.* at 822 (citing *Waffle House*, 313 S.W.3d at 803)).

Defendants argue that the TCHRA preempts torts claims against individuals who "were acting within the scope of their employment" relying upon a page of cases [CITE to motion] holding that individuals cannot be sued individually under the TCHRA.    This argument has no merit as it is well settled under Texas law that individuals can be sued for fraud even if they acted within the scope of their employment. *See e.g., Gore Scotland Golf, Inc.,* 136 S.W.3d 26, 32 (Tex. App. – San Antonio 2003, pet. den.); *See also Walker v. FDIC*, 970 F.2d. 114 (5th Cir. 1992). These cases also are inapplicable because Plaintiff has sued individuals under tort law, not the TCHRA. Thus, the real issue is whether Professor Butler can sue the individual Defendants for their defamation, conspiracy and fraud if their acts are the basis for Plaintiff's TCHRA action against SMU. *Patton* answers "Yes". The TCHRA does not bar plaintiff from suing individual defendants for their tortious conduct. *See Patton,* 985 F. Supp. 2d at 822.

## M. The TCHRA Does Not Preempt All Tort Claims Against SMU

### 4.  This Court Has Allowed Defamation and TCHRA Claims to Proceed Together

Defendants' argue that defamation and conspiracy to defame claims[10]  against SMU are preempted.   Courts in this Circuit have disagreed, holding that *Waffle House* preempts negligence claims, but not defamation claims, against employers. *Moyer v. Jos. A. Bank*, 3:11-cv-3076-1 (N.D. Tex. 2013)(finding that *Waffle House* preempted negligence claims, while allowing Title VII and defamation claims to proceed to adjudication on the merits.); *See ., Watkins v. Tex. Dep't of Crim. Just.,* 06-20843 (5th Cir. 2008)(Title VII and defamation claim); *Azadpour v. Blue Sky Sports of Keller*, 3:17-cv-1335-n-BK (N.D. Tex.  2018), accepting findings, (N.D. Tex.  2018); *Kostic v. Texas A&M Commerce*,  3:10-cv-2263-M, 2015 WL 4775398 (N.D. Texas  2015) (§ 1983  and defamation claims); *Jackal v. Affirmative Serv., Inc.*, no. 3:13-cv-3954-L (N.D. Tex. 2015); *Garcia v. Randall's Food & Drugs LP*, 3:13-cv-1248-0 (N.D. Tex. 2014)(FMLA, TCHRA and defamation claim); *Ehrhardt v. Electrical & Instrumental*, 1:00-cv-831, 200 F. Supp. 649 (E.D. Tex. 2002); *Westfall v. GTE North, Inc.*, 956 F. Supp. 707 (N.D. Tex. 1996) (Defamation and TCHRA claims); *see also Roark v. Kidder Peabody Co.,* 959 F. Supp. 379 (N.D. Tex. 1997) (intentional infliction and emotional distress ("IIED") and TCHRA  claim). Therefore, the Court must deny Defendant's Motion to Dismiss on preemption grounds.

**5.  Texas Courts Use Evidence of Discrimination to Support, Not Preempt,  Defamation Claims**

Preemption  of  defamation  claims  based  on  intersecting  discrimination  is  particularly unorthodox given that courts routinely recognize that discriminatory animus can be the motive for  defamation,  proof  of  defamation,  or  grounds  to  rebut  defenses  to  the  defamation  claim. First, courts recognize discriminatory animus as evidence in understanding the gist and context

---

[10] In filing her Second Amended Complaint, it was Plaintiff's intent and desire to waive ALL negligence claims against Defendant SMU.  Plaintiff reserves her right to assert negligence claims against the individual Defendants.

of the defamatory statement. See e.g., Restatement (Second) Torts § 563 (1977), comment d ("In determining the meaning of a communication, words, whether written or spoken are to be construed together with their context.")  In other words, a statement may in fact be defamatory when viewed in the context of a scheme of racial retaliation. See e.g., *Block v. Tanenhouse*, 16-30966 (5th Cir. 2017) ("the omission of context can distort the meaning of a direct quotation.")

Second, common law malice ("discriminatory animus") can be used as possible evidence of "actual malice" ("reckless disregard for the truth" in defamation cases). See *Duffy v. Leading Edge Product, Inc.*, no. 93-2850 (5th Cir. 1995)("although we recognize that proof of ill will or animosity is not required to show actual malice . . . evidence of ulterior motive can bolster an inference of actual malice.")(citing *Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612 (Tex. App. – Houston [14th Dist.] 1984, writ ref'd n.r.e), cert. den., 478 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed. 720 (1985)) *****

Third, courts allow evidence of discrimination to defeat the qualified privilege defense in defamation cases. See *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)("recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports); *Brown v. PetroLite Corp.*, no. 91-8020 (5th Cir. 1992), *11 (a court or jury may infer actual malice from objective circumstantial evidence which can override a defendants' protestations of good faith.")(citing *Tavoulareas v. Pico*, 817 F.2d 762, 789 (D.C. Cir.)(en banc), cert. den. 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed 2d 151 (1987)   Courts recognize that interwoven facts establishing defamation and discrimination can very well strengthen the foundations of defamation claims rather than serve as a ground for preemption.

