**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHERYL BUTLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:18-cv-00037-E** |
| | § | |
| **JENNIFER M. COLLINS,** | § | |
| **STEVEN C. CURRALL,** | § | |
| **JULIE FORRESTER ROGERS,** | § | |
| **HAROLD STANLEY, AND** | § | |
| **SOUTHERN METHODIST UNIVERSITY,** | § | |
| | § | |
| **Defendants.** | § | |

# DEFENDANTS' TRIAL BRIEF

Kim J. Askew
Texas State Bar No. 01391550
kim.askew@us.dlapiper.com
Mallory Biblo
Texas State Bar No. 24087165
mallory.biblo@us.dlapiper.com

DLA PIPER LLP (US)
1900 N. Pearl Street
Suite 2200
Dallas, TX 75201
Tel. 214.743.4506

**ATTORNEYS FOR DEFENDANTS SOUTHERN METHODIST UNIVERSITY, JENNIFER M. COLLINS, STEVEN C. CURRALL, JULIE PATTERSON FORRESTER, AND HAROLD STANLEY**

Plaintiff Cheryl Butler's live Complaint pleads numerous causes of action which fail to state a claim. Accordingly, in an effort to clarify the issues that are proper for trial (and still subject to Defendants' pending Motion for Summary Judgment), Defendants Jennifer M. Collins, Steven C. Currall, Julie Forrester Rogers, Harold Stanley (collectively, the "Individual Defendants"), and Southern Methodist University ("SMU," and, together with the Individual Defendants, "Defendants") file this Trial Brief.

**A. Plaintiff's Invalid Causes of Action that Cannot Proceed to Trial**

As further detailed below, the following claims are barred as a matter of law and, thus, cannot proceed to a trial on the merits:

- Count 30: Title IX
- Count 24: FMLA Harassment
- Count 25: FMLA Invasion of Privacy
- Count 18: ADA Discrimination Based on "Segregation in the Workplace"
- Count 19: ADA "Associational" Discrimination
- Count 20: ADA "Invasion of Medical Privacy"

**1. Plaintiff's Title IX claim is barred as a matter of law because it is preempted by Title VII (Count 30).**

Plaintiff's Title IX claim is preempted given that Title VII is the exclusive remedial scheme for employment claims, which include the claims in count 30. "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995). Such preemption is justified by the fact that "the prohibition against employment discrimination in [T]itle VII is identical to the proscription of sex discrimination in [T]itle IX, thereby guaranteeing that the [T]itle

VII enforcement procedures will fully vindicate the rights created under [T]itle IX." *Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 248-49 (5th Cir. 1997) (citing *Lakoski*, 66 F.3d at 756-57).

Here, the basis for Plaintiff's Title IX claim—hostile work environment and deliberate indifference—revolves around the allegations that Plaintiff was subjected to a hostile work environment that SMU allegedly failed to address and correct. Dkt. No. 12 at ¶¶ 868-73. This claim falls within the exclusivity of Title VII employment discrimination based on sex in federally funded educational institutions. *See Lakoski*, 66 F.3d at 754 (Title VII is the exclusive remedial scheme for employment discrimination claims, including hostile work environment claims); *Slabisak v. Univ. of Tex. Health Sci. Ctr. at Tyler*, No. 4:17-CV-597, 2018 WL 1072511, at *2-3 (E.D. Tex. Feb. 27, 2018) (plaintiff's Title IX claims for deliberate indifference and retaliation are preempted by Title VII). Because Title VII provides the exclusive remedy for the Title IX claim alleged by Plaintiff, Plaintiff's Title IX claim should not proceed to trial.

**2. Plaintiff's FMLA harassment claim is barred as a matter of law because there is no separate cause of action for harassment under the FMLA (Count 24).**

