IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHERYL BUTLER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JENNIFER M. COLLINS, STEVEN C. CURRALL, JULIE FORRESTER ROGERS, HAROLD STANLEY, and SOUTHERN METHODIST UNIVERSITY, | § § § § § | Case No. 3:18-cv-00037-E |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Cheryl Butler's Motion for Reconsideration of the March 10, 2022 Order with Incorporated Brief. (Doc. 183). After considering the motion, the record, and applicable law, the Court finds that the motion should be, and therefore is, DENIED.

**I.     Background Facts**

This case stems from the Defendants' decision to deny Plaintiff's tenure as a law professor and alleged defamatory statements made in 2016. Defendants removed this case to federal court in January of 2018; it was originally before Judge Lindsay. Since then, the case has survived the dismissal without prejudice of multiple defendants, a case reassignment to Judge Brown, Plaintiff's termination of six of her attorneys, Plaintiff's show cause hearing, and Plaintiff's suggestion of bankruptcy leading to the administrative closure of the case. Defendants filed an unopposed motion to reopen the case in early February 2021. (Doc. 108).

After discovery concluded, Defendants filed their motion for summary judgment on November 29, 2021. (Doc. 126).  Plaintiff's response to Defendants' summary judgment motion was originally due twenty-one days later, December 20, 2021. Citing upcoming work demands for both Plaintiff and her attorney Andrew Dunlap, Plaintiff requested a deadline extension to January 3, 2022.

(Doc. 129). The Court granted this first extension. (Doc. 130). Then, citing the same work demands and how close she was to finishing her brief, Plaintiff asked for a second deadline extension of an additional four days. The Court granted this second extension. (Doc. 134). From there, the case took an unusual turn.

The day before Plaintiff's summary judgment response was due, Ezra Young motioned the Court to appear *pro hac vice* on behalf of Plaintiff. (Doc. 133). That same day, Mr. Young filed Plaintiff's Third Motion for Extension of Time requesting a new deadline of January 20, 2022. (Doc. 135). The next day, Plaintiff's other attorney Andrew Dunlap motioned to strike that third request from the record (Doc. 138) and then motioned to withdraw as counsel. (Doc. 139). The Court granted the application for admission *pro hac vice* (Doc. 136), denied the third deadline extension (Doc. 141), and denied the motion to withdraw as counsel (Doc. 144). Mr. Young filed Plaintiff's fourth motion requesting a new summary judgment response deadline of either February 18 or 19, 2022; it is unclear from the motion which date Plaintiff desired. (Doc. 152). The Court denied that fourth deadline extension in its February 28 Order and Memorandum Opinion. (Doc. 166). In it the Court found that Plaintiff failed to show good cause or excusable neglect, and that Plaintiff acted in bad faith. *Id.*

Plaintiff filed a motion to reconsider that order (Doc. 171). She also filed a duplicate motion (Doc. 172). The Court issued a March 9 memorandum opinion and order denying the motion for reconsideration. (Doc. 181). On March 10, the Court issued an electronic order mooting the duplicate motion. (Doc. 182). Plaintiff then filed another motion for reconsideration titled Plaintiff Cheryl Butler's Motion for Reconsideration of the March 10, 2022 Order with Incorporated Brief. (Doc. 183). This newest motion is now before the Court. But before the Court can even get to the analysis addressing the motion, the Court must clarify the first of many errors Plaintiff commits within the motion.

Plaintiff, in her second motion for reconsideration, makes repeated reference to the Court's "March 10" opinion. (Doc. 183). It is likely that her arguments pertain to the Court's March 9 opinion. She properly cites the March 9 opinion, but improperly labels it the March 10 opinion. (Doc. 183 at 1). The Court will treat this motion as if it is meant to respond to the Court's March 9 memorandum opinion and order denying reconsideration of the summary judgment deadline extension, rather than the March 10 electronic order finding the duplicate motion moot.

## II.     Legal Standard

Plaintiff's motion is governed by Rule 54(b). Rule 54(b) applies where, as here, a party seeks to revise an order that did not result in the case being dismissed. It provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b). Under Rule 54(b), the Court has broad discretion to reconsider and modify its prior order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). The Court's discretion to reconsider its interlocutory ruling is not limited by the heightened standards of other rules governing reconsideration of final orders, including Rule 59(e). *Id.*

## III.    Analysis

Plaintiff's motion is overloaded with improper interpretations of: 1) Fifth Circuit precedent, 2) this Court's opinions, and 3) the record at hand. The Court now turns its attention away from the hundreds of other motions before it and turns its attention towards Plaintiff's latest attempt to ignore what the Court made clear in its February 24, 2022, order. Plaintiff has failed to show good cause and

excusable neglect in failing to timely file her summary judgment response and the Court reaffirms its original finding of bad faith by Plaintiff. The Court writes now to clarify the myriad errors contained in her latest motion for reconsideration.

