**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHERYL BUTLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:18-CV-00037-E** |
| **v.** | § | |
| | § | |
| **JENNIFER M. COLLINS,** | § | |
| **STEVEN C. CURRAL,** | § | |
| **JULIE FORRESTER ROGERS,** | § | |
| **HAROLD STANLEY, AND** | § | |
| **SOUTHERN METHODIST** | § | |
| **UNIVERSITY** | § | |
| | § | |
| **Defendants.** | § | |

# RESPONSE OF MR. EZRA YOUNG TO ORDER TO SHOW CAUSE (ECF NO. 191)

Ezra Young
LAW OFFICE OF EZRA YOUNG
210 North Sunset Drive
Ithaca, NY 14850
P: (949) 291-3185
ezra@ezrayoung.com

ATTORNEY FOR PLAINTIFF
PROFESSOR CHERYL BUTLER

TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... iii

INTRODUCTION ..................... 1

BACKGROUND ..................... 3
- Missing Tenure Box ..................... 3
- Events Leading Up to Rule 56(d) Motion ..................... 3
- Rule 56(d) Motion ..................... 5
- Order to Show Cause ..................... 6

LEGAL AUTHORITIES ..................... 9
- Timing of Rule 56(d) Motion ..................... 9
- Limits on Power to Stay ..................... 9
- Limits on Rule 11 Sanction Powers ..................... 9
- Limits on Inherent Power to Sanction ..................... 12
- *Dondi* ..................... 14

ARGUMENT ..................... 15
- I. The Stay Does Not Make a Rule 56(d) Motion Sanctionable ..................... 15
- II. Young Did Not Violate Rule 11 ..................... 17
- III. Inherent Power Sanctions Are Inappropriate ..................... 19
- IV. Sanctions Are Not Merited Under *Dondi* ..................... 23
- V. If Imposed, Sanctions Would Chill Butler's Appeal Rights ..................... 26

CONCLUSION ..................... 27

TABLE OF AUTHORITIES

Cases

*Berquest v. FyBX Corp.*,
2003 WL 22384934 (ED La. 2003) .............................................. 13, 22

*Bucklew v. St. Clair*,
2019 WL 2724067 (N.D. Tex. 2019) ............................................ 12, 22

*Bus. Guides v. Chromatic Comms. Ent.*,
498 U.S. 533 (1991) ..................................................................... 10, 11

*Carroll v. Jacques Admiralty Law Firm*,
110 F.3d 290 (5th Cir. 1997) ....................................................... 12, 19, 20

*CJC Holdings, Inc. v. Wright & Lato, Inc.*,
989 F.2d 791 (5th Cir. 1993) ....................................................... 10

*Chambers v. NASCO,*
501 U.S. 32 (1991) ....................................................................... 13, 21

*Chaves v. Medina Star*,
47 F.3d 153 (5th Cir. 1995) ......................................................... 13

*City of El Paso v. City of Socorro*,
917 F.2d 7 (5th Cir. 1990) ........................................................... 11

*Clinton v. Jones*,
520 U.S. 681 (1997) ..................................................................... 9, 16

*Cooter & Gell*,
496 U.S. 384 (1990) ..................................................................... 11, 26

*Crowe v. Smith*,
261 F.3d 558 (5th Cir. 2001) ....................................................... 13, 21

*Dawson v. United States*,
63 F.3d 886 (5th Cir. 1995) ......................................................... 10, 18

*Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*,
121 FRD 283 (N.D. Tex. 1988)............................................ *passim*

*Elliot v. Tilton*,
64 F.3d 213 (5th Cir. 1995)........................................................ 13, 22

*FDIC v. Calhoun*,
34 F.3d 1291 (5th Cir. 1994)....................................................... 10, 18

*Hines v.* D'Artois,
531 F.2d 726 (5th Cir. 1976)......................................................... 17

*In re Moore*,
739 F.3d 747 (5th Cir. 2014)....................................................... 12, 20

*In re Stone*,
986 F.2d 898 (5th Cir. 1993)....................................................... 12, 19

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) ......................................................................... 9

*McNight v. Blanchard*,
667 F.2d 477 (5th Cir. 1982)........................................................... 9

*NASCO v. Calcasieu Television & Radio*,
894 F.2d 696 (5th Cir. 1990)......................................................... 13

*Nat'l Ass'n of Gov't Empls. v. Nat'l Fed. Of Gov't Empls.*,
844 F.2d 216 (5th Cir. 1988)......................................................... 10

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) ....................................................................... 13

*Smith v. Our Lady of the Lake Hosp., Inc.*,
960 F.2d 439 (5th Cir. 1992)....................................................... 10, 11

*Tejero v. Protfolio Recovery Associates, LLC*,
955 F.3d 453 (5th Cir. 2020)...................................................... 10, 17, 18