**6.   The Gravamen of Professor Butler's Claim is Libel & SMU's Defamation "Goes Well Beyond the Sort of Discrimination that the TCHRA was Designed to Preempt"**

Here, the gravamen of Professor Butler's's defamation is  libel, not discrimination. She has plead a prima facie case for libel, based on Defendants' publication of false numerous statements intended to, according to members of the SMU faculty (CITATION), to destroy Professor Butler's career so that she could never obtain work as a law professor or attorney. These statements, standing alone, constitute libel. Her gender and race discrimination claims in the Live Complaint are not dependent on the libelous statements referenced in the Live Complaint, specifically:      _____. [CITE] Moreover, there are additional facts unrelated to TCHRA claims – namely defamation that may be unrelated to race retaliation.

The outrageous defamation in this the case is beyond the simple discrimination case envisioned by the TCHRA. In *Schribner*, the court allowed plaintiff to sue the corporate defendant simultaneously under defamation, Title VII and TCHRA harassment. *See Schribner v. Waffle House, Inc.*, 993 F. Supp. 976, 978-79 (N.D. Tex. 1998) (allowing plaintiff to sue defendant Waffle House for TCHRA sexual harassment and defamation). The court distinguished between the preemption of negligence claims vs. defamation and IIED claims:

> "Waffle House subsequently argues, unconvincingly, that plaintiff's tort claim is preempted by the TCHRA.  The sexual harassment suffered by Schibner goes well beyond the sort of discrimination that the TCHRA was designed to preempt. Although the TCHRA has been held to preempt common law claims or negligent supervision, none of the cases cited by Waffle House hold that IIED claims based on workplace harassment are preempted."

*Id.* at 979.  Similarly, in the case at bar, the discriminatory harassment and defamation suffered at the hands of SMU and these individual defendants are precisely the type of cases that go beyond the "plain discrimination" cases contemplated by the TCHRA.  The goal was not merely to discriminate or terminate this employee of SMU, but to squash [CITATION] her ability to ever gain employment consistent with her leadership, advocacy, scholarship, legal and teaching

skills, experience, and her education. This type of injury was not the type that the legislator intended to remedy with statutory damage caps.

Alternatively, even if Plaintiff does plead facts that connect the defamation to TCHRA discrimination, this alone is not a ground to dismiss her defamation complaint at this stage in the litigation because this case involves a libelous document that remains fraudulently concealed. Under both the Texas and Federal Rules of Civil Procedure, Plaintiff has exercised her right to plead multiple theories of recovery. See *JLG Trucking LLC v. Garza*, 466 S.W.3d 157, 164 (Tex. 2015); see Fed. R. Civ. Pro. 8(d)(2)(3)-(4); Tex. R. Pro. 48.   Particularly because this case involves a fraudulently concealed defamatory document, Plaintiff reserves the right to plead multiple theories of recovery, until the truth about the circumstances behind the defamation revealed in discovery.   The testimony of some witnesses may in fact conflict. Her Live Complaint properly notes that witnesses, such as Professor Weaver, concluded that discriminatory intent motivated the defamation.   Other witnesses, such as SMU Law Tenure Committee members, have stated that they did not intend to discriminate, but concede that they published statements with a reckless disregard for the truth.[CITATION]

**C.  Plaintiff's Conspiracy to Defame Claim is Not Preempted**

The Court should deny Defendants' Motion to Dismiss Plaintiff's count of conspiracy to defame because, as discussed above, her defamation claims are not preempted.

**N.  Under the Texas Defamation Mitigation Act, Professor Butler's Retraction Requests and Defamation Claims are Both Timely**

Under the Texas Defamation Mitigation Act (TDMA"), "a person may maintain an action for defamation only if (1) the person has made a timely and sufficient request for a correction, clarification, or a retraction from the defendant . . . the request is timely if made during the period of limitations for commencement of suit." Tex. Civ. Prac. & Rem. Code §§73.055(a)-(b).

Generally, the limitations period for libel is one year. Tex. Civ. Prac. & Rem. Code 160002(a). The limitations period begins to run for both a Retraction Request and libel claim when the defamed person physically receives the publication at issue – even if she was aware generally of the defamatory statements before such receipt. *See Bancpass Inc. v. Highway Toll Administration LLC,* (W.D. Tex. Aug. 25, 2016).

Defendants make the premature argument that plaintiff supposedly did not serve a retraction request within one year of the original publication of the defamatory statements and therefore, her suit is not timely.  Defendants' failure to cite any case law is by design; their arguments conflict with recent case law interpreting these provisions of the TDMA, as well as Texas common law exceptions to the one-year statute of limitations.