To the extent Plaintiff has alleged an FMLA cause of action based on hostile work environment harassment, such a cause of action does not exist and, thus, cannot proceed to trial. *Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. H-13-2902, 2015 WL 150727, at *4 n.60 (S.D. Tex. Jan. 12, 2015) ("Plaintiff has not cited to and the court has not found any case wherein a federal court has recognized a FMLA cause of action based on hostile work environment harassment."); *see Ragsdale v. Beacon Health Sys., Inc.*, No. 3:18-CV-183-PPS, 2020 WL 1849403, at *6 (N.D. Ind. Apr. 13, 2020) ("It is unclear whether the FMLA even allows for a cause of action for harassment or hostile work environment—the FMLA and the implementing statutes don't mention the availability of such a cause of action, and I can find no Seventh Circuit case wherein the adverse employment action in an FMLA retaliation claim was in

the form of severe or pervasive harassment."). At best, the plaintiff can use "the harassment she experienced" to establish "a materially adverse action for purposes of proving her FMLA retaliation claim." *Morris v. Tex. Health & Human Servs. Comm'n*, No. H-16-3116, 2019 WL 3752762, at *14 (S.D. Tex. Aug. 8, 2019) (analyzing alleged harassment in context of FMLA retaliation claim). Accordingly, the Court should disregard this claim at trial. The claim does not exist.

**3. Plaintiff's FMLA invasion of privacy claim is barred as a matter of law because it is not a cause of action recognized under Fifth Circuit law (Count 25).**

The Fifth Circuit has found "that the FMLA does not create an actionable right to privacy." *Wilson v. Nat'l Ass'n of Letter Carriers, Branch No. 2730*, No. 01-2736, 2006 WL 8455827, at *4 (E.D. La. May 4, 2006). Other courts—within this Circuit and outside of it—have noted that, although the FMLA regulations adopt the ADA's privacy provisions, it is, at the very least, doubtful that a private cause of action exists. *See Ekugwum v. City of Jackson, Miss.*, No. 3:09CV48DPJ-JCS, 2010 WL 1490247, at *2 (S.D. Miss. Apr. 13, 2010) ("It is not settled whether this provision . . . gives rise to a private right of action for disclosure."); *see also Jones v. Velocity Tech. Sols. LLC*, No. 2:19-cv-1274-KJM-EFB PS, 2020 WL 4430636, at *4 (E.D. Cal. July 31, 2020); *Walker v. Gambrell*, 647 F. Supp. 2d 529, 539 n.5 (D. Md. 2009). In any event, assuming such right did exist, "the ADA confidentiality requirements expressly referred to in 29 C.F.R. § 825.500(g) apply to information obtained as a result of an employer-requested medical examination or other employer inquiries." *Walker v. Gambrell*, 647 F. Supp. 2d 529, 539 n.5 (D. Md. 2009) (emphasis added). Thus, the claim must fail where "[n]o employer-initiated examination or inquiry took place," or where the information at issue "was not created for the purpose of documenting or maintaining a file on Plaintiff's FMLA leave." *Id.*; *accord Cash v. Smith*, 231 F.3d 1301, 1307-08 (11th Cir. 2000) (declining to decide whether private cause of

action exists because the facts demonstrated the provisions did not apply: "the disclosure that Cash complains of was not the result of an examination ordered by APCA, but of a voluntary disclosure that Cash made to Smith. The statute and regulation cited by Cash do not govern voluntary disclosures initiated by the employee, and therefore the district court correctly granted APCO's motion for summary judgment on this count."). Here, it is undisputed that there was "[n]o employer-initiated examination or inquiry took place" but a voluntary disclosure that Plaintiff made to SMU to obtain ADA and FMLA benefits. Thus, Plaintiff's claim for invasion of privacy must likewise be disregarded at trial.

**4. Plaintiff's ADA claim based on segregation in the workplace is barred as a matter of law because it is not a recognized ADA cause of action (Count 18).**

Segregation in the workplace is not an independent cause of action, but merely a theory of "discrimination." "[T]he term 'discrimination' includes limiting, segregating or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 474 (N.D. Tex. 1997) (Solis, J.). The Court should not entertain a trial on a cause of action that the ADA does not allow.