> a. The Court has already acknowledged that *Eversley* is controlling; Plaintiff's improper interpretation of it is not.

As the Court noted in its February 28, 2022, order, this Court cannot and will not grant Defendants' motion for summary judgment based on Plaintiff's failure to timely respond. (Doc. 166 at 8) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)). Just like the district court in *Eversley*, this Court will treat the facts in the summary judgment motion as undisputed and focus on whether Defendants' have made a *prima facie* showing of entitlement to summary judgment. Contrary to Plaintiff's argument, this Court never "reverse[d] course" nor "side-stepp[ed] *Eversley*." (Doc. 183 at 4). What the Court did do in its March 9 opinion is decline to follow Plaintiff's improper interpretation of *Eversley*.

The Fifth Circuit in *Eversley* stated the following:

> After the end of the discovery period, which had lasted eight months or more, MBank moved for summary judgment, supported by affidavits and deposition excerpts as well as a list of undisputed facts and a supporting brief. Notwithstanding that local rules called for a response within twenty days, Eversley filed absolutely no response [whatsoever] to MBank's motion, nor did he seek an extension of time within which to do so. Approximately seven weeks after MBank's motion was filed, the district court entered its memorandum opinion granting the motion. Eversley filed no motion for reconsideration, and did not otherwise make any attempt in the court below to either cause it to change its ruling or to in any way oppose the granting of the motion. Neither on appeal nor in the court below has Eversley ever offered any explanation for his failure to oppose the motion for summary judgment, or to seek reconsideration; nor has he ever asserted that he did not have an adequate opportunity for discovery or the like. Eversley did, however, file a timely notice of appeal. In ruling on MBank's motion, the district court did not grant it because Eversley had in any sense "defaulted."

> *See Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). Rather, the district court accepted as undisputed the facts so listed in support of MBank's motion for summary judgment. In our opinion, the district court acted properly in doing so and, since Eversley made no opposition to the motion, the court did not err in granting the motion as MBank's submittals made a *prima facie* showing of its entitlement to judgment. *See Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Viewed in this light, we conclude that summary judgment for MBank was proper.

*Id.* The remainder of the opinion dealt with the district court's summary judgment analysis regarding Plaintiff's religious discrimination claim. The Court listed this section in its entirety to highlight the level of Plaintiff's error and to demonstrate why it refuses to accept Plaintiff's improper interpretation.

After acknowledging the nonmovant's failures, Plaintiff concluded the following regarding the Fifth Circuit's decision in *Eversley*: "because absolutely no opposition was made to summary judgment below, the Fifth Circuit deemed the nonmovant to have 'defaulted' and on that basis approved of the trial court's grant of summary judgment." (Doc. 172 at 12); *see also* (Doc. 181 at 4) (citing Doc. 172 at 12–13 analysis of precedent)). Plaintiff's quote here is the opposite of what the Fifth Circuit held. *Eversley*, 843 F.2d at 174 ("the district court *did not* grant [summary judgment] because Eversley had in any sense 'defaulted.' (citations omitted). Rather, the district court accepted as undisputed the facts so listed in support of Mbank's motion for summary judgment. In our opinion, the district court acted properly in doing so[.]") (emphasis added).

The crux of the Fifth Circuit's holding is that, despite Eversley's failure to respond, MBank still needed to make "a *prima facie* showing of its entitlement to judgment." *Id*. The remainder of the opinion went on to assess the movant's *prima face* case proving entitlement. *Eversley* in no way supports Plaintiff's argument that she can file her summary judgment response whenever she gets around to it, rather than when the Court ordered her to do so. Lastly, *Eversley* is distinguishable from

the case at hand because, unlike the district court in *Eversley*, this Court made a specific finding that Plaintiff failed to show good cause or excusable neglect and has acted in bad faith.

      b.  Both *Adams* and the instant case are factually distinguishable from *Hibernia.*

Contrary to Plaintiff's argument, this Court does not determine which Fifth Circuit cases are binding based on recency; it makes its decision according to which Fifth Circuit cases are factually similar to the case at hand and is bound accordingly. Plaintiff's decision to accuse this Court of "reason[ing] that later panels subvert earlier panels" is a straw man argument and a red herring. (Doc. 182 at 2–4). The Court wrote its March 9 opinion to refute Plaintiff's unsupported and legally contradicted claim that "it is an abuse to ignore late summary judgment opposition." (Doc. 171 at 12) (cleaned up). The opinion made clear the Court "read these cases, considered Plaintiff arguments, but after doing so, the Court remains unpersuaded by her interpretations and rejects it accordingly." The Court lacks the resources to explain why each case Plaintiff cites, in each one of Plaintiff's mounting motions for reconsideration, is inapplicable or unpersuasive. Plaintiff's improper interpretation of *Hibernia* does not is not a sound basis for this Court to apply the prior panel rule.