*United States v. Goodwin*,
457 U.S. 368 (1982) ....................................................................... 27

*Webster v. Sowders*,
846 F.2d 1032 (6th Cir. 1988) ........ 12, 26

*Wedgeworth v. Fireboard Corp.*,
706 F.2d 541 (5th Cir. 1983) ........ 9

Rules

Fed R. Civ. P. 6 ........ *passim*

Fed. R. Civ. P. 11 ........ *passim*

Fed. R. Civ. P. 11(b) ........ 19

Fed. R. Civ. P. 11(c)(3) ........ 19

Fed. R. Civ P. 56(d) ........ *passim*

Miscellaneous

Callahan, S. *Dondi Turns 22*, N.D. TEX. BLOG, Sept. 17, 2010 ........ 14

Young submits this Response to the Court's Order to Show Cause (ECF No. 191) in advance of the noticed hearing. For all of the reasons elevated herein, issuing sanctions against Young personally as counsel for docketing Butler's Rule 56(d) motion is improper and otherwise in no way aids this Court is reaching the merits.

## INTRODUCTION

Professor Butler brought this civil rights case to grieve discriminatory tenure denial and other grievous violations of federal and state law committed by SMU Law and the named defendants.

Butler's case has merit as evidenced by the lion's share of her claims surviving motion to dismiss (ECF No. 47). Unfortunately for Butler and this Court, Defendants' scorched earth litigation tactics have thus far distracted the Court from carefully considering this case on the merits.

Pertinent to this Response is Defendants repeated refusal to agree to scheduling accommodations so that Butler could docket her opposition to summary judgment which she ultimately docketed in February 2022 but which, at Defendants urging, this Court struck from the docket in March 2022 leaving that critical dispositive motion unopposed. Simultaneously, Defendants refused basic discovery cooperation after Young discovered that Defendants failed to produce Butler's tenure box, critical evidence that if

intentionally withheld or spoliated triggers a negative inference against Defendants at the merits stage.

More troubling still, when Young sought Defendants' cooperation to produce the tenure box out of time it was reflexively opposed. Thereafter, when Young sought Rule 56(d) relief to cure this discovery problem, Defendants opposed that request at conferral but declined to docket opposition. Consequently, at Defendants' insistence, this Court was improperly nudged to concoct from whole cloth arguments, identify authorities in support of Defendants' position, and went on to attempt to identify support in the record that could support Defendants' position.

The undersigned deeply respects this Court's busy docket and has made considerable efforts conserve both attorney and judicial resources in this litigation. Unfortunately, Defendants refusal to cooperate on basic scheduling relief and discovery matters triggered multiple filings by Young, which this Court attempted to respond despite Defendants' failure to docket proper opposition filings. In the mix, this Court was distracted from it's obligation to decide this case on the merits.

This Response proceeds in three parts. First, it supplies necessary background. Second, it uplifts authorities on courts' power to sanction. Third, it argues that sanctions are unwarranted under Rule 11, this Court's inherent powers, as well as under *Dondi*.

## BACKGROUND

Missing Tenure Box

Professor Butler painstakingly assembling her tenure box and submitted it to SMU Law in advance of her bid for tenure. After Butler handed over her tenure box—which contained hundreds of pages of evidence of her qualifications for tenure—it disappeared. Defendants refused to return the tenure box in 2016.

As explained in Butler's 56(d) motion and other pre-trial filings, her tenure box is an indispensable piece of evidence in this tenure denial case. To date, Defendants have failed to explain what happened to the tenure box. In 2019, Defendants' counsel asserted at an in person hearing they had no knowledge of what a tenure box is let alone its whereabouts. Three years later, in response to Young's inquiry, Defendants' claimed the tenure box had been produced prior to that hearing. To date, Defendants have steadfastly declined to identify their supposed production of the tenure box by bates number.

Events Leading up to Rule 56(d) Motion

Attorney Young is a law professor with experience litigating tenure denial cases. He was retained by Professor Butler on January 6, 2022. Prior to filing this Response, Young's last filing on this Court's docket was the Rule 56(d) motion, docketed on March 25, 2022.