### 4.  Retraction Requests Were Timely Sent

According to prior Counsel's representations to Butler, Plaintiff's Request for Retraction have been timely served on all the remaining Defendants. Moreover,  Emergency Order on Statutes of Limitations, no. 17-9098 (Tex. 2017),tolled all statute of limitations on state claims from August 29, 2017 until at least Sept. 2018).  The statute of limitations was further tolled during any and all further absences by Defendants from the State of Texas  between  January 2016 to August 2017.  *See* Tex. Civ. Prac. & Rem. Code §16.063.  Plaintiff will seek such evidence during Discovery.

### 5.  The Limitations for Libel and Retraction Requests Do Not Run Until Plaintiff *Receives* the Publication – Which Has Not Occurred

In the Live Complaint, Professor Butler plead that she has not received a copy of the defamatory tenure report that forms part of the basis of her claims.  In *Bancpass*,  the plaintiff was generally aware that there were letters written by defendants to TxDOT that defamed plaintiff's character. Plaintiff but did not have access to the letters to read them.  *Id.* Plaintiff

18

sued (or requested retraction) for defamation after receiving a copy of the letter during discovery. *Id.* at __.  The court held that the plaintiff did not "receive knowledge of the publication" within the meaning of the TDMA as the plaintiff had not received a copy of the defamatory publication itself and discovers the "specific words" that defendant allegedly used to defame until just before plaintiff sued.  *Id.*  The court rejected defendant's argument that general awareness of defamatory statement was enough to trigger the 90-day limitations period for requesting retraction, correction or clarification, *Id.,* reasoning that under § 73.055(c)(3), (d)(3),

> "It does not appear that plaintiff Bancpass could have complied with the statute by 'stat[ing] with particularity' the alleged false and defamatory statements prior to April 10, 2015, the date it received the letters."

*Id.* Therefore, under *Bancpass*, Defendants' argument, that Plaintiff's general knowledge of the defamatory report triggered the statute of limitations, has no merit.

### 6. The TDMA's Remedy for Failure to Request Retraction is Abatement, Not Dismissal, of the Suit

Alternatively, even if any of the other Defendants did not receive timely Retraction dismissal of the defamation claims against those Defendants is unwarranted. It is well-settled that untimely retraction requests do not bar defamation claims. Instead, case abatement is the TMDA remedy in that situation. TDMA. *See Hardy v. Comm'cn Workers of Am. Local*, 62195 AFL-CIO, no. 05-16-00829-cv-2017 WL 1192800, *8 (Tex. App. – Dallas March 2017, reh'g den.) ("… dismissal of the plaintiff's claim is not the consequence authorized by the DMA for a plaintiff's failure to make the required request [for retraction]").[11]  The Northern District follows

---

[11] With *Hardy*, the Texas Supreme Court has resolved a split in authority on the issue of whether the TDMA requires dismissal of a defamation claim altogether if a plaintiff fails to timely request retraction. Without any Texas Supreme Court precedents at the time, one court in the Southern District of Texas, made an Erie guess and dismissed the defamation claim because the Plaintiff had not requested retraction. *Tubbs v. Nicol*, 15-CV-00002, 2016 WL 7757386, at *3 (S.D. Tex. Apr. 19, 2016). The Fifth Circuit affirmed. *Tubbs v. Nicol*, 675 F. App'x 437 (5th Cir.

*Hardy. Inge v. Walker, no. 3-16-cv-0042-B, *__ (N.D. Tex.  2017); See also, Warner Bros. Entert'mt, Inc. v. Jones, no. 03-16-00009-cv (Tex. App. -  Austin Dec. 21, 2017).*

## O.  Alternatively, the Suit is Timely Under the Multiple Publication Rule

Professor Butler's lawsuit is timely under Multiple Publication Rule because Defendants re-published the statements within one year of suit. [12]Under this rule, "a plaintiff is not limited to a single cause of action in the event the same information appears in separate printings of the same publication or in different publications." *Holloway*, 662 S.W.2d at 692.  Instead, "separate printings of the original content are considered subsequent publications . . . it is apparent that the publisher intends to reach different audiences and this intention justifies a new cause of action." *Holloway,* 662 S.W.2d. at 692 (quoting *Stephan,* 20 S.W.3d at 889) (reversing summary judgment).  In other words, the statute of limitations for defamation begins upon "publication" and starts anew for each subsequent "republication" of each statement.  *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984): Restatement (Second) torts Sec. 577A, cmt a (1977).

All of Defendants challenges to the Multiple Publication rule are mere window dressing. First, Defendants assert that Professor Butler has claimed only "two instances of republication." Again, this argument ignores the notion that "[p]leadings in the Rule 12(b)(6) content include attachments to the complaint."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  The Live Complaint and the Requests for Retraction, Exhibit ___, in combination, alleged that Defendants

---

2017) (unpublished).  However, in *Hardy*, the Texas Court of Appeals expressly rejected the construction of the TDMA in *Tubbs*, and instead held that the remedy for a plaintiff's failure to request retraction is to abate, not to dismiss, the suit.