**5. Plaintiff's ADA claim based on associational discrimination is barred as a matter of law because it is not a recognized cause of action under the ADA (Count 19).**

The Fifth Circuit has not recognized associational discrimination based on an ADA disability of a family member as a cause of action. *See, e.g.*, *Grimes v. Wal-Mart Stores Tex., LLC.*, 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (per curiam) ("[T]his opinion should not be construed as recognizing a cause of action for associational discrimination based on disability . . . ."); *Roth v. Canon Sols. Am., Inc.*, No. 3:18-CV-02196-BT, 2019 WL 4597583, at *5 (N.D. Tex. Sept. 23, 2019) (Rutherford, Mag.) ("[T]he Fifth Circuit has never recognized a cause of action for

'associational discrimination' based on a disability."). The ADA does not require employers to accommodate a non-disabled worker who chooses to take leave from work to care for a disabled relative. *See Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 887 (5th Cir. 2020) (citing 29 C.F.R. § 1630.8 (2019)). Therefore, Plaintiff's associational discrimination claim based "on her association with an immediate family member" is not a valid ADA claim and should not be discussed at trial. *See Besser*, 834 F. App'x at 886-87; *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *Balachandran v. Valvtechnologies, Inc.*, No. 4:20-CV-1078, 2021 WL 3639806, at *2 (S.D. Tex. July 30, 2021).

**6. Plaintiff's ADA claim based on invasion of medical privacy is barred as a matter of law because it is not a cause of action recognized under the ADA (Count 20).**

There is no legal support in the Fifth Circuit for a cause of action based on invasion of privacy under the ADA. The citation in the Second Amended Complaint is to the ADA generally, and those provisions do not speak to "privacy" at all. The ADA requires "confidentiality" of the results of a medical examination, or a disability-related inquiry made by an employer. *See* 42 U.S.C. § 12112(d). However, these provisions do not discuss confidentiality of medical disclosures voluntarily made by the employee pursuant to ADA reasonable accommodation requests or FMLA applications. *See id.* Therefore, they do not support a private cause of action under these facts (if at all).

**B. <u>Plaintiff's Recognized Causes of Action that Could Proceed to Trial (Depending on the Court's Ruling on Summary Judgment)</u>**

Although Defendants do not believe Plaintiff has raised a genuine issue of material fact sufficient to proceed to trial on the remaining claims (and Defendants have demonstrated as such in their Motion for Summary Judgment), these are recognized causes of action. As such, to assist

the Court should it hold a trial on any of these claims, Defendants have summarized the elements and relevant law for each of them.

**1. Breach of Contract Claim (Count 9)**

**a. Elements**

"The elements of a breach of contract claim are: (1) a valid contract; (2) performance or tendered performance; (3) breach of the contract; and (4) damages resulting from the breach." *Myan Mgmt. Grp. v. Adam Sparks Family Revocable Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.).

**b. Judicial review of tenure decisions**

Plaintiff's breach of contract claim is based on the denial of her tenure application. Judicial review of tenure decisions is limited. *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992); *Halper v. Univ. of the Incarnate Word*, 90 S.W.3d 842, 845 (Tex. App.—San Antonio 2002, no pet.). In other words, "[c]ourts are not qualified to review and substitute their judgment for these subjective, discretionary judgments of professional experts independently in an intelligent informal comparison of the scholarly contributions or teaching talents of one faculty member denied promotion with those of another faculty member granted a promotion; in short, courts may not engage in 'second-guessing' the University authorities in connection with faculty promotions." *Clark v. Whiting*, 607 F.2d 634, 639 (4th Cir. 1979). "[S]o long as [SMU] properly followed its procedures in making its decision not to grant tenure, [SMU]'s professional decision that [Butler] did not qualify for tenure is not subject to judicial review." *Halper*, 90 S.W.3d at 845; *see Spuler*, 958 F.2d at 107 ("The tenure process—from the initial recommendation of the candidates by the professoriate to the ultimate review by university administrators and members of the Board of Regents—is intrinsically subjective. Such a determination is not readily scrutinized in the adversarial judicial forum. The judicial inquiry is properly only whether the decision was made,

wisely or not, by a specific exercise of professional judgment and based on factors clearly bearing on the appropriateness of conferring academic tenure.").