The Court will now list the *Hibernia* facts below and will show step by step how far they are from Plaintiff's actions:

> On December 20, 1984, Hibernia filed a motion for summary judgment against Granados. Field received the motion in the late afternoon of December 21, 1984. The date set for hearing the motion was January 9, 1985. Field apparently was unaware of Local Rule 3.7, which requires oppositions to motions to be filed 8 days before the hearing date and believed that the deadline for filing a response to the motion was the day prior to the hearing date, i.e., January 8, as provided by Fed. R. Civ. P. 56(c). Field prepared responsive pleadings from December 26 to December 28 and then sent them to his client for execution with instructions to forward them to Willeford for filing.
>
> On January 2, 1985, Field received a letter from the district judge informing him that responsive pleadings to Hibernia's motion for

> summary judgment were due on January 1 by 5:00 p.m. Field then called the chambers of the district judge and told a law clerk that circumstances had made it impossible to file a timely response, but that he would file an unexecuted copy of the pleadings as soon as possible and that he would seek leave of the court and opposing counsel to file a response out of time. Field spoke with opposing counsel, who agreed to late receipt of the papers, so long as they were received by January 4.
>
> On January 4, the district court granted Hibernia's motion for summary judgment. Later the same day Willeford filed a motion for leave to file a response out of time and an unexecuted copy of Granados's declaration and other documents. He also filed a motion to admit Field as counsel *pro hoc vice*.
>
> In his minute entry of January 7, the district judge granted the motion to admit Field. However, he denied the motion to file a response out of time. In doing so, the judge noted that he had spoken with counsel for Hibernia, who had objected to late filing of a response. He also noted that neither local counsel nor appellant had signed the responsive pleadings offered. Although the judge had been informed by Field that signed pleadings would be available shortly, he indicated that the pleadings did not meet the form required by 28 U.S.C. § 1746.

*Hibernia*, 776 F.2d at 1278–79. The *Hibernia* facts are different from this case for the following non-exhaustive list of reasons:

1) The Fifth Circuit noted its concern that the district court granted the motion by default. *See id.* at 1279 (after outlining several indicators that the district court granted summary judgment by default and citing case law explaining that doing so was prohibited, the Fifth Circuit stated: "[b]ased on the record below, we cannot say with assurance that the district judge's decision to grant summary judgment was based on the merits rather than on Granados's default."). This Court will note, again, that it *cannot* and *will not* grant Defendants' summary judgment motion by default. *See* (Doc. 166 at 8) (noting that courts of this jurisdiction do not grant summary judgment by default) (citing *Eversley*, 843 F.2d at 174).

2) The local rule in effect in *Hibernia* gave the nonmovant's attorney ("Mr. Field") eleven days to respond to the summary judgment motion. *See id.* at 1280. Our local rules gave Plaintiff twenty-one days to respond. Local Rule 7.1(e). And the Court's granting Plaintiff's request for extensions brought the total up to thirty-nine days. *See* (Doc. 134).

3) The Fifth Circuit noted Mr. Field received the summary judgment motion on December 21, "just before the Christmas holidays". *Hibernia*, 776 F.2d at 1280. Plaintiff received the summary judgment motion November 29 and was originally required to respond by December 21. (Doc. 126). Moreover, Plaintiff has never alleged that holidays of any kind are the basis for an extension nor to blame for her tardiness. *Cf.* (Doc. 131) (Plaintiff's second motion for an extension stated only that "Plaintiff and Her (sic) counsel worked throughout the Holiday break[.]") (the Court granted this motion (Doc. 134)).

4) Mr. Field was unaware of the actual deadline; he mistakenly believed it was due seven days after the actual due date. *See Hibernia*, 776 F.2d at 1278. Plaintiff has never argued she was unclear about her deadlines. In fact, her attorney Mr. Dunlap, in Plaintiff's motion to extend the deadline, acknowledged the original "deadline to file a response [was] December 20, 2021." (Doc. 129). The Court granted Plaintiff two deadline extensions ordering her to respond by the exact date she requested. Finally, not only was Plaintiff's newest attorney Mr. Young aware of the January 3, 2022, deadline, he agreed to join the case despite it. (Doc. 133) (noting that the Court had not yet ruled on the motion to extend the deadline to January 7, 2022).