Insofar as this Court is entertaining sanctions against Young for his filings in this case, the bulk of his filings during that seventy-eight day period pertained to:

- Seeking reconsideration of the Court's denials of extensions of time to docket filings opposing summary judgment. *See* ECF Nos. 135 (Rule 6(b)(1)(A) relief), summarily denied by 141; ECF Nos. 152 (Rule 6(b)(1)(B) relief), denied by 166, reconsideration sought by 171, denied by 181, reconsideration then sought by 183, denied by 187);

- Preparing and ultimately docketing Butler's summary judgment opposition on February 19, 2022 (ECF Nos. 159, 160, 161);

- Assisting Professor Butler's termination of Attorney Dunlap and seeking his removal from this case. ECF Nos. 140, 147;

- Elevating concerning conduct by Mr. Dunlap to this Court. *See* ECF Nos. 133-1, 135 (explaining problems with Dunlap). *See also* ECF Nos. 148, 148-1, 148-2 (declarations filed ex parte, under seal with dozens of supporting exhibits);

- Moving to strike filings made by Dunlap without Butler's authorization both before (ECF No. 135) and after (ECF No. 151) he was terminated;

- Representing Butler at a "status conference" requested by Defendants[1] and held by this Court on March 8, 2022 (ECF No. 174) and docketing a notice with legal authorities speaking to errors of law at that proceeding (ECF No. 179); and

---

[1] The Court's docket identifies Defendants' request for status conference (ECF No. 164) as being "agreed" (ECF No. 165). That is incorrect. Young agreed to be available for a conference on the condition that Defendants and/or this Court advise in advance as to the subject matter. This was pointed out by Young during the status conference (ECF No. 174). Even after advising the Court of that fact, the Court converted the status conference into oral arguments on some of the several motions then pending before the Court—some of which had not yet been fully briefed—and rendered opinions on those motions at the status conference.

- Timely docketing pre-trial filings as due on March 8, 2022 (ECF Nos. 177, 178).

Rule 56(d) Motion

Approximately one month into Young's work on this case, he uncovered evidence that Defendants had never produced Professor Butler's tenure box in this civil rights case grieving tenure denial despite it last being in their possession.[2] (Butler's tenure box is a necessary piece of evidence in this case, as explained in her Rule 56(d) motion (ECF No. 169).

To avoid unnecessary motion practice, Young directly contacted counsel for Defendants and requested that they identify the "tenure box" by bates number or otherwise agree to produce the "tenure box" in these proceedings. Despite Defendants' counsel previously advising this Court that they disclaimed knowledge of what a "tenure box" is (evidencing they had not produced it), they claimed for the first time via email that they had in fact produced it, but declined to identify any of its contents by bates number.

On March 25, 2022, Young authored and docketed a Rule 56(d) motion narrowly seeking production of Butler's tenure box and one interrogatory asking that it be identified by bates number. The motion was timely filed

[2] This was determined after Young had thoroughly reviewed Defendants' production in total, corresponded with Butler's three sets of previous counsel, and discovered admissions in hearing transcripts in which Defendants' counsel disclaimed knowledge of what a "tenure box" is and otherwise disclaimed having produced it in this case.

because it was docketed *before* summary judgment had been decided by this Court.

In support of the Rule 56(d) motion, Young docketed fourteen exhibits including: hearing and deposition excerpts (ECF No. 188-1), declarations made by named Defendants in opposition to summary judgment (ECF Nos. 188-8, 188-11), an email establishing Defendants' apprehension of lawsuit (ECF No. 188-13) a year before Butler requested return of her tenure box from Defendants (ECF No. 188-6); email correspondence between counsel requesting the tenure box (ECF Nos. 188-4, 188-7); and Butler's required declaration in support of her Rule 56(d) motion (ECF No. 188-4). Young signed that motion.

Order to Show Cause

On April 11, 2022, the Court summarily denied Butler's Rule 56(d) motion advising a merits opinion was forthcoming (ECF No. 189). (The motion was denied only seventeen days after it was docketed, and before Defendants filed any merits response in opposition.) That same day, the Court summarily granted Defendants' summary judgment motion and advised a merits opinion was forthcoming (ECF No. 190). (As of this filing, the parties have been waiting for a merits opinion on summary judgment for more than two-hundred and eighty-two days.)

On December 2, 2022, the Court issued its belated merits opinion denying Butler's Rule 56(d) motion which it combined with an order to show cause threatening to sanction Attorney Young for its filing. (This decision was issued more than two-hundred and fifty days after the motion was docketed, and more than two-hundred and thirty days after it had been summarily denied.)

The Court's Order (ECF No. 191) on the Rule 56(d) denies relief for the following reasons:

- Butler failed to diligently pursue discovery of the "tenure box."
- Impossibility of the Court considering the "tenure box" if produced because the Court (preemptively) would refuse to grant Butler scheduling relief under Rule 6 to docket any merits opposition filing and would not otherwise consider new evidence produced.

Undergirding those holdings were findings of fact that the Court assumed are (but which are not) supported by this record:

- Butler and/or Young failed to review all the discovery in this case to determine the tenure box had not been produced.

- Butler had not directed past counsel to seek production of the tenure box in this litigation.

- That Butler was in possession of the tenure box during this litigation and declined to produce it to Defendants.