[12] Between January 2017-May 2017, were SMU republished Statements #3-8 of  Collins, Anderson, Colangelo, and others to SMU's Samantha Thomas.   Likewise, Statements #9-16 were republished in January 2017-May 2017. This re-publication was within one year of the filing of suit.  In the Live Complaint, and Requests for Retraction attached to her Complaints, Professor Butler pleads the dates of publication and republication of the statements. CITATION.

re-published *each* statement at least twice *within one year of suit*.  Second, Defendants' claim that the re-publication doctrine does not apply because Weaver is not a defendant. Defendants ignore the other re-publication dates within the year of the August 2017 lawsuit. .  Plaintiff plead that, between January-May 2017, SMU, Collins, Anderson, Colangelo republished Statements to Thomas.   In January 2017-May 2017, Collins, Ward, and Thomas republished Statements #9-16. Additionally, Professor Butler pleads facts supporting the theory of re-publication of defamation through words or conduct. See *Fracks v. Crete Carrier Corp.,* 579 F.3d 426 (5th Cir. 2009).  In August 2017, Defendants republished defamatory statements through their act of failing to allow Professor Butler to resume her teaching load, including any of three civil rights courses in which she received unanimously outstanding teaching evaluations. Witnesses state that Defendants Collins and Thomas told the faculty that SMU would not let her return to work because, as was previously published during her tenure evaluation period, Professor Butler was  "crazy", "not all their mentally" and "we do not want a liar like her on the faculty."

Third, Defendants argument, that the defamatory statements were not "published" because SMU employees represent the "same audience," is patently useless.. "Texas law is clear that statements are considered 'published' even if only made in the workplace to other employees or managers."  *Smith v. Shred-It USA*, 3:10-cv-831-0BK, *8-9 (N.D. Tex. 2010); *Memorial Hermann Health System v. Khalil*, ---- (Tex. App.-Houston 2017)("Statements are considered 'published' even if they are made to employees . . . in the same company.")

Fourth, Defendants' suggestion, that neither the original publishers nor re-publishers are liable, defies basic common law principles.  Under Texas law, both groups of tortfeasors are liable.  Contrary to Defendants' argument, the original publisher *is* liable for the republication of a defamatory statement as well. *Wheeler v. Methodist Hospital,* 95 S.W.3d 628, 639-40 (Tex.

App. - Houston [1st Dist.] 2002, no pet.) Moreover, "the almost universal rule in the United States is that one is liable for republishing a defamatory statement." *Neely v. Wilson*, 11-022 *2, n.3 (Tex. 2012).

**P.  Alternatively, the Defamation Suit is Timely Based on Equitable Exceptions**

### 4.  Like the TDMA, the Modified Discovery Rule Tolls the Limitations Period Until Plaintiff Receives a Copy of the Publication

Under the modified discovery rule, the statute of limitation is tolled where, as here, plaintiff had general knowledge of the defamation but did not receive the defamatory publication. In the context of confidential or withheld documents, courts apply a mode limitations period until plaintiff receives a copy of the fraudulently withheld document.   In *Kelley v. Rinkle,* the seminal case on the discovery rule, the court held that, in cases involving private documents such as credit reports, an exception applies, allowing the statute of limitations to run from the time plaintiff received the defamatory document, as opposed to the date defendant published the document.  *Id.* (citing *Wilson Retail Credit Report*, 438 F.2d 1043 (5th Cir. 1971)).

Courts have relied upon *Kelly* to adopt a *modified* discovery rule in which hidden tenure reports, employment files and business memos are not "published" until the Plaintiff received a copy of or access to the defamatory document. *See Velocity Databank v. Shell*, 2014 WL 7473797, __ SW 3d __ (Tex. App. – Houston [1st Dist.] 2014, pet. filed) *; Shively v. Bozanich,* 80 P.3d 676 (Cal. 2003) (quoting   *Staheli v. Smith* 548 So.2d 1299, 1303 (Miss. 1989))(defamation in withheld tenure reports )*; see also Mangreso v. Oceanside Unified School District*, 88 Cal. App. 2d 725, 152 Cal. Rpt. 27(1979) (letter in teacher's perm); *White v. Gurnsey*, 48 Or. App. 931,  618 P. 1975 (1980) (libelous memo on employee).

Particularly, in *Staheli*, the court applied the modified discovery rule to extend the statute of limitations on the grounds where a professor had general knowledge of defamatory statements in his tenure file but could not access the file.  The court held that the statute of limitations did not run until he received the tenure file during discovery.  Likewise, the Court should extend Plaintiff's limitations period on the same grounds and deny Defendants' Motion to Dismiss.

### 5.  The Suit is Timely Under the Fraudulent Concealment Doctrine

The doctrine of fraudulent concealment "suspend[s] the running of limitations until such time as the plaintiff learned of, or should have discovered, the deceitful conduct of facts giving rise to the cause of action." *Doe v. St. Stephens Episcopal School,* 09-41108 (5th Cir. 2010), citing *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999). To prove fraudulent concealment as a tolling theory, plaintiff must plead(1) the existence of the underlying tort; (2) the defendants' knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Klein v. O'Neal Inc.*, 7:03-cv-102-D *6 (N.D. Tex. 2008).  Furthermore, "a defendant may conceal facts either by 'active misrepresentation' or 'passive silence.'" *Id.* at *6-7 (quoting *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex. App. 1997, *pet. den*.))