**2. FMLA Claims**

**a. Individual liability under the FMLA**

"The FMLA does not contemplate holding individuals liable for corporate violations." *Burris v. Brazell*, No. 3:06-CV-0814-K, 2008 WL 5220578, at *1 (N.D. Tex. Dec. 15, 2008)*, aff'd*, 351 F. App'x 961 (5th Cir. 2009) (citing *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (noting "the FMLA offers no relief" against "individual defendants")); *Seaman v. C.S.P.H., Inc.*, No. Civ. A. 3:96-CV-2165P, 1997 WL 361652, at *2 (N.D. Tex. June 23, 1997) (Solis, J.) (granting motion to dismiss FMLA claims against individual defendants). Courts have determined that an individual may be liable only where such individual meets the definition of "employer." *Coleman v. FFE Transp. Servs., Inc.*, No. 3:12-cv-1697-B, 2013 WL 1914932, at *4 (N.D. Tex. May 9, 2013) (Boyle, J.). For the Individual Defendants to be held liable as Butler's employer under the FMLA, the question becomes whether they "exercised sufficient control over Plaintiff's ability to take protected leave to qualify as [an] employer[] under the FMLA." *Trevino v. United Parcel Serv.*, No. 3:08-CV-0889-B, 2009 WL 3199185, at *5 (N.D. Tex. Oct. 5, 2009) (Boyle, J.) (citing *Evans v. Henderson*, No. 99–C–8332, 2000 WL 1161075 (N.D. Ill. Aug.16, 2000)). Butler must be able to show that the individual "plays a[] significant role in receiving, processing, or approving leave under the FMLA," or that the "requests for FMLA leave went through [the individual] or that [the individual] was ever consulted regarding any of her FMLA requests." *Trevino*, 2009 WL 3199185, at *6; *see also Law v. Hunt Cty., Tex.*, 830 F. Supp. 2d 211, 216 (N.D. Tex. 2011) (Fish, J.) ("[T]here is no evidence before the court concerning Berger's ability to grant Law protected leave."). Therefore, "[t]he ultimate question is whether the individual had 'supervisory authority over the complaining employee' and is 'responsible in whole

or part for the alleged violation.'" *Rudy v. Consol. Rest. Co.*, No. 3:08–CV–0904–L, 2010 WL 3565418, at *6 (N.D. Tex. Aug. 18, 2010), *report & recommendation adopted*, 2010 WL 3565422 (N.D. Tex. Sept. 3, 2010).

**b. Elements of FMLA interference (Counts 23 and 26)**

"It [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right" provided under the FMLA. *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) (emphasis added). "To state a prima facie FMLA interference claim, a plaintiff must allege that "(1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA." *Hester*, 11 F.4th 306 (emphasis added); *see Jiles v. Wright Med. Tech., Inc.*, 313 F. Supp. 3d 822, 844 (S.D. Tex. 2018); *see also Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017); *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013); *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013). "The employee also must show that the violation prejudiced [her]." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021) (citing *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017)).

**c. Elements of FMLA Retaliation (Count 24)**

"A *prima facie* showing of FMLA retaliation requires that a plaintiff show: (1) '[s]he was protected under the FMLA;' (2) '[s]he suffered an adverse employment action;" and (3) '[s]he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because [s]he sought protection under the FMLA." *Campos*, 10 F.4th at 527; *see Acker*, 853 F.3d at 790 (citing *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)). "The third element requires the employee to show 'there is a causal link' between the FMLA-protected activity and the adverse action." *Richardson v.*

*Monitronics Int'l Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Houston v. Tex. Dep't of Agric.*, No. 20-20591, 2021 WL 5147939, at *3 (5th Cir. Nov. 5, 2021) (citing *Richardson*, 434 F.3d at 333). In the third step of the *McDonnell Douglas* framework, the burden shifts back to the plaintiff to "show by a preponderance of the evidence" that the defendant's reason is a pretext for retaliation. *Tex. Dep't of Agric.*, 2021 WL 5147939, at *3 (citing *Richardson*, 434 F.3d at 333).

**3. ADA/Rehabilitation Act Claims**

**a. ADA failure to accommodate (Count 21)**

**i. Elements**

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). "To prevail on her failure-to-accommodate claim, [the plaintiff] must show that '(1) [she] is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.'" *Jennings v. Towers Watson*, 11 F.4th 335, 343 (5th Cir. 2021); *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020).