5) Mr. Field prepared responsive pleadings within seven days of receiving the motion for summary judgment and within the deadline to file a timely response. *See Hibernia*, 776 F.2d

at 1278. Plaintiff took eighty-two days total and was not prepared to file until forty-three days after the deadline. (Doc. 159).

6) The district court in *Hibernia* noted procedural deficiencies—Field was not yet admitted *pro hac vice* and unsigned pleadings—as a basis for denying relief. *Hibernia*, 776 F.2d at 1280–81. This Court noted substantive deficiencies—undue prejudice to the defendants, negative impacts on the proceedings and the Court's docket, and a finding that Plaintiff acted in bad faith. (Doc. 166).

*Hibernia* does not support Plaintiff's argument that she may file her response whenever she feels like it, despite the Court's order (Doc. 134) to file by January 7, and despite the Court finding no good cause, no excusable neglect, and bad faith (Doc. 166). Furthermore, Plaintiff's attempt to distinguish *Kitchens* and *Adams* is likewise unpersuasive. She is, however, correct in noting "*Kitchen* and *Adams* do not directly speak to the legal issue raised and the posture of the request made by Professor Butler." (Doc. 183 at 5). Because unlike *Kitchens* and *Adams*, this Court held Plaintiff failed to show good cause, failed to show excusable neglect, and has acted in bad faith.

   c. Plaintiff's improper interpretation of *Hibernia* is not binding on this Court.

Plaintiff makes the following claim when she compares *Hibernia* to this case:

> This Court did not rule on Professor Butler's January 20 extension request until February 28, 2022, nine days after she docketed her summary judgment opposition (ECF Nos. 159, 160, and 161). As held in *Hibernia*, excusable neglect exists when the trial court does not inform the party of the pertinent deadline until after the deadline has passed. 776 F.2d at 1280 (finding excusable neglect where "the district judge's notice of the filing deadline did not reach [the party] until the day after the deadline had passed"). Given that this Court never did not (sic) inform her whether an extension would be granted until long after the deadline she proposed had passed and after her filings had been docketed, *Hibernia's* logic establishes excusable neglect.

(Doc. 183 at 7) (alterations in original). The only correct contention in this quote regarding *Hibernia* is that the Fifth Circuit did state "the district judge's notice of the filing deadline did not reach Field until the day after the deadline had passed." *Hibernia*, 776 F.2d at 1280. However, that fact is not the sole reason the Fifth Circuit determined the district court should have found excusable neglect. Plaintiff here ignores the remaining portion of the quote to blind herself to the reason *Hibernia* is distinguishable.

> Specifically, we note that the fact that Field received Hibernia's motion for summary judgment just before the Christmas holidays and that the district judge's notice of the filing deadline did not reach Field until the day after the deadline had passed. Under other circumstances, Field may have received the notice in time to file the responsive pleadings, which he had already prepared, before the deadline. At any rate, once Field discovered that the deadline had passed he moved with all possible speed to file unexecuted set of pleadings and to secure leave of court for a late filing. The minimal tardiness involved in this case was not enough to justify depriving Granados of the right to present a substantive defense. Field's neglect here should have been excused.

*Id.* As the Court noted above, none of those factors are present here. Even still, it is the full facts before the Fifth Circuit that led to its conclusion. The Fifth Circuit did not reach its conclusion based solely on the notice reaching the attorney one day after the response was due. Typically, the Court would write off an attorney's attempt to quote case law out of context, and for convenience of his own argument, as sloppy lawyering. But Plaintiff has gone further. Plaintiff is now inadvertently, or worse, intentionally, accusing this Court of failing to notify Plaintiff of her deadline to respond to defendant's motion for summary judgment. This accusation is false.