Because the Court's OSC is appended to its merits opinion explaining denial of the Rule 56(d) motion, it is difficult to distinguish between the merits

denial and the rationales purportedly supporting sanctions against Young. To the undersigned's understanding, the Court appears to premise sanctions on the following points:

1. The Rule 56(d) motion—seeking production and identification of the tenure box by bates number—sought relief "similar" to previously denied motions for scheduling relief to docket opposition to summary judgment;

2. The Rule 56(d) motion was docketed days after the Court *sua sponte* stayed proceedings pending resolution of Defendants' summary judgment motion[3];

3. That Young's email request to Defendants to produce or otherwise identify the contents of Butler's tenure box violates *Dondi* (ECF No. 191 at ___);

4. That the aforementioned conduct evidences Young's "lack of regard for this Court's ability to effectively manage its own docket" (ECF No. 191 at 16).

5. That sanctioning Young is necessary to "find resolution in this case" (*id.* at 18).

[3] The Order issuing the stay *sua sponte* stated summarily that the stay was issued "pending the Court's ruling on Defendant's motion for summary judgment." ECF No. 187 at 20. The immediate consequence of the stay cancelled pretrial mediation, pretrial settlement conference, pretrial conference, and merits trial set by the Court's scheduling and other orders ECF Nos. 113, 117, 124).

## LEGAL AUTHORITIES

Timing of Rule 56(d) Motion

Rule 56(d)'s text requires that such motion be filed between the close of discovery and before a district court issues a merits opinion on summary judgment.

Limits on Power to Stay

"District court[s] have broad discretion to stay proceedings as an incident to [their] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997). However, that power is not unbounded. *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). A court must weigh the competing interests of the parties and the Court when exercising its discretion to issue a stay. *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936).

A discretionary stay order will be reversed if it is found to be immoderate. *McNight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). In the context of civil rights cases, "[s]tays often can be employed in a reasonable manner to achieve salutary results. [However,] if plaintiffs were not to be permitted forthwith to tell their story to the court, the tale might be stale indeed by the time it reached judicial ears." *Hines v.* D'Artois, 531 F.2d 726, 737 (5th Cir. 1976).

Limits on Rule 11 Sanction Power

Mere disagreement as to facts or law between the Court and counsel is not sanctionable. "[A] district court's disagreement with the merits of a position

. . . cannot serve as the basis for sanctions." *Dawson v. United States*, 63 F.3d 886, 896–97 (5th Cir. 1995). Indeed, it is an abuse of discretion for a district court to impose sanctions for a filing where the argument was not "implausible, unreasonable, or otherwise frivolous." *FDIC v. Calhoun*, 34 F.3d 1291, 1298–99 (5th Cir. 1994). Similarly, "[a] trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where . . . the law is arguably unclear." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993).

The reasonableness of the attorneys' filing must be assessed objectively. [T]he inquiry into whether an improper purpose or unusual circumstances existed should be based on the objective reasonableness of the filing, not subjective suspicion." *Tejero v. Protfolio Recovery Associates, LLC*, 955 F.3d 453, 460 (5th Cir. 2020) (citing *Nat'l Ass'n of Gov't Emps. v. Nat'l Fed. of Gov't Empls*, 844 F.2d 216, 224 (5th Cir. 1988)).

Additionally, the reasonableness of the attorneys' conduct must be assessed according to the "snapshot" rule. As explained by the Fifth Circuit, this requires narrow focus on the reasonableness of the conduct "focusing upon the instant the attorney fixes his signature to the document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

Reasonableness (not bad faith) of counsel or parties is the standard for sanctionability under Rule 11. *Bus. Guides v. Chromatic Comms. Ent.*, 498

U.S. 533, 548–49 (1991) (rejecting invitation to apply "bad faith" rather than objective reasonableness standard to Rule 11 sanctions).

The reasonableness of a filing is met where counsel certifies he has conducted reasonable inquiry in advance of the papers he files. *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). An attorney's Rule 11 duties are satisfied where he certifies that he has conducted reasonable inquiry prior to filing. *Id.* Counsel "need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper he files." *Id.* (citing *City of El Paso v. City of Socorro*, 917 F.2d 7, 8 (5th Cir. 1990).

The Fifth Circuit has warned that misapplication of Rule 11 dangerously imperils the integrity of the proceedings and the purposes of litigation sanctions. *See, e.g.*, *Thomas v. Capital Sec. Serv.*, 836 F.2d 866, 885 (5th Cir. 1988) ("[M]isapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories, contrary to the intent of its framers.").

Rule 11 sanctions cannot be issued if based on a ruling turning on errors of law or fact. *Cooter & Gell* 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or a clearly erroneous assessment of evidence.").