Plaintiff has pleaded facts supporting fraudulent concealment as a tolling theory. In her Second Amended Complaint and Requests for Retraction Plaintiff pleaded facts supporting fraudulent concealment of Statements #5-8 8 until September 30, 2016. Plaintiff filed suit for the statement(s) in August 2017.  Statements #9–20 were published in the workplace in May 2017. Defendants fraudulently concealed Statements #9-20 until December 2017 when the EEOC disclosed them to Plaintiff.  She sued based on these statements in January 2018. CITE TO RETRACTION LETTERS

### 6. Equitable Estoppel Applies: Defendants Coerced Witnesses & Spoliated Evidence

"Estoppel in avoidance of limitations may be invoked in two ways: a potential defendant conceals facts that are necessary for the plaintiff to know he has a cause of action; or defendant engages in conduct that induces the plaintiff to forgo a timely suit regarding the cause of action that plaintiff knew existed." *Rendon v. Roman Catholic Dioses of Amarillo*, 60 S.W. 389, 391 (Tex. App. – Amarillo, 2001, *pet. den.*). Texas law tolls the statute of limitations where the defendants used coercion, duress, spoliation of evidence or civil obstruction of justice to delay suit. *Overall v. Estate of Klotz*, 94-7407 (2nd Circ.1995); *McNeil v. Lovelace*, 529 S.W.2d 633, 636-37 (Tex. Civ. App. – Ft. Worth 1975, no writ.)  Here, Defendants fraudulently concealed the statements by withholding Plaintiff's tenure report and lying to Professor Butler about SMU's official policy regarding access to tenure reports. Further, SMU coerced Professors Weaver begged Professor Butler to delay suit because otherwise SMU would retaliate against Professor Weaver. On tape, Professor Butler's Tenure Chair, Professor Anderson warned that he would withdraw support for her tenure bid if she sued.  On tape, the law faculty suggested to Professor Butler that Dean Collins was attempting secretly edit the defamatory content out of the tenure report and then lying about it in Court. Therefore, the Court should toll the statute limitations through equitable estoppel.

## Q. The Absolute Privilege Does Not Apply

Defendants challenge Statements #9-16 with a misguided theory that Plaintiff's suit is based on publication of these statements to  the EEOC. The general rule is that "communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). However, the absolute privilege does not apply.

24

**4.  Plaintiff Has Not Pleaded that Her Claim is Based on Publication  to the EEOC**

SMU's communications to the EEOC do not "serve as the basis of [Plaintiff's] civil action for libel or slander" and therefore, absolute immunity is not a defense.   Defendants misconstrue Plaintiff's pleadings. To be clear, Plaintiff's statements #1-8 have nothing to do with the EEOC Position Paper; therefore, Defendants cannot even assert absolute immunity as to these statements.   Furthermore, no absolute privilege can attach to Statements #9-16 either because Plaintiff does not state a claim based on the discussion of these Statements in the EEOC Position Paper.  CITE THE RULE. The repeating of the statements in the Position Paper are no more material to the suit than the discussion of the Statements in Defendants' Motion to Dismiss.

Nowhere in her Second Amended Complaint does Plaintiff allege that her suit is based on SMU's repetition of its defamatory statements in the EEOC Position Paper.  To the contrary, she repeatedly states that her suit is based on publication of the statements in the workplace.  In each of her retraction letters, Plaintiff states the re-publication events that form the basis of the lawsuit and nowhere does she assert that publication or republication to the EEOC forms the basis of her defamation suit. Furthermore, Plaintiff's October 2017 Retraction Letter expressly states that her claim is in no way based on a "publication" to the EEOC.

**5.  SMU's Statements to the EEOC Were Previously Published in the Workplace Where the Absolute Privilege Did Not Attach**

The absolute privilege does not apply because Plaintiff's suit is based on Defendants' publication of the statements in the workplace before she even filed an EEOC charge. Particularly, the absolute privilege for quasi-judicial proceedings is waived if the statements are published outside of the quasi-judicial proceeding. "Although libelous statements made in connection to a judicial proceeding are absolutely privileged, republication of such statements outside of such judicial content waives the privileges." *Pisharodi v. Barrash*, 116 S.W.3d 858,

864 (Tex. App. 2013); *see Alaniz v. Hoyt*, 105 S.W.3d 330, 333 (Tex. App. - Corpus Christi 2003, no pet.) ("The absolute privilege is lost if the holder of the privilege repeats the statements outside of the protected context within which (citing *Rose*, 907 S.W.2d at 642).   However, publications of the same statements outside of the proceeding are NOT absolutely privileged. See *Stephan v. Baylor*, _____   (5th Cir.)("Because the report was not made as part of a protected proceeding, Baylor was not entitled to summary judgment on grounds of absolute privilege).