**ii. Definition of "qualified individual"**

To prove she "is a qualified individual, [Plaintiff] needs to show 1) that [s]he could perform the essential functions of the job in spite of [her] disability or 2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Turco*

*v. Hoechst Celanese Chem. Grp., Inc.*, 101 F.3d 1090, 1093 (5th Cir. 1996); *see Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021). "'Essential functions' are those duties that are fundamental to the job at issue"; the term does not include the marginal functions of the position. *Kapche v. City of San Antonio*, 176 F.3d 840, 843 (5th Cir. 1999); 29 C.F.R. § 1630.2(n)(1). The EEOC implementing regulations provide that "[a] job function may be considered essential if, for example, "the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)(i). "To aid in the determination of whether a function is essential, a court may consider evidence of a variety of factors including, but not limited to, (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, and (4) the work experience of both past and current employees in the job." *Kapche*, 176 F.3d at 843.

**iii. Definition of "reasonable accommodation"**

"The ADA provides a right to a reasonable accommodation, not to the employee's preferred accommodation." *Jennings*, 11 F.4th at 344. "The appropriate accommodation need not be 'the employee's preferred accommodation,' and the employer is free to 'choose the less expensive accommodation or the accommodation that is easier for it to provide.'" *Thompson*, 2 F.4th at 469. "[T]he EEOC regulations define the term 'reasonable accommodation' as '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position.'" *Wilkerson v. Boomerang Tube, LLC*, No. 1:12-CV-198, 2014 WL 5282242, at *7 (E.D. Tex. Oct. 15, 2014); *accord Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997). "Time off, whether paid or unpaid, can be a reasonable accommodation." *Jennings*, 11 F.4th at 344.

**b. ADA hostile work environment (Count 16)**

**i. Elements**

A cause of action for disability-based harassment is "modeled after the similar claim under Title VII." *Flowers v. S. Reg'l Physician Services Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). "To establish a hostile work environment claim under the ADA, a plaintiff must show: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017). Moreover, the disability-based harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *McConathy*, 131 F.3d at 563 (quoting *Farpella–Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)).

**ii. Definition of "pervasive or severe" harassment**

In determining whether harassment is sufficiently pervasive or severe, we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Thompson*, 2 F.4th at 471 (quoting *Patton*, 874 F.3d at 445). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not suffice to alter the terms and conditions of employment." *Patton*, 874 F.3d at 445 (5th Cir. 2017); *see Thompson*, 2 F.4th at 471; *McConathy*, 131 F.3d at 564 (providing that supervisor's "insensitive and rude" comments regarding the slow pace of plaintiff's recovery from surgery were insufficient as a matter of law to state a hostile environment claim); *DeAngelis v. El Paso Mun.*

*Police Officers Ass'n*, 51 F.3d 591, 595-96 (5th Cir. 1995) (noting that "mere utterance of an . . . epithet which engenders offensive feelings in an employee" is not enough to constitute hostile environment harassment)); *see Pickens v. Shell Tech. Ventures Inc.*, 118 F. App'x 842, 850 (5th Cir. 2004) (stating that "racially insensitive" comments made by employees at a Christmas party were not severe or pervasive enough to create a hostile work environment); *Nadeau v. Echostar*, No. EP-12-CV-433-KC, 2013 WL 5874279, at *32 (W.D. Tex. Oct. 30, 2013) (concluding that manager's alleged taunt that Plaintiff is "looking sick" and remark that "this job is not for you if you have a health problem," constituted "occasional teasing, offhand comments, and non-serious isolated incidents that are not actionable").

**c. Elements of ADA denial of tenure (Count 17)**

"To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that [s]he has a disability; (2) that [s]he was qualified for the job; and (3) that [s]he was subject to an adverse employment decision on account of [her] disability." *Thompson*, 2 F.4th at 470.

For case law on the definition of "qualified," see *supra* Section B.3.a.ii.

**4. Section 1981 Claims**

**a. Individual liability under § 1981**

Generally, § 1981 creates "a cause of action against the contracting parties only." *McLennan v. Oncor Elec. Delivery Co.*, No. 3:12-CV-00531-G (BF), 2012 WL 3072340, at *4 (N.D. Tex. July 6, 2016), *report & recommendation adopted*, 2012 WL 3079063 (Jul. 30, 2012). "Fifth Circuit precedent indicates that a third-party may be liable under § 1981 only in certain circumstances." *Howard v. Miss. State Univ.*, No. 1:1-CV-00154-MPM-DAS, 2015 WL 1862923, at *4 (N.D. Miss. Apr. 23, 2015). "The Fifth Circuit has held that an individual may be liable under § 1981 if the individual is 'essentially the same' as the employer in exercising authority over

the plaintiff." *Thomas v. Grundfos, CBS*, No. 4:18-CV-0557, 2019 WL 7838172, at *1 (S.D. Tex. Sept. 20, 2019) (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 337 (5th Cir. 2003)), *report & recommendation adopted*, 2020 WL 553665 (Feb. 4, 2020).