The Court informed Plaintiff of her deadlines at every turn in this case. With respect to the summary judgment filings, the amended scheduling order explicitly states that the "deadline for dispositive motions was November 30, 2021". (Doc. 117) (cleaned up). Our local rules explicitly state "[a] response and brief to an opposed motion must be filed within 21 days from the date the

motion is filed." Unlike Mr. Field in *Hibernia*, Plaintiff has never argued she was unclear about when she was required to file a response. In fact, her attorney Mr. Dunlap, in his motion to extend the deadline, acknowledged the original "deadline to file a response [was] December 20, 2021." (Doc. 129). The Court, in its order granting the first extension, explicitly stated "Plaintiff is ordered to respond by 1/03/2022." (Doc. 130). Again, the Plaintiff proposed a new deadline—this time to January 7, 2022. (Doc. 131). Again, the Court granted this extension and explicitly stated "Plaintiff's response [was] due 1/07/2022." (Doc. 134). Finally, not only was Plaintiff's newest attorney Mr. Young aware of the January 3, 2022, deadline, he agreed to join the case despite it. (Doc. 133) (noting that the Court had not yet ruled on the motion to extend the deadline to January 7, 2022).

The Court denied Plaintiff's third motion to extend the deadline the same day she filed it. (Doc. 135). The Court's scheduling order makes clear in bold writing that deadline modification must be based on "good cause." (Doc. 113). Mr. Young was aware of the actual deadline to file a summary judgment response—he and his client chose to ignore it and instead file a third request for a further deadline extension that failed to show good cause or excusable neglect. The Court promptly denied that third request the same day. *Hibernia* is predicated on actual deadlines not proposed deadlines.

At the end of the day, *Hibernia's* "logic" does not apply to this case. Moreover, *Hibernias's* "logic" is not made applicable because the Court turned its attention to the myriad other cases on its docket, drafted a ten-page memorandum opinion that explained legally and factually why Plaintiff failed to show good cause or excusable neglect and has acted in bad faith, and filed it "nine days after she docketed her [forty-three days late] summary judgment response." (Doc. 183). The burden to show good cause and excusable neglect has been and remains with Plaintiff. *See* Fed. R. Civ. P. 6(b). Plaintiff has failed to carry that burden. *Hibernia* does not require this Court to find good cause where

it does not exist. The Court conducted the necessary inquiry for a third time and still finds no good cause or excusable neglect and still finds bad faith by the Plaintiff.

> d. Plaintiff's interpretation of this Court's footnote in its March 9 opinion is erroneous.

Plaintiff improperly concludes that "[t]he March 10 opinion (sic) opines for the first time that because Professor Butler missed the deadline extension requested in her January 20, 2022 motion, that the Court is justified in striking her belated summary judgment opposition." (Doc. 183) (citing Doc. 182 at 4 n. 1). This conclusion is nowhere close to what the Court said in its March 9 or March 10 opinion and in no way flows from it.

As an initial matter, the Court drew no such conclusion. The Court attached a footnote to the following sentence: "[u]nlike Adams, Plaintiff filed a fourth extension, and would have still needed a fifth, before filing her response." The footnote reads in its entirety: "Plaintiff, in her fourth motion for a summary judgment response deadline extension, requested a February 18, 2022, deadline. *See* (Doc. 152 at 1, 8). Despite the newest date she proposed, which the Court never approved, Plaintiff filed her dilatory response to summary judgment on February 19, 2022. *See* (ECF No. 159) (stricken per the Court's order in (Doc. 166)). The Court attached the footnote to explain why a fifth motion for a deadline extension would be necessary. The words "stricken per the Court's order in (Doc. 166)" is attached to explain what happened to that motion as a result of the Court finding no good cause or excusable neglect and bad faith by the Plaintiff. The whole point of that analysis is to demonstrate why *Adams* is close enough to the facts at hand such that the Court's exercise of its discretion is precedented.

As a legal matter, the Court draws its authority to strike dilatory responses from the record based on its power to enforce: 1) the deadlines in the amended scheduling order;[1] 2) the Local Civil rules;[2] 3) the Federal Rules of Civil Procedure;[3] and 4) Fifth Circuit precedent.[4]

As a factual matter, the Court exercised its authority to strike the dilatory response because: 1) Plaintiff failed to comply with the Court's order to file her summary judgment response by January 7, 2022—not whenever Plaintiff felt like filing it; 2) because the Court found that Plaintiff failed to show good cause or excusable neglect in filing her response forty-three days late; and 3) because the Court's review of the record reveals Plaintiff acted in bad faith. Plaintiff has yet to convince this Court otherwise.

    e. Plaintiff's interpretation of the Court's reconsideration standard is erroneous.

Plaintiff accuses the Court of "reasoning that reconsideration is *only* appropriate where there are no new factual developments and intervening change in law." (Doc. 183 at 8–9) (citing Doc. 181 at 1) (emphasis added). This Court has never said that reconsideration is "only" appropriate where it finds changes in fact or intervening law. This accusation is false. The Court specifically stated in the legal standard section of the March 9 opinion, the following: "[u]nder Rule 54(b), the Court has broad discretion to reconsider and modify its prior order 'for *any reason it deems sufficient*, even in the

---

[1] (Doc. 117) (establishing a November 30, 2021, deadline for dispositive motions).