Courts should be cognizant that Rule 11 sanctions not be imposed in a way that deters appeals of district court orders. *Cooter & Gell*, 496 U.S. at 408

(quoting with approval *Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988) ("Appeals of district court orders should not be deterred by threats [of Rule 11 sanctions] from district judges.")).

Limits On Inherent Power to Sanction

District courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). This includes "the power to levy sanctions in response to abusive litigation practices." *Id.* "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. Jacques Admiralty Law Firm*, 110 F.3d 290, 292–93 (5th Cir. 1997) (cleaned up).

The standard for inherent powers sanctions is different than that for Rule 11 sanctions. Inherent power sanctions must be premised on a specific finding that one acted in "bad faith." *In re Moore*, 739 F.3d 747, 729–30 (5th Cir. 2014). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of his honest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will." *Bucklew v. St. Clair*, 2019 WL 2724067, at *4 (N.D. Tex. 2019). Where sanctions are threatened against counsel, "a specific finding as

to whether counsel's onduct constitute or was tantamount to bad faith would have to precede any sanction under the court's inherent powers." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).

The Court's finding of bad faith "must be supported by clear and convincing proof," which is a "high standard" that requires "more than a preponderance of the evidence." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). Evidence supporting bad faith "must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case." *Id.* "There must be a finding of bad faith; the Court's mere displeasure is not enough." *Berquest v. FyBX Corp.*, 2003 WL 22384934 at *2–*3 (ED La. 2003) (citing *Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO,* 501 U.S. 32, 50 (1991). "[T]he threshold for the use of inherent power sanctions is high." *Chaves v. Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). "A court's inherent power is not a broad reservoir of power, ready at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Bucklew* at *4 (quoting *NASCO v. Calcasieu Television & Radio*, 894 F.2d 696, 502 (5th Cir. 1990, *aff'd sub nom. Chambers v. NASCO,* 501 U.S. 32 (1991)).

***Dondi***

*Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 FRD 283 (N.D. Tex. 1988) (en banc) is an en banc opinion of the Northern District that sets a benchmark for attorney conduct in the midst of civil litigation. The intent behind those standards is to "preserve both judicial and attorney time" with an eye toward "resolving unnecessary contention and sharp practices between lawyers." *Dondi*, at 286.

As understood by the Northern District Bar, *Dondi* articulates basic parameters for conduct that if violated would merit sanctions under Rule 11. *See, e.g.*, Steven Callahan, *Dondi Turns 22*, N.D. TEX. BLOG, Sept. 17, 2010, https://www.ndtexblog.com/2010/09/17/dondi-turns-22/.

The basic standards articulated in *Dondi* are as follows:

> (A) In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.
>
> (B) A lawyer owes, to the judiciary, candor, diligence and utmost respect.
>
> (C) A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.
>
> (D) A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.
>
> (E) Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times.

> (F) A client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct. A lawyer shall always treat adverse witnesses and suitors with fairness and due consideration.
>
> (G) In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, or demeanor towards opposing lawyers.
>
> (H) A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client.
>
> (I) Lawyers will be punctual in communications with others and in honoring scheduled appearances, and will recognize that neglect and tardiness are demeaning to the lawyer and to the judicial system.
>
> (J) If a fellow member of the Bar makes a just request for cooperation, or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonably withhold consent.
>
> (K) Effective advocacy does not require antagonistic or obnoxious behavior and members of the Bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

*Id.* at 287–88.

## ARGUMENT

### I. THE STAY DOES NOT MAKE A RULE 56(D) MOTION SANCTIONABLE

This Court most certainly is empowered to manage its own docket. However, it is error to construe a *sua sponte* stay of these proceedings until the Court issues a decision on summary judgment as foreclosing the filing of a Rule 56(d) motion for at least three reasons.

First, the Court's single sentence *sua sponte* stay of these proceedings does not expressly prohibit any filings let alone Rule 56(d) filings. The stay in

its entirety reads: "The Court ORDERS this case STAYED pending ruling on Defendants' motion for summary judgment" (ECF No. 187 at 20). Beyond that instruction, the Court provided no guidance to the parties as to the limits of the stay let alone clarify that time-sensitive filings that *must* be docketed before summary judgment was decided were prohibited.

Second, construing the Court's stay as impliedly prohibiting Rule 56(d) motions is improper because that would mean the Court's one-sentence *sua sponte* stay substantively altered Butler's procedural rights to her detriment without warrant. Like every other civil litigant, Butler is entitled to use the Federal Rules and Local Rules to prosecute her case. Among other things, Rule 56(d) is an important procedural safeguard that ensures missing but necessary discovery can be made between the close of discovery and issuance of summary judgment. On this record, there is no legitimate reason, and the OSC cites no authority establishing otherwise, that the Court is empowered to bar Butler from availing herself of Rule 56(d) through issuance of a *sua sponte* stay.