Particularly, the absolute privilege is waived if the statements were previously made in the workplace. *Hardwick v. Houston Light. & Pow. Co*., 881 S.W.2d 195, 198 (Tex. App. – [Corp. Christi] 1994, writ. dism. w.o.j.) (no absolute privilege for statements made to the Texas Workforce Commission where the statements were first published in the workplace without an absolute privilege). In *Hardwick*, a case strikingly similar to the case at bar, Plaintiff successfully challenged Defendants' summary judgment motion to dismiss defamatory statements found in an employer's Texas Workforce Commission Position Paper. Defendants moved to dismiss Plaintiff's defamation claim on the theory that statements made to the Texas Workforce Commission (falsely accusing Plaintiff of causing saltwater damage) were protected by absolute privilege. *Id.*  Plaintiff successfully challenged the motion to dismiss by submitting an affidavit stating that his employer had previously published the same accusation in the workplace and prior to the TWC hearing.  The court then denied dismissal.  *Id*.

This outcome makes sense – otherwise defendants could avoid liability for previously published workplace defamation merely by repeating the defamatory content in an EEOC position paper, pleading or on the witness stand.  In the EEOC Position Paper itself, SMU admits that the statements at issue were previously published in the workplace. In the EEOC Position

Paper, SMU admits that the statements were published by the tenure committee to the faculty and Dean Collins during the tenure process.

### 6.   The Statements Were Not Related to an Imminent Judicial Proceeding

Furthermore, the statements are not absolutely privileged because, when first uttered in the workplace, they were not related to a judicial proceeding.  "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying." *Shell v. Writt*, no. 13-0552 (Tex. 2014);  However, 'despite this braod protection . . .[there are] limits on the reach of the privilege, particularly when the communications are made outside of the judicial proceeding." *Bancpass*, Inc. v. Highway Toll Admin. LLC, 863 F.3d 391, 402 (2017).. The statement must be related to a judicial or quasi-judicial proceeding at the time it is first published.  *James*, 637 S.W.2d at 971.  Under this rule, a proceeding must be ongoing or imminent, not merely possible, at the time the statement is first made. "The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *Id.*  To determine whether a pre-litigation statement qualifies, the Fifth Circuit looks at the purpose of the communications at the time they were first made, not just the general subject matter.  *Bancpass*, 863 F.3d at 403.

Further, the Court cannot yet determination of whether the tenure report was related to a proceeding because the Tenure Report and other documents in which these defamatory statements were originally published are fraudulently concealed. Indeed, "whether the alleged libelous communication is related to a proposed or existing judicial proceeding is a question of law."  And, "when deciding the must consider the entire communication in its context." *Russell v. Clark*, 620 S.W.2d 865, 870 (Tex. Civ. App. – Dallas 1981, writ ref'd n.r.e.)

27

In the case at bar, the purpose and context of several Statements was the evaluation of Professor Butler's tenure qualifications. According to SMU Bylaws, the purpose of the tenure report and meeting to vote on tenure candidates is to provide a fair and nondiscriminatory assessment of their qualifications for tenure.  The tenure report is not the occasion to assess whether someone is filing a lawsuit or how to defame the candidate as a strategy for defending against a possible lawsuit. Likewise, the purpose of other statements at issue was to report on the subject matter of her meetings with the Office of Institutional Equity prior to the faculty vote on tenure.  According to SMU Bylaws, meetings against the OIE are confidential and free of retaliation,  Therefore, OIE is supposed to provide fair and honest reports about what takes place during such meetings.  OIE reports should not serve the purpose of defaming an employee in retaliation for complaints. Furthermore, when the defamatory statements were first published there was no imminent judicial or quasi-judicial proceeding in sight.  In January 2016, Defendants published a defamatory tenure report with no lawsuit in sight. Much to the contrary, Plaintiff's tenure chair warned her that the filing of a lawsuit would further jeopardize her tenure bid and she took his advice and did not file suit..  Plaintiff did not file an EEOC Charge until March 2017. Plaintiff filed suit in August 2017.

Therefore, the case is distinguishable from cases in which defamatory statements were made in anticipation of imminent litigation. For example, in *Shell*, the court found that "at all relevant times" that Shell defamed one of its employees in a DOJ report, the company was the target of an active investigation by the Department of Justice. *Id.* at 11.  On the same grounds, the case is distinguishable from *Cuba v. Plant*, no. 15-10213 (5th Cir. 2016). In that case, Cuba's defamation claim was based on statements made in letters between the parents of Ms. Plaint to SMU President Turner from August 7-17, 2012 involving rape accusations by Plant against

Cuba.  Plant testified before the Grand Jury on September 4th and the on September 6th, Cuba was indicted for rape. *Id.*

In sharp contrast, the defamatory statements at issue were first published in January 2016 during Plaintiff's tenure review.  At that time, there was no imminent quasi-judicial proceeding or judicial proceeding in sight.  Plaintiff did not file an EEOC charge until over a year later in March 2017 and did not sue for defamation until August 2017.  She sued for discrimination in October 2017.   On tape, Plaintiff's tenure chair Anderson warned her not to file suit during the tenure process otherwise he and other faculty members would refuse to support her application.  Likewise, on tape, Professor Weaver pleaded with Professor Butler not to file suit until after October 2017 to make sure that a suit would not jeopardize the faculty vote on her promotion.