"District courts within the Fifth Circuit have interpreted *Foley* as recognizing individual liability for supervisors who exercise control over employment decisions and were personally involved in the complained-of conduct, but disallowing § 1981 claims against a mere co-worker." *Thomas*, 2019 WL 7838172, at *1 (collecting cases). "A supervisor or coworker is 'essentially the same' as an employer if he or she exercises control or 'managerial authority' over the plaintiff." *Williams v. City of Richardson*, No. 3:16-CV-2944-L-BK, 2018 WL 5885540, at *3 (N.D. Tex. Aug. 15, 2018) (emphasis added), *report & recommendation adopted*, 2018 WL 4269088 (Sept. 7, 2018); *accord Howard*, 2015 WL 1862923, at *4. To be held individually liable, the employee must have "substantial control over a plaintiff with respect to employment decisions." *McLennan*, 2012 WL 3072340, at *4. That is, any "employment decision" taken by that employee must be conducted "in a supervisory capacity." *McLennan*, 2012 WL 3072340, at *4.

Under this rule, it is clear that there is no cause of action against a mere co-worker. *McLennan*, 2012 WL 3072340, at *5. Where the individual defendant is a supervising employee, the court "must assess how much control the defendant had over employment decisions relating to the plaintiff." *Id.* This requires that the alleged supervisor have "the ability to fire [her], give [her] raises, or affect [her] employment contract." *Id.* Individuals may be held liable under § 1981 only "when they have the capacity to make and enforce the contract between the employer and the employee." *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863 (N.D. Tex. 2008) (Fitzwater, J.) (quoting *Hicks v. IBM*, 44 F. Supp. 2d 593, 594 (S.D.N.Y. 1999)). Where, "[a]t most, Plaintiff alleges that [the individual] is a co-worker who provided information to a

decision-making body, [the allegation] is insufficient to state a claim against [the individual] under section 1981." *Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc.*, No. 3:05CV49-MU, 2005 WL 3186494, at *2 (W.D.N.C. Nov. 28, 2005); *see also Miller*, 541 F. Supp. 2d at 867 (relying on *Mbadiwe* to find plaintiff failed to state a claim against individual who might have "furnished those with the authority to terminate Miller's employment the information on which the termination decision was based"). For example, in *Delouise v. Iberville Parish School Board*, the Middle District of Louisiana explained:

> The evidence reveals that, at the times Plaintiff's position came before the [Iberville Parish School Board ('IPSB')], Cancienne [(the individual defendant)] could only make recommendations to the IPSB, and could not effectively remove anyone on his own. In fact, he was not authorized or empowered to do so. In his testimony, Cancienne firmly stated that he had no authority to terminate or employ any person. . . . Thus, even as Plaintiff's 'immediate supervisor,' he is not the type of supervisor contemplated by Section 1981 under the 'essentially the same' principle, because Cancienne exercised little control over Plaintiff's employment beyond recommendation. . . . Even if it could be shown that the IPSB members typically voted according to Cancienne's recommendations, the members themselves exercised the final judgment over Plaintiff's employment.

8 F. Supp. 3d 789, 804 (M.D. La. 2014).

**b. Elements of Section 1981 racially hostile work environment (Count 10)**

"To establish a claim of hostile work environment, a plaintiff must show that [s]he: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hudson v. Cleco Corp.*, 539 F. App'x 615, 619-20 (5th Cir. 2013). Courts "analyze the hostility of a work environment in the totality of the circumstances, including examining 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Brooks*

*v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 399 (5th Cir. 2016). "Further, [t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile [or] abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Brimmer v. Shinseki*, No. 3:11-CV-1956-L, 2013 WL 4763947, at *6 (N.D. Tex. Sept. 5, 2013) (Lindsay, J.).