[2] *See* Local Rule 7.1(e) (giving parties twenty-one days to respond to opposed motions).

[3] *See* Fed R. Civ. P. 6(b) (giving the Court authority to extend deadlines based on a finding of good cause and excusable neglect)).

[4] *See Kitchen v. BASF*, 952 F.3d 247, 254 (5th Cir. 2020) ("[I]t was no abuse of the district court's discretion to strike his late-filed motion. We have held a district court has discretion to refuse to accept a party's dilatory response to a motion for summary judgment, even if the court acknowledges reading the response, and has discretion to deny extending the deadline when no excusable neglect is shown.") (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 156, 161 (5th Cir. 2006)).

absence of new evidence or an intervening change in or clarification of the substantive law.'" (Doc. 181 at 2) (citing *Austin*, 864 F.3d at 336 (quoting *Lavespere*, 910 F.2d at 185)).

For whatever reason, Plaintiff has misinterpreted the Court's introduction to its March 9 opinion as a claim that changes in facts or intervening law are required for reconsideration. Plaintiff is confusing sufficient and necessary conditions. The Court listed several criteria it deems sufficient; it need not hedge its bets by repeating that the list is non exhaustive. And it need not explain the technicalities of necessary versus sufficient conditions in each opinion to lawyers who should understand the difference. Instead, the Court writes plainly for everyone's benefit. The Court stated plainly that the "Doc. 166 Order, [] explained its reasoning in detail. Two weeks have passed; there are no new developments in this case and no changes in the applicable law. The Court finds the motion unpersuasive and presents no legal basis for this Court to reverse itself." (Doc. 181 at 1). The Court will now state its reasoning technically: Plaintiff has failed to put forth "any reason . . . sufficient" for this Court to reverse itself.

      f.   Plaintiff's improper interpretation of *Xerox* is not binding on this Court.

Plaintiff's citation to *Xerox* is unhelpful. *See* (Doc. 183 at 8) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 349 (5th Cir. 1989) ("Refusal to grant reconsideration is tested under an abuse of discretion standard, but the Judge has to consider judicially the record as it exists at the time of the motion for reconsideration not just as it existed at the time of the initial ruling."). *Xerox* concerned evidence important enough to affect the outcome of the case that was not in the record at the time the lower court ruled on summary judgment; the Fifth Circuit determined that the district court should have granted a continuance to allow that evidence to be produced before ruling on summary judgment. *Xerox Corp.* 888 F.2d at 355–56. The Court reviewed the record and specifically noted in its March

...

9 opinion "[a]fter considering the motion, *the record*, and applicable law, the Court finds that the motion should be, and therefore is, DENIED." (Doc. 181). To the extent Plaintiff's argument here is referring to the Court's actual March 10 opinion (Doc. 182) finding her duplicate motion for reconsideration (Doc. 172) moot for being a duplicate, the Court declines to re-review the record for the sole purpose of mooting duplicate filings. Doing so would waste this Court's resources. The key to this *Xerox* analysis is that Plaintiff never alleged that such important evidence is missing from the summary judgment record in this case.

Instead, Plaintiff argues that this Court in its order denying motions for reconsideration "must also at the very least review and respond to a motion for reconsideration that points out the earlier opinion was premised on an erroneous assessment of the evidence." (Doc. 183 at 8) (citing *Xerox Corp.* 888 F.2d at 349). The Court reviewed the motion for reconsideration (Doc. 172) and responded accordingly. (Doc. 181) (reaffirming the findings in its original order, (Doc. 166)). Plaintiff goes further arguing, "[e]ach and every one of the several significant errors of fact Professor Butler raises in her March 7 motion pertaining to the February 28 opinion are totally ignored by the March 10 opinion (sic). Under *Xerox*, this an (sic) abuse of discretion that should be remedied by reconsideration." (Doc. 183 at 9).

The Court responded to all Plaintiff's arguments by saying they are all unpersuasive and do not warrant the Court reversing itself. Nothing in *Xerox* requires this Court to take the time to reexplain why "each and every one" of its own findings are correct; nor does *Xerox* require this Court to explain in any detail why this Court finds Plaintiff's interpretation of the law or record unpersuasive. Plaintiff's *belief* that there are "several significant errors" does not place an obligation on this Court to write lengthy opinions that succeed in changing Plaintiff's mind.

        g. Plaintiff's accusations against her counsel Andrew Dunlap are unpersuasive.