Third, even if the Court's stay had expressly foreclosed filing of Rule 56(d) motions, that would be an abuse of discretion. It's true that the Court has inherent authority to manage its own docket including the power to issue stays. *Clinton v. Jones*, 520 U.S. at 706–07. However, it is improper to impose a stay that deprives a plaintiff in a civil rights case from "tell[ing] their story to the court" where, as here, the stay would render plaintiff's request "stale . . . by the

time it reached judicial ears." *Hines v. D'Artois*, 531 F.2d at 737. Indeed, a key reason why Young docketed the Rule 56(d) motion despite the Court's stay is that the motion *must* be filed before a decision on summary judgment is issued. FRCP Rule 56(d) (establishing timing requirement).

## II. YOUNG DID NOT VIOLATE RULE 11

The Court's denial of Professor Butler's Rule 56(d) motion does not warrant *sua sponte* Rule 11 sanctions against Young as counsel.

Assuming for the sake of argument that the Court's decision to deny the Rule 56(d) motion is not erroneous, that alone does not convert filing of an unsuccessful motion into a sanctionable event.

To sanction Young under Rule 11, the Court must make specific findings that evidence it was objectively unreasonable to file it as of March 25, 2022. And yet, the Court's OSC does not make any such finding let alone concretely point to evidence in the record supporting such a finding. To the extent the OSC premises sanctions on the Court's mere suspicion that the Rule 56(d) motion was filed for improper purposes, that is improper. TConduct that the Court merely subjectively suspects is untoward cannot sustain sanctions. Instead, the Court must assess counsel's conduct by "objective reasonable" at the time a motion is was filed. *Tejero*, 955 F.3d at 460.

To the extent the Court intends to sanction Young because he sought scheduling relief and reconsideration of the same denied requests prior to filing

the Rule 56(d) motion that too does not sustain Rule 11 sanctions. Under Rule 11, the standard for sanctionability is not that a motion was denied, but rather than it was filed for an improper purpose such as a filing that contains implausible, unreasonable, or otherwise frivolous legal arguments. *Calhoun*, 34 F.3d at 1298. At most, the Court's merits ruling of the Rule 56(d) motion reflects it disagrees with issues of law and fact elevated in the motion. That disagreement is not sanctionable. *Dawson*, 63 F.3d at 896–97.

There is nothing in the record supporting the notion that the Rule 56(d) motion was filed for an improper purpose. The Court did not assert, and this record otherwise does not support, a finding that the Rule 56(d) motion was filed for an improper purpose. *Tejero*, 955 F.3d at 460.

The motion was timely filed before this Court issued its decision summarily granting Defendants' summary judgment on all claims. It elevated a legitimate purpose—that Butler's tenure box, which contains all the "evidence" of her qualifications for tenure, was not produced in discovery despite it last being in Defendants' possession and that consideration of Butler's true qualifications was necessary at summary judgment. *See* ECF No. 188 (explaining necessity).

Butler's Rule 56(d) motion is also, on its face, in compliance with the relief it sought. It had both a declaration from the moving party speaking to the reasons for relief sought as well as thirteen additional exhibits in support.

The motion also pointed to evidence that Butler had sought the tenure box before this litigation was initiated as well as other efforts to obtain it during these proceedings. Lastly, the motion pointed out that efforts had been made to obtain the "tenure box" prior to the motion's filing, a clear effort to conserve judicial resources.

To the extent the OSC seeks to sanction Young on the pretense that if Rule 56(d) relief were granted, Butler would necessarily have to seek scheduling relief from this Court to docket the tenure box, that too fails to meet the mark for Rule 11 sanctions. By its text, Rule 11 sanctions parties for past, not future conduct. FRCP Rule 11(c)(3) (describing requirement that *sua sponte* Rule 11 sanctions are directed at past conduct "specifically described" in the OSC to have violated Rule 11(b)).

## III. INHERENT POWER SANCTIONS ARE INAPPROPRIATE

It is also inappropriate for this Court to sanction Young pursuant to its inherent authority.

Young agrees that federal trial courts possess inherent powers to manage their dockets. *In re Stone*, 986 at 902. He also agrees that this Court has inherent powers to sanction "abusive litigation practices." *Id.* He further recognizes that in the Fifth Circuit, district court's inherent power to sanction is narrowly available where "a party's deplorable conduct is no5 effectively sanctionable pursuant to an existing rule or statute." *Carroll*, 110 F.3d at 292–

93 (cleaned up). Nonetheless, Young respectfully disagrees that his efforts to seek scheduling relief for Butler in this case are sanctionable pursuant to the Court's inherent powers.