## R.  Plaintiff Has Stated a Claim for Fraud

To state a claim for fraud, Plaintiff must state that Defendants (1) made a material misrepresentation; (2) knew that the representation was false or made the representation recklessly without any knowledge of the truth; (3) made the representation with intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on the representation. *Exxon Corp. v. Emerald Oil Co. L.C.*, 348 S.W.3d 194, 217 (Tex. 2011).  Plaintiff's Second Amended Complaint pleads fraud. CITE COMPLAINT.

## S.  The Defendants Are Individually Liable for Violating Plaintiff's FMLA Rights

Defendants' main argument challenging FMLA liability is that application of the four pronged "economic realities" test is "piecemeal."  This is no defense. Plaintiff does not have to show that a defendant meets all of the factors. *See Modica v. Taylor,* 465 F.3d 174, 186 (5th Cir.

2006) ("No one of the four factors standing alone is dispositive . . .  any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.")

To determine individual liability under the FMLA, courts balance a number of factors including (1) the statutory definition of "employer" under the Family & Medical Leave Act ("FMLA") and the Fair Labor Standards Act ("FLSA"); (2) the four pronged "economic realities" test; (3) the totality of the circumstances; and policies behind the FMLA or FLSA. *Watson v. Graves*, 909 F.2d 1549, 1533 (5th Cir. 1990).  In the Fifth Circuit, "the ultimate question is whether the individual had 'supervisory authority over the employee' and is 'responsible in whole or part for the alleged violation.'"  *Grim Hotel*, 747 F.2d at __.

First, the individual defendants are liable because they meet the FMLA and FLSA statutory definitions of employers.  Whether Defendants' meet the statutory definition of "employer" is a major factor that the Fifth Circuit considers.  See *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (citing 29 U.S.C. § 203(d)). The FMLA regulations define "employer" as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).  *Modica*, 465 F.3d at 186. The Fifth Circuit has held that the FMLA's definition of "employer" largely tracks the definition of "employer" used in the Fair Labor Standards Act ("FLSA"), and therefore, the standards used to evaluate "employers" under the FLSA govern the FMLA as well. Id. at 186 (citing 29 U.S.C. § 203(d)). The FLSA defines "employer" as one who acts 'directly or indirectly in the interest of the employer in relation to the employee.'" Watson, 909 F.2d at 1551 (citing 29 U.S.C. Sec. 203(d)). The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., already holds "corporate officers, managers and supervisors acting in the interest of an employer . . .

individually liable." *Modica*, 465 F.3d at 186.  The defendants meet these definitions.  They are Provosts (Vice Presidents of the University) and Law Deans, *i.e.*, top executives at SMU..

Second, Plaintiff has pleaded facts supporting her claim that the Individual Defendants meet the economic realities test. The "'economic realities test' includes inquiries into whether the alleged [individual] employer (1) has the power to hire and fire the employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate and method of employment; and (4) maintained employment records.  *Id.*  Notably, the Fifth Circuit does not require that all of the elements of the four prongs are met; instead, courts must look at the overall fact pattern and totality of the circumstances and "analyze the realities of the inmate's employment in light of the policies behind the FLSA."  *Watson*, 909 F.2d at 1553.

The Fifth Circuit has applied the economic realities test with flexibility to find senior executives liable. In *Grim Hotel*, held a hotel chain president met the economic realities test even though he did not direct the employees' day to day affairs. The court found that a hotel chain president had de factor control over the hotel employees from afar.  Even though he did not hire and fire managers directly, he still met the test because he gave managers and intermediaries the authority to hire and fire others.  *Grim Hotel*, 747 F.2d at 972.  The court reasoned that "courts routinely conclude 'that liability under the [FLSA] depends on the individual's high position within the company' as well as 'the individual's exercise of control. *Id.*

*Grim Hotel* supports liability for the two law deans and provosts (Currall, Stanley, Collins and Forrester).  Even though Provost Currall did not write the tenure report recommending denial of tenure based on plaintiff's FMLA complaints, he affirmed the decision. Further, like the deans, the provosts are responsible for implementing FMLA policy.  All of the individual Defendants here played a seminal role in violating Professor Butler's FMLA rights.