**c. Section 1981 race discrimination (Count 11)**

"University tenure decisions represent a distinct kind of employment action, involving special considerations." *Yul Chu v. Miss. State Univ.*, 592 F. App'x 260, 265 (5th Cir. 2014). "In order to set forth a prima facie case of discrimination under . . . § 1981, a plaintiff must set forth sufficient evidence that establish that (1) she belongs to a protected class; (2) she applied for and was qualified for the position she sought; (3) she was not promoted to the position sought, *i.e.*, she suffered an adverse employment action; and (4) her employer promoted someone to the position who was not a member of the protected class." *Ruth v. Owens-Ill. Glass Container, Inc.*, 260 F. App'x 703, 705 (5th Cir. 2007); *accord Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 867 (S.D. Tex. 2010).

For case law on the definition of "qualified," see *supra* Section B.3.a.ii.

**5. Title VII Claims**

**a. Title VII racially hostile work environment (Count 13)**

**i. Elements**

"To establish a claim of hostile work environment under Title VII, a plaintiff must prove [s]he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known the

harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

**ii. Definition of "severe or pervasive" harassment**

"Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' Workplace conduct 'is not measured in isolation.' In order to deem a work environment sufficiently hostile, 'all of the circumstances must be taken into consideration.' This includes 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hernandez*, 670 F.3d at 651.

**iii. Requirement of personal experience**

"To establish a hostile work environment, however, a plaintiff must personally experience racial harassment. The court will therefore consider the harassment that a reasonable jury could find that plaintiffs experienced." *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271-D, 2008 WL 5220569, at *26 (N.D. Tex. Dec. 12, 2008) (Fitzwater, J.). Evidence that related to "other women," not Plaintiff, "is not relevant." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 612 (5th Cir. 2005); *see also Hernandez*, 670 F.3d at 652.

**b. Race discrimination (Counts 14 and 27)**

**i. Elements**

"To establish a prima facie case in the context of a denial of tenure under Title VII, the plaintiff must show that: (1) he belongs to a protected group, (2) he was qualified for tenure, and (3) he was denied tenure in circumstances permitting an [inference] of discrimination." *Chu*,

592 F. App'x at 265; *see Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 759 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (Under the TCHRA, the elements for a claim for racial discrimination are nearly identical—namely, the plaintiff must establish that she (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to adverse employment decisions, and (4) was treated less favorably than similarly situated persons not in the protected class.).

For case law on the definition of "qualified," see *supra* Section B.3.a.ii.

**ii. Application to tenure decisions**

"Evidence that supports a *prima facie* case includes departures from university procedures, conventional evidence of bias against the plaintiff, and evidence that 'the plaintiff is found to be qualified for tenure by some significant portion of the departmental faculty, referrants or other scholars in the particular field." *Chu*, 592 F. App'x at 265. Other circuits have recognized that tenure decisions in colleges and universities involve considerations that set them apart from other kinds of employment decisions. *Tanik v. S. Methodist Univ.*, 116 F.3d 775, 776 (5th Cir. 1997) (citing *Zahorik v. Cornell University*, 729 F.2d 85, 92 (2nd Cir. 1984); *Kumar v. University of Massachusetts*, 774 F.2d 1, 11 (1st Cir. 1985)). Those factors are: (1) tenure contracts require unusual commitments as to time and collegial relationships, (2) academic tenure decisions are often non-competitive, (3) tenure decisions are usually highly decentralized, (4) the number of factors considered in tenure decisions is quite extensive, and (5) tenure decisions are a source of unusually great disagreement. *Tanik*, 116 F.3d at 776 (citing *Zahorik*, 729 F.2d at 92-93).

**6. TCHRA Disability Discrimination Claim (Count 29)**

"To establish a prima facie case of disability discrimination, a plaintiff must show that (1) [s]he has a 'disability;' (2) [s]he is 'qualified' for the job; and (3) [s]he suffered an adverse employment decision because of [her] disability." *Donaldson v. Tex. Dep't of Aging & Disability*

*Servs.*, 495 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "The plaintiff can show the 'qualification' element in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations; or (2) by showing that some reasonable accommodation by the employer would enable him to perform the job." *Donaldson*, 495 S.W.3d at 437.