In Plaintiff's motion for reconsideration (Doc. 171), she claims, through her attorney Mr. Young, that she "herself did not make contradictory requests—Mr. Dunlap made filings without her authorization and at times made representations that were false when made and which Butler immediately asked him to correct." (Doc. 171 at 4–5); *see also* (Doc. 183 at 8–9) (demanding this Court address arguments made in the (Doc. 171)). The irony is that Plaintiff, through Mr. Dunlap, made similar allegations against the counsel that came before Mr. Dunlap. *See* (Doc. 99 at 19) (Plaintiff made the following accusation against her prior counsel: "the issue is that you made false representations to the court.") (cleaned up). The timing of the past accusation, the timing of this current accusation, the similarity between them, Mr. Dunlap's declaration (Doc. 149), Mr. Dunlap's clarifications at the March 8 hearing, Plaintiff's previous attempt to manufacture an excuse to avoid this Court's past order,[5] a review of the documents she attached to support this latest accusation, and a review of the record as a whole lead this Court to conclude that Plaintiff's claim here lacks merit.

Furthermore, the Court must note that Plaintiff and her newest attorney Mr. Young are far too careless in launching ethics accusations against her prior counsel Mr. Dunlap. (Doc. 171 at 4–5); (Doc. 171–5); (Doc. 183 at 79). Mr. Dunlap is under no obligation to draft filings that meet Mr. Young's standards; he is not required to prepare a response in accordance with Mr. Young's preferred timelines; he is not required to divide labor between himself and his client the way Mr. Young would

---

[5] The Court ordered a status conference for November 14, 2019, and specifically required Plaintiff Cheryl Butler to attend. (Doc. 73). Despite the Court order requiring her to appear, she failed to do so. Instead, she filed a motion for continuance the day of the hearing with her sworn declaration containing the following claim: "[t]o secure a doctor's note verifying my unavailability, I have a doctor's appointment scheduled for Thursday, November 14, 2019." (Doc. 80-1 at 1). The Court highlighted the absurdity of her argument that she could not attend the status conference per the Court's order because she needed to get a doctor's note explaining why she could not attend status conference. (Doc. 87). The Court ordered a show cause hearing and specifically noted "[t]hat Plaintiff can get to and from a doctor's appointment the same day she claims to be unable to attend the proceeding in this Court underminer her credibility with the Court." *Id.* at 2.

divide it. Mr. Young's assessment of the matter is unpersuasive to this Court, particularly for the purpose of gaining relief Plaintiff is neither legally nor factually entitled to receive. The Court will now speak on the issue of whether Mr. Dunlap's second motion for a deadline extension (Doc. 131) misled the Court—simply put, it did not.[6]

The Court has reviewed Mr. Dunlap's declaration (Doc. 149) (discussing advising his client to abandon or focus more heavily on better claims then dividing the labor accordingly), his testimony at the March 8 hearing (Doc. 186 at 79–80), the conversations between Mr. Dunlap and Mr. Young (Doc. 171-5), Plaintiff's second motion for a deadline extension (Mr. Dunlap refers to Mrs. Butler as Plaintiff and to himself as Plaintiff's counsel), Plaintiff's third motion for a deadline extension (Doc. 135 at 3) (Mr. Young acknowledges Plaintiff Butler had prepared partial drafts), Mr. Dunlap's prior dealings with the Court in this case, and the record as a whole. The Court determines that Mr. Dunlap's statement that "Plaintiff has completed her brief but needs to complete her declaration and finish compiling her exhibits" is supported by the record. More importantly, this bickering is no basis for the Court to find good cause or excusable neglect.

### h. Plaintiff's accusations against Defendants regarding missing deadlines are erroneous and unpersuasive.

Finally, rather than carrying her burden of showing good cause and excusable neglect, Plaintiff attempts to point the finger at Defendants. *See* (Doc. 171 at 1) ("The Opinion relies heavily on Defendants' representations that they have made all deadlines while Professor Butler has repeatedly broken them[.]"); *See id.* at 2 (arguing Defendants have not "truthfully admitted missing

---

[6] The Court found this motion unpersuasive *not* misleading. (Doc. 166). A litigant's stated reason for needing an extension is not the only factor the Court considers when considering a deadline extension. In terms of the second motion, the request was timely (came before the deadline), the extension was minimal (four days), and concerned an important matter (summary judgment). In that circumstance, the Court still found good cause existed to extend the deadline even though the reason the attorney stated was not persuasive.

deadline" (expert disclosures under Rule 26) (mediation order). More importantly, Plaintiff is again too careless in accusing the Defendants' attorneys of ethical misconduct. *See* Tex. Disc. R. Prof. Conduct 3.03, Candor Toward the Tribunal.