The OSC appears to provide one reason why sanctions are warranted under this Court's inherent powers—that Young's filings seeking scheduling relief and reconsideration of the same interfered with the Court's management of its docket or otherwise evidence disrespect for the Court's busy docket. Young does not question that the Northern District is busy. However, that weighty burden combined with Young's requests for scheduling relief which this Court denied previously does not merit imposition of sanctions pursuant to this Court's inherent powers for at least six reasons.

First, the OSC fails to establish that Young acted in bad faith, which is required to impose sanctions pursuant to its inherent powers. *In re Moore*, 739 F.3d at 729–30. In passing the OSC asserts that Young's client engaged in bad faith litigation tactics in this case (without reference to evidence supporting that finding) and goes on to insist that Butler's conduct even before Young was retained on this case (also without reference) transforms Young's requests for scheduling relief into bad faith filings. Setting aside that Young steadfastly denies that Butler engaged in bad faith litigation tactics before his tenure, even if she had that conduct is not attributable to Young and thus insufficient to support findings of bad faith against him personally.

To the extent this Court relies on the contention that Butler's first two requests for scheduling relief were brought in bad faith, that too misses the mark. Those requests were filed by Mr. Dunlap, not Young. And evidence on this docket reflects that Dunlap made the second request for extension without consulting let alone getting Butler's approval and it was demanded for reasons that were known to Dunlap at the time to be untrue. Relatedly, while the Court retroactively deemed Butler's second request to be sought in "bad faith" that finding is infirm in light of the fact that the Court granted it summarily and, inexplicably, later insisted it was filed in bad faith.

Second, the OSC fails to establish that the Court made a bad faith finding as to Young's conduct in this case which was supported by "clear and convincing evidence" that is "more than a preponderance of the evidence." *Crowe*, 261 F.3d at 563.

It is concerning is that the OSC fails to point to a body of evidence establishing clear and convincing proof of bad faith attributable to Young in connection with his filings in this case. Inherent sanction powers "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 32. One such limit is the requirement that the court must sustain its bad faith findings by reference to "clear and convincing proof," a standard that is higher than "preponderance of the evidence." *Crowe*, 261 F.3d at 563. By way of explanation, such evidence "must be so direct and weighty as to leave the

factfinder with a firm belief in the truth of the facts of the case." *Id.* That was not established here. Indeed, integral portions of the merits denial of the Rule 56(d) motion and the OSC turn on factual assertions unsupported by reference to evidence. Other portions turn on findings concerning Young and Butler's diligence in seeking discovery that are contradicted by the record.

Third, the Court fails to point to any authorities which impose sanctions in similar circumstances. While not in and of itself fatal, the total absence of authorities in support casts doubt as to whether Young's conduct is objectively sanctionable.

Young agrees that district courts may turn to their inherent powers to sanction abusive litigation conduct that is not otherwise prohibited by rule or law. *Caroll*, 110 F.3d at 292–93. However, that inherent power is limited. As the Northern District has quite recently explained, "[a] court's inherent power is not a broad reservoir of power, read at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Bucklew*, at *4.

Fourth, the Court's annoyance with Young's filings appear to evidence the Court's displeasure with having to make merits decisions on those motions. But the Court's displeasure alone is not enough to establish bad faith. *Berquest*, at *2–*3 (citing *Elliot*, 64 F.3d at 217).

Fifth, to the extent the Court deems opposed requests for scheduling relief ultimately denied to evidence Young's bad faith, that is nonsensical. As established in *Dondi*, requests for scheduling accommodations are normal in civil litigation. To wit, opposing counsel may not categorically refuse requests for accommodations. Defendants' scorched earth position on scheduling relief—even relief this Court ultimately granted—is what forced opposed motion practice, not Butler's need for relief per se. If Defendants had simply abided by *Dondi*'s directives, the parties could have both consented to scheduling relief obviating the need for motion practice. The fact that Defendants repeatedly insisted on opposing scheduling relief during conferral, but in multiple instances declined to docket any response in support of their opposition, further casts doubt as to the propriety of their opposition.

Sixth, Young's email request to Defendants requesting they identify the tenure box by bates number (if they had in fact produced it) does not violate *Dondi*. *Dondi* obliges counsel in the Northern District to to reasonably cooperate with discovery requests. To date, Defendants have provided no explanation as to why if they in fact had produced Butler's tenure box, they repeatedly refused to identify it by bates number upon request.

## IV. SANCTIONS ARE NOT MERITED UNDER *DONDI*

Young's conduct during this litigation, including his filing of the Rule 56(d) motion, does not run afoul of the standards articulated in *Dondi*.