Plaintiff meets her burden by pleading that these defendants are individually liable under the FMLA.  Cite complaint

**T.  The Individual Defendants are Liable Under the Sec.1981**

Defendants claim that Plaintiff supposedly has not stated a claim for individual liability. However, once again, Defendants misconstrue the law and the facts.   Under Section 1981, "individuals are liable if they are 'essentially the same' as the [corporate employer] for the purposes of the complained-of conduct." *Medina v. Houston Intern. Ins. Group Ltd*., 4:13-CV-3343, 2015 WL 459256, at \*4 (S.D. Tex. Feb. 2, 2015) (quoting *Foley*, 355 F.3d at 337-38, 340, n.8)). Employees are "essentially the same as her employer" if they (1) exercise supervisory authority over the plaintiff; and (2) in exercising that authority are 'essentially the same as the employer." *Miller*, 541 F. Supp.2d at 862-83 (citing *Foley*, 355 F.3d at 337-38). Defendants misconstrue the "essentially the same as employer" test, claiming that "Butler doesn't allege that anyone could have denied her tenure *independently of the employer*," (emphasis added). The test only requires a showing that the individual employee must have the power to fire the employee on behalf of the corporate employer. *Id.*

All of the individual Defendants listed under Plaintiff's Section 1981 claims are liable.  The *Saint Francis College* case, which relied upon Fifth Circuit precedent, is also on point. There, an Iraqi-American professor sued his university and tenure committee members alleging race discrimination in his tenure process.  The court found them all liable, reasoning that "directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be liable."  *St. Frances College*, 784 F.2d at 518 (citing *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), *cert. den*., 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975)).

In *Foley*, the Fifth Circuit held members of tenure committee and other faculty individually liable for race discrimination in the tenure process – and without regards to whether they were "essentially the same as the employer." *See Foley vs. University of Houston Sys.*, 355 F.3d 333, 337-38, 340, n.8 (5th Cir. 2003)(citing *Al-Khazraji v. St. Frances College*, 784 F.2d 505, 518 (3rd Cir.1986) (holding that plaintiff can bring a section 1981 claim against tenure committee members involved in the discriminatory action), *aff'd on other grounds*, 481 U.S. 604, 107 S. Ct. 2022 (1987)); *See Ohemeng v. Delaware,* 643 F. Supp. 1575 (1986)(associate deans and department chairs liable under Section 1981).

Defendants' reliance on *McLennan* is misplaced.  In *McLennan*, a sister court granted a Rule 12(b)(6) motion on Section 1981 claims against non-supervisors but *did not dismiss* claims against the supervisors. *McClennan v. Oncor Elec. Delivery Co.*, 3:12-cv-00531-G BF 2012 WL 3072340 (N.D. Tex. _), adopted *McLennan v. Veitch*, 519 F. App'x 260 (5th Cir. 2013).   Further, the  the supervisor in that case did not the capacity to make or enforce his employment agreement, give raises or effect his employment contract." *Id.* In contrast, the law deans and provosts enforced her employment agreement, determined her raised and otherwise effected Professor Butler's employment agreement.   In his Answer to Plaintiff's Second Amended Complaint, Provost Currall admits that he denied Professor Butler's application for tenure and he is bound by his judicial admission.  *See Hersh v. Tatum,* __ S.W.3d __ (Tex. 2017).

Defendants' argument that there was no discrimination because different people at different levels contributed to the decision ignores the facts..  This case is distinguishable from the cases in which "collective decision-making" minimized the influence of a "single individual with a retaliatory motive." C.f. *Wu v. Mississippi State University*, 2015 U.S. LEXIS 7354 (5th Cir. 2015).   In sharp contrast, Professor Butler alleges discrimination by multiple persons at each

level in the tenure process. *See Emcare,* 857 F.3d at 678, 680-82; *Goswami v. DePaul Univ.,* 2015 U.S. Dist. LEXIS 5937 (N.D. Ill. 2015); *See Foley*; *see also Brown v. Sessions*, 774 F.3d 1016, 1021 (D.C. Cir. 2014) (suit against university president).

Furthermore, the individuals are liable under the Cat's Paw theory because Tenure Chair Anderson, Dean Collins and Provost Forrester used their influence to encourage Provost Currall to retaliate against Professor Butler. *See Haire v. Bd. La. State Univ*., 719 F.3d 356, 365-66 (5th Cir. 2013); *Smith v. Bd. Of Supervisors of Southern Univ. & Agricultural and Mechanical College,* no. 16-30097 (5th Cir. 2016) ; *Roque v. Natchitoches Parish School Bd*, no. 14-30053 (5th Cir. 2014). In *Haire,* the Fifth Circuit held LSU liable after its Chancellor relied on a discriminatory employee for critical information to terminate the plaintiff. *Id.* at 366-67.

CONCLUSION

For the reasons stated above, the Court should deny the Motion to Dismiss.

Respectfully submitted,

*/s/Kenneth Royce Barrett*
KENNETH R. BARRETT
3740 Greenbriar #541873
Houston, Texas 77254
Phone: 281433-0837
Fax: 346 980-4615
SBOT: 01812200
E:KennethRoyceBarrettLaw@yahoo.com
COUNSEL FOR PLAINTIFF CHERYL BUTLER

Submitted 1 May 2018