**7. Retaliation Claims (Counts 12, 15, 22, and 28)**

**a. Elements**

To establish a *prima facie* case of retaliation under § 1981, Title VII, and the ADA, a plaintiff must establish: (1) that she engaged in activities protected by the particular statute; (2) an adverse employment action occurred; and (3) a causal link connects the protected activity to the adverse employment action. *See Williams*, 2017 WL 4404461, at *8 (citing *Reilly v. Capgemini Am., Inc.*, No. 05-CV-1162-K, 2007 WL 945685, at *4 (N.D. Tex. Mar. 28, 2007) (Kinkeade, J.) (collecting cases)).

"If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.[1] After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana, 480* F.3d 383, 388-89 (5th Cir. 2007), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive, *Mayberry v. Mundy Contract Maint. Inc.*, 197 F. App'x. 314, 317 (5th Cir. 2006) (Title VII and § 1981); *Seaman*, *179* F.3d at 301 (ADA). The plaintiff's "subjective belief [that there is a causal connection] is insufficient to demonstrate a causal link between [her]

[1] The employer's burden is only one of production, not persuasion, and involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *Alvarado v. Shipley Donut Flour & Supply Co.*, 526 F. Supp. 2d 746, 763 (S.D. Tex. 2007).

protected activity and the adverse employment action." *Weems v. Dall. Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 736 (N.D. Tex. 2017) (Lindsay, J.).

Further, § 21.055 of the TCHRA is modeled after Title VII's anti-retaliation provision; the elements of a retaliation claim under § 21.055 are the same as under Title VII. *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 455 (W.D. Tex. 2013) (citing *Matthews v. High Island Indep. Sch. Dist.*, 991 F. Supp. 840 (S.D. Tex. 1998) (retaliation provisions of TCHRA are interpreted in accordance with parallel provisions of Title VII)); *see also Spencer v. Wolff Shoe Co.*, No. 1:16-CV-036-RP, 2017 WL 9325616, at *3 (W.D. Tex. Apr. 17, 2017) ("Title VII case law guides a reading of the TCHRA, and the *McDonnell Douglas* burden-shifting framework, used to assess Title VII retaliation claims, is also used to assess TCHRA retaliation claims.").

**b. Requirement for temporal proximity inference**

While "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation, . . . the plaintiff must show that her participation in a protected activity was a but-for cause of the adverse action." *Hendrix v. iQor Inc.*, No. 3:20-CV-0437-N-BT, 2021 WL 3040776, at *7 (N.D. Tex. June 7, 2021), *report & recommendation adopted*, 2021 WL 3036949 (N.D. Tex. July 19, 2021) (citing *Ganheart v. Brown*, 740 F. App'x 386, 389 (5th Cir. 2018) (per curiam)). The Fifth Circuit has found temporal proximity of up to four months sufficient to show a causal link. *See, e.g., Bell v. Bank of Am.,* 171 F. App'x 442, 444 (5th Cir.2006) (holding that a seven-month period does not support establish a causal link); *Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28 (5th Cir. 2005) (holding that evidence that employee's termination followed approximately three months after her complaints of discrimination was insufficient to establish a causal connection between her termination and the protected conduct); *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471-72 (5th Cir. 2002) (holding that a five-month period does not support an inference of a causal link); *Evans v. City of Houston,* 246 F.3d 344, 355

(5th Cir. 2001) (finding that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes" (internal citations omitted)). "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Swanson v. Gen. Services Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997) ("If timing *alone* were enough, any action taken against Swanson after June 1990, no matter how justified, could be sustained as discriminatory. Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements.").

Dated: March 8, 2022

Respectfully submitted,

By: */s/ Kim J. Askew*

Kim J. Askew
Texas State Bar No. 01391550
kim.askew@us.dlapiper.com
Mallory Biblo
Texas State Bar No. 24087165
mallory.biblo@us.dlapiper.com

DLA PIPER LLP (US)
1900 N. Pearl Street
Suite 2200
Dallas, TX 75201
Tel. 214.743.4506

**ATTORNEYS FOR DEFENDANTS SOUTHERN METHODIST UNIVERSITY, JENNIFER M. COLLINS, STEVEN C. CURRALL, JULIE PATTERSON FORRESTER, AND HAROLD STANLEY**

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Texas, I hereby certify that this document filed March 8, 2022, through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Mallory Biblo*
Mallory Biblo