Plaintiff argues that Defendants have not complied with the Rule 26 requirements for disclosures. (Doc. 171 at 5–6); (Doc. 183 at 9) (alleging "[b]oth Defendants' first and second expert designations identify them as regular experts designated under Rule 26(a)(2) not rebuttal experts designated under 26(a)(2)(B)). Her argument here is unpersuasive.

To begin, the labeling of those rules is meaningless for the purposes of determining whether a litigant intends to call expert independent of Plaintiff's decision or if only to rebut a Plaintiff's expert. The text within the designations, rather than any references to the rule, makes clear to the Court that Defendant's first and second expert designations are intended to be rebuttal experts.

1. The first expert witness in the first designation is a rebuttal expert. *See* (Doc. 64 at 2).

   > Mr. Shank may offer expert testimony regarding the reasonableness and necessity of any attorneys' fees sought by Plaintiff Chery (sic) Butler in this litigation. At this juncture, Butler has not pleaded or otherwise set forth the amount of attorneys' fees she will seek in this case or the basis on which such attorneys' fees are reasonable or necessary. Defendants will produce an expert report if required, or provide detailed opinions when Plaintiff complies with Rule 26(a)(2) and provides such information or testimony.

2. The second expert witness in the first designation is a rebuttal expert. *See id.* at 2–3.

   > Mr. Earle may offer expert testimony regarding the alleged economic losses and other economic damages sought by Plaintiff. . . . Plaintiff has not produced [damages based on lost or past wages] documents. Defendants will produce an expert report, if required, or provide detailed opinions when Plaintiff complies with Rule 26(a)(2) and provides such testimony.

3. The first expert witness in the second designation is a rebuttal expert. *See* (Doc. 115 at 1–2).

> Mr. Newkirk may offer expert testimony regarding the reasonableness and necessity of any attorneys' fees sought by Plaintiff Chery (sic) Butler in this litigation. At this juncture, Butler has not pleaded or otherwise set forth the amount of attorneys' fees she will seek in this case or the basis on which such attorneys' fees are reasonable or necessary. Defendants will produce an expert report if required, or provide detailed opinions when Plaintiff complies with Rule 26(a)(2) and provides such information or testimony.

4. The second expert witness in the second designation is a rebuttal expert. *See id.* at 2–3.

> Mr. Earle may offer expert testimony regarding the alleged economic losses and other economic damages sought by Plaintiff. . . . Plaintiff has not produced [damages based on lost or past wages] documents. Defendants will produce an expert report, if required, or provide detailed opinions when Plaintiff complies with Rule 26(a)(2) and provides such testimony.

Defendant's use of the phrases "may offer", "if required", and "when Plaintiff complies with Rule 26(a)(2)" indicates their intent that these witnesses be rebuttal experts. Moreover, Defendants pretrial disclosures list their only expert, Ms. Newkirk, under the section of "witnesses who may be called if the need arises." (Doc. 155 at 2) (cleaned up). Finally, Defendants explained their reason for preemptively designating rebuttal experts in the March 8 hearing. (Doc. 186 at 58) ("There is no expert report. We are not putting in any affirmative evidence except to rebut what Mrs. Butler failed to do. Now, if she doesn't call any experts, it's a nonissue. Because we don't need experts.").

The Court's scheduling order provides the following regarding rebuttal experts:

> Rebuttal Expert(s): If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), the disclosures required under Rule 26(a)(2) shall be made shall be made within 30 days after the disclosure made by the other party.

(Doc. 113 at 3). The record indicates that Defendants' experts are in fact rebuttal experts. Accordingly, Defendants are not required to turn over Rule 26(a)(2) disclosures until Plaintiff turns over her expert disclosures. If Plaintiff does not intend to call experts, and thus have no obligation to make Rule 26(a)(2) disclosures, then Defendants have no rebuttal expert deadline. Plaintiff's argument regarding Defendants missing deadlines is therefore unpersuasive.

### IV.   Conclusion

For the above reasons, Plaintiff Cheryl Butler's Motion for Reconsideration of the March 10, 2022 Order with Incorporated Brief (Doc. 183) is DENIED in its entirety. The Court ORDERS this case STAYED pending the Court's ruling on Defendants' motion for summary judgment. (Doc. 129).

**SO ORDERED**; March 17, 2022.

Ada Brown
UNITED STATES DISTRICT JUDGE