Young agrees that as a condition of his *pro hac vice* admission he committed to reading and abiding by the standards for attorney conduct articulated in *Dondi*. The undersigned affirms that he in fact re-read *Dondi* before he docketed his application for *pro hac vice.* He further affirms that he reviewed *Dondi* on a few separate occasions between January 6 and March 25, 2022.[4]

To the extent that the Court seeks to punish Young for his failure to docket Butler's summary judgment filing on January 7, 2022, that is improper under *Dondi*. Young was retained on January 6 and docketed both his *pro hac vice* application and a request for scheduling relief. Both Young's application and the request for extension uplifted genuine and legitimate reasons why scheduling relief was sought at the time Young was retained. To wit, Mr. Dunlap had failed to prepare filings opposing summary judgment, as confirmed by Young that same day. Under these circumstances, it can hardly be said that Young failed to honor this Court's schedule given the obvious fact that it is impossible for any lawyer new to a case to draft and docket complete and competent summary judgment opposition in 32 hours' time.

[4] Young has been admitted *pro hac vice* to the Northern District in prior cases, and thus had familiarity with *Dondi*'s standards before he applied for admission in this case.

Additionally, Young's filings seeking scheduling relief do not violate *Dondi*. Insofar as scheduling relief is concerned, *Dondi* directs counsel to grant "reasonable extensions of time . . . where such an extension will not have a material, adverse effect on the rights of the client." *Id.* at 294. Moreover, *Dondi* expressly states that the need for extensions of time is not atypical in civil litigation. *Id.* ("Because we all live in a world of deadlines, additional time is often required to complete a given task."). *Dondi* makes plain that it has long been the expectation in the Northern District that opposing counsel agree to "any reasonable request for an extension of time as an accommodation." *Id.* *Dondi*'s concrete limit on the presumption of agreement to reasonable scheduling accommodations is narrow—"that no lawyer should request an extension of time solely for the purpose of delay or to obtain any unfair advantage." *Id.* But there is no evidence here (and the OSC points to none) that establishes Young sought scheduling relief for improper purposes.

There is no evidence on this record that scheduling relief was sought for an improper purpose or to obtain any unfair advantage. Moreover, it is uncontested that Butler had a legitimate need to docket her opposition to summary judgment, a dispositive motion that when this Court reviewed it unopposed resulted in the termination of more than two dozen merits claims that had previously survived motion to dismiss.

Consequently, Young's filing of the Rule 56(d) motion is also not sanctionable under *Dondi*. Similar to other motions, there is no evidence that the Rule 56(d) motion was filed in bad faith or otherwise sought to secure an unfair litigation advantage.

## V. IF IMPOSED, SANCTIONS WOULD CHILL BUTLER'S APPEAL RIGHTS

Young respectfully asks that the Court consider the overarching context in which it is considering sanctions. He also humbly suggests that imposing sanctions would have the effect of chilling Professor Butler's right to preserve error and appeal this Court's orders.

At the threshold, it is impermissible for district courts to use their power to sanction to deter merits review of their orders. *Cooter & Gell*, 405 U.S. at 405 (quoting *Webster v. Sowders*, 846 F.2d at 1040) ("Appeals of district court orders should not be deterred by threats [of Rule 11 sanctions] from district judges.")).

Thids docket evidences that Young has made considerable efforts to preserve error as is required to ensure that Professor Butler has the opportunity to appeal orders that she believes are erroneous as a matter of law and/or fact. Indeed, this Court has previously (an repeatedly) challenged Young to "appeal" when he raised concerns that this Court had committed legal and factual errors at a status conference that was turned into an impromptu

demand for oral argument on a subset of pending motions. *See generally* ECF No. 186.

The status of this case also cuts against imposing sanctions on Young. Once this Court issues its merits opinion on summary judgment and enters final judgment, this case is ripe for appeal to the Fifth Circuit. To the extent this Court worries that Young will file a motion seeking reconsideration of its yet to be issued merits opinion, that would not in and of itself be sanctionable. It would otherwise raise serious due process problems to preemptively sanction Young with an eye towards discouraging filing of motions permitted by the FRCP. *Cf. United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort'. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

## CONCLUSION

For the reasons explained in this Response, this Court should not sanction Young. With the upmost respect for this Court, in the event that the Court concludes sanctions are warranted, Young reserves the right to be apprised of the nature of those sanctions and to respond directly as to the propriety of those sanctions specifically.

Dated: January 18, 2023

Respectfully submitted,

/s/ Ezra Young
Ezra Young (NY Bar No. 5283114)
LAW OFFICE OF EZRA YOUNG
210 North Sunset Drive
Ithaca, NY 14850
P: (949) 291-3185
ezra@ezrayoung.com
ATTORNEY FOR PLAINTIFF
PROFESSOR CHERYL BUTLER

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2023, I electronically filed a copy of the foregoing with the Clerk of Court by using the CM/ECF system, which will automatically serve all counsel of record.

/s/ Ezra Young
Ezra Young (NY Bar No. 5283114)