IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHERYL BUTLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-00037-E |
| | § | |
| JENNIFER M. COLLINS, | § | |
| STEVEN C. CURRALL, | § | |
| JULIE FORRESTER ROGERS, | § | |
| HAROLD STANLEY, AND | § | |
| SOUTHERN METHODIST UNIVERSITY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Cheryl Bulter, filed suit in the 193rd Judicial District Court of Dallas County, Texas against Defendants. Defendants removed this case to federal court in January of 2018, at which time this case was before Judge Lindsay. As amended, Plaintiff asserted thirty counts against Defendants based on (i) defamation; (ii) fraud; (iii) negligence; (iv) breach of contract; and (v) several allegations of unlawful employment practices.

The Court previously dismissed with prejudice eight of Plaintiff's claims. (Doc. 47). On November 29, 2021, Defendants filed their motion for summary judgment, which sought dismissal of all of Plaintiff's remaining claims ("**Defendants' Motion**"). (Doc. 126). Despite requesting and receiving two extensions to file her response, Plaintiff failed to timely file a response to Defendant's Motion. On April 11, 2022, the Court issued an Order which granted Defendants' Motion. (Doc. 190). In the Order, the Court stated "[a]n opinion containing the grounds for the Court's decision is forthcoming." (Doc. 189). Hereunder, the Court explains its reasoning for granting Defendant's Motion, thereby dismissing all of Plaintiff's remaining counts:

## I.   BACKGROUND

### A.  Plaintiff's Negative Tenure Recommendation

Defendant Southern Methodist University ("**SMU**") previously employed Plaintiff. This dispute arises from a 2016 decision to deny Plaintiff tenure as a law professor. In 2011, SMU hired Plaintiff to work as an assistant law professor. Plaintiff's appointment letter informed that (i) her appointment was from August 2011 to May 2014 and (ii) "[i]f your contract is renewed you would normally be considered for a tenured appointment during the 2015-2016 academic term." Plaintiff's appointment letter further attached the law school's bylaws ("**Bylaws**") and tenure procedures and standards. Plaintiff taught at SMU from August 2011 to May 2014. In March 2014, SMU renewed Plaintiff's employment; however, the committee that evaluated Plaintiff's renewal concluded in its contract renewal report that "Professor Butler's teaching has room for improvement."

In fall of 2015, SMU began the process for determining tenure for Plaintiff. The Bylaws include the guidelines used to determine tenure ("**Guidelines**"). The Bylaws' criteria for tenure state, *inter alia*:

> A professor has two preeminent responsibilities: teaching and contributing to the growth and understanding of the law. These two responsibilities shall be given equal weight in the determination whether to award tenure or promotion to a member of the Faculty.
> . . . .
> Promotion to the rank of full professor will only be awarded to candidates who demonstrate both sustained high quality teaching and substantial and continuing contributions to the growth and understanding of the law.

(Doc. 128 at 138).

SMU empaneled a "First Tenure Committee," who raised concerns that Plaintiff's teaching was not meeting the "high quality" standard for tenure. When Plaintiff learned of the First Tenure Committee's concerns about her teaching, Plaintiff accused the First Tenure Committee of

violating her civil rights. Thereafter, the First Tenure Committee resigned, and the dean of the law school, Defendant Jennifer Collins, appointed a "Second Tenure Committee."

As part of the tenure decision, SMU required Plaintiff to provide several documents— including a personal statement, syllabi, resume of qualifications, teaching evaluations, and other materials—by November 16, 2015 ("**Tenure Box**"). Plaintiff sought an extension of her tenure decision to the following academic year (the 2016-2017 school year), which SMU Provost Harold Stanley denied. Plaintiff failed to timely submit her Tenure Box. Two other professors who were submitting to the tenure process for the law school timely submitted their respective tenure boxes.

In January 2016, the Second Tenure Committee issued its tenure report for Plaintiff ("**Tenure Report**"). Regarding Plaintiff's teaching, the Tenure Report stated:

> This committee is in unanimous agreement that Cheryl's student teaching evaluations are, on the whole, problematic and a cause for concern. As noted at the beginning of this report, we do not feel comfortable making a collective recommendation of tenure and promotion for Cheryl based on her teaching. We are in agreement that no colleague should be granted tenure and promotion under our standards unless her teaching is at least of "high quality."
> . . . .
> [W]e believe that the problems with Cheryl's teaching were perhaps understated in the [contract renewal] report.
> . . . .
> Since the renewal committee report Cheryl has taught Torts I twice (fall, 2014 & 15) and Torts II once (spring, 2015). These more recent evaluations . . . [reflect] no progress for Cheryl as a teacher. More objectively, they demonstrate a marked worsening in the quality of Cheryl's teaching and course management.
> . . . .
> [S]tudents in [Plaintiff's fall 2014 Torts I class] questioned her understanding of the material and her preparation for class. Several also complained that she repeatedly cancelled classes or terminated them early, a continuing refrain in most of Cheryl's torts evaluations[.] . . . Cheryl's evaluations for Torts II (spring, 2015) and Torts I (fall, 2015) were, on the whole, awful.
> . . . .
> [Students'] comments . . . opined that she was often unprepared for class and lacked knowledge of the subject matter.
> . . . .
> The following lengthy [student] comment . . . encapsulates the overwhelming majority of the evaluations:

> I have never had a professor more distracted and unclear. Assignments change constantly, classes are cancelled with minimal notice and rescheduled with no concern for student's other obligations. I have had to email for clarifications on assignments at least four times; I will receive one answer, then the whole class will be emailed with a different answer, and then what is discussed in class will be different than that. There's no way to prepare ahead because assignments will change the MORNING of class. She says she wants us to be fact masters, but SHE DOESN'T KNOW THE FACTS of the cases. Class discussion on cases is an excruciating line-by-line rendition of the case. It's not a creative or enlightening method of learning. Her mood swings are beyond unpredictable. One day she is energetic and wants questions and engagement, some days she's aloof and distracted, some days she wants questions, other days she acts like they should never even be asked. She is condescending; she is flippant. []
>
> . . . .
>
> Most unfortunately, many students accused Cheryl of appearing to be angry with them, of belittling and berating particular students and, generally, of acting unprofessionally toward the class.

(Doc. 128 at 60-65).

The Tenure Report further raised concerns about Plaintiff's interactions with the Second Tenure Committee:

> Cheryl is often untruthful in her dealings with her colleagues and the law school administration. By untruthful, we mean that she says things that she knows or should know are not true. She repeatedly mischaracterizes what colleagues have said, including what members of this committee have told her. She often states facts in contradiction to what she said earlier in the same conversation. . . . . She has made accusations against colleagues, including our Dean and our Provost, that are demonstrably not true.

(Doc. 128 at 74).

The Second Tenure Committee ultimately concluded in its Tenure Report that "[t]he committee agrees that Cheryl's teaching falls short of [tenure] standards. On January 13, 2016, the faculty voted on whether Plaintiff would receive tenure; the Guidelines on voting provide:

> When a Faculty member is to be considered for tenure or promotion, the Dean shall call a special meeting for that purpose.
>
> . . . .
>
> In the case of tenure consideration, only tenured members may vote.

. . . .

A quorum for a meeting on tenure or promotion shall consist of 75% of the group eligible to vote and the candidate shall be recommended for tenure or promotion only on the favorable vote of 60% of those eligible to vote.

. . . .

If promotion or tenure is not approved, the candidate shall be advised of the results of voting.

(Doc. 128 at 137).

After the faculty voted by secret ballot, Plaintiff received a negative tenure recommendation. Collins did not vote on Plaintiff's tenure recommendation. The faculty voted to recommend tenure for the other two professors who were submitting to the tenure process—one of whom is black.

**B. Appeal of Negative Tenure Recommendation and Provost Recommendation**

Thereafter, Butler appealed the negative tenure recommendation to Collins. Collins informed Plaintiff she would consider the appeal on materials previously provided unless Plaintiff provided additional materials by April 25, 2016. Plaintiff provided no additional materials, and Collins denied Plaintiff's negative tenure recommendation appeal on May 4, 2016. Collins presented the negative tenure recommendation to the provost of SMU, Defendant Steven Currall, by letter on May 4, 2016 ("**Collins Letter**"). The Collins Letter stated to Currall the following, *inter alia*:

Unfortunately, I concur in my colleagues' assessment that Professor Butler has not demonstrated high quality in teaching.

. . . .

[T]he problems identified in the student evaluations were confirmed by extensive peer observations and other indicia of unsatisfactory teaching, including problems with syllabi, assignments, exams, and grading. . . . Professor Butler's student evaluations are in a different category than the rest of the faculty.

. . . .

I looked at the reports for all the tenured and tenure track professors. The two first questions go to the core of the teaching role in many ways: question 1 is "Professor demonstrated a command of the material" and question 2 is "Professor was prepared for class." Professor Butler's scores in Torts II were the lowest in the school at a 3.73 for question 1 and 3.48 for question 2; no other professor received a score in the 3's on those two questions.

. . . .

[Question 19] asks students to compare the professors to other professors at the school []. Professor Butler again received the lowest score in the school at 2.98 and was the only professor to receive a score in the 2's on this question.

. . . .

Some pervasive complaints in the student evaluations were a lack of preparation, disorganization, excessive reviews of previously covered material and, most worrisome, a lack of knowledge of tort law that manifested itself in repeated misstatements of law and confusing contradictions in class. These problems manifested themselves in the two classes I observed.

. . . .

[The second-observed] class was absolutely awful, both substantively and pedagogically. Inexplicably, she did not cover any new material, but instead spent the entire class session reviewing material addressed in earlier classes. This review did not involve any effort to synthesize the earlier material or provide students with an overarching conceptual framework, but instead consisted of unnecessarily detailed recitation of the facts of cases previously discussed. She did not give students an opportunity to ask any questions or use any method to assess the students' understanding of the material. She repeatedly referred to the importance courts place on "policy" arguments but without any discussion of what policy she might be talking about[.]

. . . .

Perhaps my biggest regret about Professor Butler is that she is unwilling or unable to accept constructive feedback about her teaching and make positive changes in response. She hears only what she wants to hear.

(Doc. 128 at 162-65).

The Collins Letter further described examples of Plaintiff's unpreparedness, including (i) her failure to begin preparing an exam "until the actual day the exam was to be given"; (ii) multiple choice questions that failed to ask a question or randomly switched the names of the parties; and (iii) failing to provide "written feedback and professorial editing [in her edited writing class] that are at the very heart of the edited writing requirement (a graduation requirements [sic] for our students)."

On May 5, 2016, Currall informed Plaintiff (i) that he could not make a positive recommendation of tenure and (ii) that Plaintiff had three weeks to appeal the negative decision to the SMU President. Plaintiff did not appeal to the SMU president. SMU paid Plaintiff for the spring 2016, fall 2016, and spring 2017 semesters.

### C.  Plaintiff's FMLA Leave

In summer 2015, Plaintiff sought information on Family Medical Leave Act ("**FMLA**") leave from SMU. On June 12, 2015, SMU benefits specialist Rhonda Ice Adams emailed Plaintiff with instructions and "with all forms necessary to seek FMLA leave." (Doc. 128 at 177, 191-92). This email further stated "Please note all documentation relative to FMLA should be sent to me and not provided to the Law School due to HIPPA regulations." (Doc. 128 at 191-92). On November 24, 2015, Adams again provided Plaintiff with the FMLA forms and instructions for submission.

On December 18, 2015, Plaintiff submitted FMLA forms and accompanying documentation to Adams. On December 23, 2015, Adams approved Plaintiff's FMLA leave from November 18, 2015, to December 21, 2015. Adams further approved Plaintiff's FMLA leave from (i) January 6, 2016, to February 17, 2016 and (ii) February 18, 2016, to April 11, 2016. In accordance with SMU policies, no persons outside of Human Resources at SMU ("**HR**") were authorized to make determinations on Plaintiff's FMLA leave. Only Adams made the FMLA determinations that affected Plaintiff. Adams did not share any of Plaintiff's medical information "with any employees beyond those who made FMLA determinations in HR." (Doc. 128 at 176). Adams did not share any of Plaintiff's medical information with Defendants Collins, Currall, and Stanley. Plaintiff received her full entitlement of FMLA leave for 2016.

### D.  Plaintiff's ADA Requests and Reasonable Accommodations

In the November 24, 2015 email to Plaintiff, Adams (i) attached "documentation needed if [Plaintiff sought] an accommodation due to impairment" and (ii) instructed Plaintiff to submit the accommodation documentation to SMU's ADA/504 Coordinator Carolyn Hernandez. SMU maintained its Americans with Disabilities Act ("**ADA**") policy and reasonable request forms ("**ADA Forms**") on its website. Nevertheless, Hernandez further provided the ADA policy and

forms to Plaintiff on December 14, 2015. On April 6, 2016, Plaintiff—for the first time—submitted her ADA reasonable accommodation request. Hernandez approved several ADA reasonable accommodations for Plaintiff including sitting during lectures; using medicines and devices; leave from classroom teaching; and not requiring Plaintiff to teach or be in the classroom during the Spring 2016 semester after exhaustion of FMLA leave. Neither Collins, Currall, Rogers, nor Stanley had any role in handling any ADA reasonable accommodations on behalf of SMU or Plaintiff. Neither Collins, Currall, Rogers, nor Stanley made any ADA determinations on behalf of Plaintiff.

### E.  SMU's Investigations on Plaintiff's Alleged Discrimination and Retaliation

Plaintiff did not file a formal complaint of discrimination related to denial of her tenure. Nevertheless, Plaintiff emailed Hernandez during spring 2016 complaining of discrimination and retaliation in connection with the denial of tenure. Hernandez completed an investigation, which included interviews with Collins, the First Tenure Committee, and the Second Tenure Committee. Hernandez spent months trying to obtain Plaintiff's cooperation in the investigation—including frequent calls, messages, offers to interview by Skype—but Plaintiff refused to participate in the investigation.

Plaintiff raised complaints of discrimination about how Adams handled the FMLA leave requests. SMU's chief human resources officer, Sheri Starkey, conducted a review and investigation related to Plaintiff's FMLA leave. On April 20, 2016, Starkey determined that SMU "appropriately administered [Plaintiff's] FMLA claim and that there is no discrimination." (Doc. 128 at 278). Nevertheless, Plaintiff asserted SMU violated the ADA and FMLA, which Hernandez further investigated.

On December 22, 2016, Hernandez submitted her investigation conclusions to Plaintiff ("**Hernandez Letter**"). The Hernandez Letter states, *inter alia*:

After fully investigating your allegations, [SMU's Office of Institutional Access and Equity] has discovered no evidence of discrimination and retaliation in the tenure decision. Our investigation shows that such comments were never made. Throughout the process, you were apprised of the sole basis for the tenure decision, which was that your teaching did not meet the University's standards for tenure and promotion. You appealed the initial tenure recommendation from the law faculty to Dean Collins who reviewed your appeal and again informed you (on May 4, 2016) of the basis for the denial of the appeal and for her recommendation to the Provost that you not be granted tenure. The basis was your failure to meet the University's teaching standards. Your race was not a factor.
. . . .
Our investigation shows that once you sought leave, SMU granted you FMLA leave in 2015 and the maximum amount of FMLA leave allowable in the 2016 calendar year. When your FMLA leave ran out, SMU granted you reasonable accommodations under the ADA. You were out of the classroom (and did not teach) for the entire spring 2016 semester on leave or as an accommodation. Thus, after fully looking at all the facts available to us, we have concluded that there was no violation of SMU's policies against discrimination and retaliation.

(Doc. 128 at 321-22).

### F.  Procedural History

Since removal to federal court, the case has survived (i) the dismissal of multiple counts and defendants, (ii) a case reassignment to Judge Brown, (iii) Plaintiff's show cause hearing, (iv) Plaintiff's termination of six of her attorneys, and (v) Plaintiff's suggestion of bankruptcy leading to the administrative closure of the case. In early February 2021, Defendants filed an unopposed motion to reopen the case (Doc. 108), which the Court granted on February 23, 2021. (Doc. 110). After an order extending the deadline for dispositive motions (Doc. 117), Defendants timely filed their motion for summary judgment on November 29, 2021, ("**Defendants' Motion**"). (Doc. 126). Defendants' Motion sought dismissal of all of Plaintiff's twenty-two remaining counts, categorized as follows:

1. Title IX Claim (Count 30)
2. Breach of Contract Claim (Count 9)
3. Family Medical Leave Act Claims ["**FMLA**"] (Counts 23-26)
4. Claims Under the Americans with Disabilities Act ["**ADA**"]/Rehabilitation Act ["**RA**"] (Counts 16-22)
5. Claims Under 42 U.S.C. § 1981 (Counts 10-12)

6. Discrimination Claims Under Title VII (Counts 13 and 14) and Texas Commission on Human Rights Act ["**TCHRA**"] (Counts 27 and 29)
7. Retaliation Claims under § 1981 (Count 12), Title VII (Count 15), the ADA (Count 22), and TCHRA (Count 28).

(Docs. 126, 127).

Defendants' Motion asserts Plaintiff has no evidence of an essential element on several of her counts. Furthermore, Defendants submitted summary judgment evidence to support their position that the decision to deny Plaintiff tenure was not unlawful regarding Plaintiff's remaining counts. (*See* Doc. 128, App. in Support of Defendants' Motion for Summary Judgment). Defendants' summary judgment evidence includes (i) deposition excerpts of Roy Anderson (a member of the Second Tenure Committee), Currall, and Samantha Thomas (a former director of SMU's Office of Institutional Access and Equity) and (ii) declarations from Collins, Adams, and Hernandez. Defendants further attached corresponding exhibits to each of these preceding documents in their summary judgment evidence submissions.

Plaintiff failed to timely respond to or otherwise oppose Defendants' Motion.[1] Plaintiff asserts no objections to Defendant's summary judgment evidence. Thus, Plaintiff (i) failed to provide competent summary judgment evidence to support her claims and (ii) failed to preserve any objections to Defendants' summary judgment evidence. As previously noted, the result of Plaintiff's failures is that the Court treats Defendants' facts as undisputed. (Doc. 187, at 4-5); (Doc. 166, at 8).

---

[1] Plaintiff's objections and response to Defendants' Motion were the subject of several motions to extend Plaintiff's deadlines and motions for reconsideration. The Court has adjudicated and addressed those motions. *See* (Docs. 166, 181, 187).

## II.   LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097; *Anderson*, 477 U.S. at 254-55, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) *submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense*, or (2) *arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense*. *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548 (emphasis added). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548.

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at at 324, 106 S.Ct. 2548. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

### B. Effect Of Failing to Respond to Summary Judgment

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57, 106 S. Ct. 2513–14). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. . . . "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458.

Nevertheless, "[t]he failure to submit evidence in response to a summary judgment motion does not permit a court to enter a 'default' summary judgment." *Potasznik v. McGee*, 3:16-CV-155-L, 2019 WL 859579, at *2 (N.D. Tex. Feb. 22, 2019) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)). Indeed,

> [i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of

> the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3). In other words, "[a] court is allowed . . . to accept the movant's facts as undisputed when there is no competent evidence to refute or oppose the summary judgment." *Potasznik*, 2019 WL 859579, at *2 (citing *Eversley*, 843 F.2d at 174). In *Eversley*, the Fifth Circuit affirmed the trial court's grant of summary judgment—explaining:

> [T]he district court accepted as undisputed the facts so listed in support of MBank's motion for summary judgment. In our opinion, the district court acted properly in doing so and, *since Eversley made no opposition to the motion, the court did not err in granting the motion as MBank's submittals made a prima facie showing of its entitlement to judgment*.

*Eversley*, 843 F.2d at 174 (emphasis added).

## III.    ANALYSIS

Defendants' Motion and attached summary judgment evidence demonstrates that Defendants are entitled to summary judgment on all of Plaintiff's remaining claims as Defendants (i) have submitted evidence that negates the existence of an essential element of each of Plaintiff's claims or (ii) have otherwise asserted no evidence supports an essential element of Plaintiff's claims—and the Court has found none. *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548; Fed. R. Civ. P. 56(a). Plaintiff failed to respond to Defendants' Motion or otherwise object to Defendants' summary judgment evidence. Plaintiff failed to offer evidence to refute or oppose Defendants' Motion. *See* Fed. R. Civ. P. 56(e)(2)-(3). Therefore, Plaintiff failed to carry her burden "to establish there is a genuine issue of material fact" as to her claims. *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548. Nevertheless, we next address each remaining claim to determine whether to grant summary judgment—that is, whether Defendant's Motion and supporting materials, including the facts

considered undisputed, show that Defendants are entitled to summary judgment. *Celotex*, 477 U.S.

at 323, 106 S. Ct. 2548.[2]

### A. Breach of Contract Claim (Count 9)

Under Texas law, the elements of a breach of contract claim are:

(1) a valid contract exists;
(2) the plaintiff performed or tendered performance as contractually required;
(3) the defendant breached the contract by failing to perform or tender performance as contractually required; and
(4) the plaintiff sustained damages due to the breach.

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). As

pleaded, Plaintiff asserts her breach of contract claim solely against SMU. Defendants assert

summary judgment is appropriate because there is no evidence of breach. (Doc. 127, at 32).

Despite Plaintiff's failure to respond to Defendants' Motion, Plaintiff's pleadings assert SMU

breached the employment contract by (i) failing to follow its Bylaws regarding academic due

process; (ii) violating its Bylaws by engaging in fraud by denying that the faculty accused Plaintiff

of wrongdoing and used those accusations to deny tenure; (iii) allowing and encouraging law

faculty to violate state bar ethical rules; (iv) failing to follow its procedures with respect to

academic tenure; (v) allowing its dean and supervisor to place medical information in her

employment file and or to use her application for ADA or FMLA leave, and her complaints about

alleged ADA or FMLA discrimination as grounds to deny or in any way consider her application

for tenure and promotion; (vi) applying its tenure standards in a discriminatory manner based on

race; (vii) failing to provide clear, consistent and nondiscriminatory guidelines on how to meet

---

[2] The Court notes that several of Plaintiff's counts are asserted against Collins, Currall, Rogers, or Stanley in their individual capacities. As shown hereunder, Plaintiff has failed to raise a genuine issue of material fact as to any of her remaining claims. Correspondingly, the Court pretermits any adjudication of whether Plaintiff may assert such against Collins, Currall, Rogers, or Stanley individually because such determination is unnecessary.

SMU's tenure standards; (viii) refusing to uphold its own Policy regarding nondiscrimination, affirmative action and equal employment; (ix) failing or refusing to address Plaintiff's reports of discrimination; (x) targeting and "singl[ing] out" Plaintiff "because she spoke up for herself by asserting her civil rights under the University Code"; (xi) failing to provide Plaintiff with a copy of the Tenure Report or other documents in her "tenure dossier"; (xii) "intentional and or reckless disregard for the core values of the AALS"; (xiii) failing to comply with various AALS bylaws, articles, and values; (xiv) violating various AAUP statement on principles, bylaws, and values; and (xv) violating several ABA accreditation standards. (Doc. 12 at 108-11).

After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's alleged breach of contract assertions. To the contrary, the record of Plaintiff's contract with SMU and corresponding Bylaws and Guidelines contain either (i) no such agreement(s) or (ii) terms that rebut Plaintiff's allegations of breach. Furthermore, the remaining record shows Defendants did not breach any agreement with Plaintiff. For example, the record shows the process for Plaintiff's tenure decision comported with Plaintiff's contract, Bylaws, and Guidelines as (i) the Second Tenure committee worked with Plaintiff regarding tenure; (ii) the Second Tenure Committee prepared a Tenure Report on Plaintiff; (iii) Collins convened a tenure meeting vote; (iv) Plaintiff's potential tenure was evaluated under the standards in the Bylaws and Guidelines; (v) a quorum of the law school faculty members voted on Plaintiff's tenure by secret ballot; and (vi) after Plaintiff appealed the negative tenure decision, Defendants followed the corresponding tenure appeal processes. Furthermore, the record further shows none of Plaintiff's medical information was included as a basis to deny tenure. The record is devoid of evidence of Defendants (i) allowing or encouraging law faculty to violate state bar ethical rules; (ii) using medical information or other FMLA or ADA documents to deny Plaintiff's tenure; or (iii) discriminating against Plaintiff based on her race, sex, gender, or other

protected status. Indeed, no evidence in the record shows Defendants violated any of Plaintiff's civil rights regarding her breach of contract claim.

Plaintiff directs us to no evidence in support of her breach of contract claim. Assuming arguendo that evidence of a breach of contract exists, the Court declines to sift through the record to find such evidence and has no obligation thereof. *See Ragas*, 136 F.3d at 458; Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials); *see, e.g.*, *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Plaintiff's failure to respond, object, or otherwise submit evidence to oppose Defendants' Motion permits the Court to accept as undisputed the facts so listed in support of Defendants' Motion. *Eversley*, 843 F.2d at 174. Notwithstanding, the record shows Plaintiff received a negative tenure recommendation because her teaching failed to meet the "high quality" tenure standard—and not for any other reason.

The Court has found no evidence in the record of the third element of Plaintiff's breach of contract claim. Breach is an essential element of Plaintiff's breach of contract claim. *Pathfinder Oil*, 574 S.W.3d at 890. Here, no evidence of breach exists to support Plaintiff's breach of contract claim. Without evidence of breach, the Court must conclude no genuine issue of material fact exists on Plaintiff's breach of contract claim. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's breach of contract claim. The Court dismisses Plaintiff's breach of contract claim (Count 9).

**B.**   ***42 U.S.C. § 1981, Title VII, and the TCHRA Claims of Hostile Work Environment, Discrimination, and Retaliation Claims (Counts 10–15 and 27-28)***

Plaintiff asserts, in parallel, several counts of hostile work environment, discrimination, and retaliation under (i) 42 U.S.C. § 1981; (ii) Title VII; and (iii) Texas Labor Code Chapter 21

(referred herein as the Texas Commission on Human Rights Act or "**TCHRA**").[3] 42 U.S.C. § 1981 provides for equal rights under the law. *See* 42 U.S.C. § 1981. Plaintiff's counts 10 to 12 are based on 42 U.S.C. § 1981. "[T]he purpose of Title VII is to protect employees from their employers' unlawful actions." *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 667 (5th Cir. 2020), cert. denied, 209 L. Ed. 2d 125, 141 S. Ct. 1382 (2021) (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178, 131 S. Ct. 863, 870, 178 L. Ed. 2d 694 (2011)). Plaintiff's counts 13 to 15 are based on Title VII. *See* 42 U.S.C. § 2000e, *et seq*. Like Title VII, the TCHRA serves to protect employees from their employers' unlawful actions. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (explaining that one of the TCHRA's purposes is to provide for the execution of the policies of Title VII.).[4] Plaintiff's counts 27 and 28 are based on the TCHRA.

"When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability. . . . Similarly, the law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 at n.2 (5th Cir. 1999).[5] Thus, as the proofs for these parallel claims are identical, the Court analyzes each of these claims together.

---

[3] The Court recognizes that the Commission on Human Rights has been replaced with the Texas Workforce Commission's civil rights division. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010) (citing TEX. LAB. CODE ANN. § 21.0015). Throughout this memorandum opinion and order, the Court refers to Texas Labor Code Chapter 21 as the TCHRA.

[4] The Texas Supreme Court has explained that claims asserted under the TCHRA should be analyzed in the same manner as its federal analogues. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (citations omitted) ("Because one of the purposed of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA."); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (noting the *McDonnell Douglas* burden shifting analysis applies to TCHRA disability discrimination cases); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (discussing disability discrimination under the TCHRA as parallel to the ADA).

[5] *See, e.g.*, *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) ("The substantive law governing Title VII and TCHRA retaliation claims is identical.")

    *i.*      *Hostile Work Environment Claims (Counts 10 and 13).*

To establish a claim of hostile work a plaintiff must prove she:

(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)) (addressing a hostile work environment claim under 42 U.S.C. § 1981); *see, e.g.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (addressing the same elements of a hostile work environment claim asserted under Title VII). Plaintiff has asserted her hostile work environment based on race discrimination, and it is undisputed that Plaintiff belongs to a protected group—she is a black woman.

    "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accts. of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999); *see generally Hernandez*, 670 F.3d at 651.

Defendants assert that Plaintiff has not created a genuine issue of material fact as to her hostile work environment claims "because there is no evidence of harassment based on race or otherwise." (Doc. 127 at 51). Plaintiff has presented no evidence in support of her hostile work environment claims. Plaintiff's pleading repeatedly asserts various types of harassment, but "pleadings are not evidence of the facts alleged therein." *Pullman Co. v. Bullard*, 44 F.2d 347, 348 (5th Cir. 1930).[6] No evidence in the record shows Plaintiff was subjected to unwelcome harassment based on her protected group membership as a black woman. After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's allegations of hostile work environment. Thus, the record is devoid of any evidence of the third through fifth essential elements of Plaintiff's hostile work environment claims.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and the Court must grant summary judgment in favor of Defendants. *See, e.g.*, *Davis v. Realpage, Inc.*, 3:18-CV-0986-D, 2020 WL 1325201, at *19 (N.D. Tex. Mar. 20, 2020) (Granting summary judgment to the employer after noting the plaintiff's evidence was "woefully insufficient for a reasonable jury to find that Davis was subjected to a hostile work environment."). Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's hostile work environment claims. The Court dismisses Plaintiff's hostile work environment claims based on 42 U.S.C. § 1981 and Title VII (Counts 10 and 13).

---

[6] The Court notes that, in her pleadings, Plaintiff repeatedly complains of being called a liar or otherwise untruthful, which is a charge not based in any protected group. *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021); *see, e.g.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Cavalier v. Clearlake Rehab. Hosp. Inc.*, No. CIV. A. H-07-678, 2008 WL 2047997, at *5 (S.D. Tex. May 12, 2008), aff'd, 306 F. App'x 104 (5th Cir. 2009) (explaining in a case wherein the complainant was called a "liar several times" that "the alleged harassment was not so severe or pervasive as to result in a hostile and abusive working environment.").

ii.    *Race Discrimination (Counts 11, 14, and 27)*

As pleaded, Plaintiff's theory of race discrimination is based on Defendants' failure to promote her to a tenured professor. "It is unlawful to terminate an employee 'because of her race.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022) (citing 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981). Plaintiff has presented no direct evidence of discrimination. Because Plaintiff "does not present direct evidence of discrimination, she must satisfy the *McDonnell Douglas* burden-shifting framework." *Owens*, 33 F.4th at 825 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020)). The Court analyzes employment discrimination claims arising under both 42 U.S.C. § 1981 and Title VII using the *McDonnell Douglas* burden-shifting framework. *Owens*, 33 F.4th at 825 (citations omitted). The Fifth Circuit has described the *McDonnell Douglas* burden-shifting framework as follows:

> Under that framework, [a complainant] must make out a prima facie case of discrimination. *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021). If she succeeds, [an employer] must respond with a "legitimate, nondiscriminatory reason" for terminating [the complainant]. *Id.* at 282. Then the burden shifts back to [the complainant], who must counter with substantial evidence that [the employer's] proffered reason is pretextual. *Id.*

*Owens*, 33 F.4th at 825. To establish a prima facie case of race discrimination based on failure to promote, Plaintiff must show:

> (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (addressing claims asserted under Title VII); *see Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 201 at n.3 (5th Cir. 2008) ("We evaluate claims of race discrimination under § 1981 using the same analysis as those under Title VII."). It is undisputed that Plaintiff meets the first and third elements.

Defendants assert no genuine issue of material fact exists as to Plaintiff's race discrimination claims because (i) Plaintiff cannot show she was qualified for the position of a tenured Associate Professor and (ii) there is no evidence that she was denied the promotion based on race. (Doc. 127, at 52, 54). Plaintiff has presented no evidence in support of her race discrimination claims. After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's allegations of race discrimination related to her denial of tenure and promotion.

To the contrary, as discussed hereinabove, the record shows Plaintiff was denied tenure and promotion because her teaching fell short of the "high quality" tenure standard—and not because of her race. The record is otherwise devoid of any evidence of the second or fourth essential elements of Plaintiff's race discrimination, denial of tenure and promotion claims.[7] That is, Plaintiff has failed to support—by summary judgment evidence—specific facts showing the existence of a genuine issue as to (i) whether she was qualified for a tenured position and (ii) whether the defendant either gave the promotion to someone outside of her protected class or otherwise failed to promote the plaintiff because of her race. *See Ragas*, 136 F.3d at 458; *Autry*, 704 F.3d at 346–47.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to make out a prima facie case of discrimination. Thus, the Court must grant summary judgment in favor of Defendants. *See Esquivel v. McCarthy*, 3:15-CV-1326-L, 2016 WL

---

[7] In regards to the fourth element—"the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race"—the Court notes that the record shows one of the professors who achieved tenure in the 2015-2016 tenure voting class was also black. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013).

6093327, at *8 (N.D. Tex. Oct. 18, 2016).[8] Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's race discrimination claims. The Court dismisses Plaintiff's race discrimination-failure to promote claims based on (i) 42 U.S.C. § 1981; (ii) Title VII; and (iii) the TCHRA (Counts 11, 14, and 27).

     *iii.*     *Retaliation (Counts 12, 15, and 28).*

As pleaded, Plaintiff's theory of retaliation is based on the adverse employment actions of (i) the denial of tenure and (ii) a failure to investigate her claims of hostile work environment and discrimination. As with her claim(s) of race discrimination, Plaintiff has presented no direct evidence of retaliation. Thus, the Court must "apply the *McDonnell Douglas* burden-shifting framework in determining whether [Plaintiff] has established a prima facie case of retaliation." *Richards v. Lufkin Indus.*, L.L.C., 804 F. App'x 212, 215 (5th Cir. 2020) (addressing retaliation claim asserted under Title VII).

To establish a prima facie case of retaliation, a Plaintiff must show the following:

1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there is a causal connection between the two.

*Owens*, 33 F.4th at 835 (addressing a retaliation claim under Title VII and 42 U.S.C. § 1981). "'An employee has engaged in protected activity when she has (1) 'opposed any practice made an

---

[8] In *Esquivel*, as here, the plaintiff failed to respond to a motion for summary judgment. Nevertheless, Court determined no genuine issue of material fact existed with respect to the plaintiff's failure to promote claim as

     Esquivel . . . has not presented evidence that either the position was filled by someone who was not Hispanic, or that she was not promoted because of her race. Esquivel has also not presented evidence that she was replaced by someone who is male, or evidence that another similarly situated male student, was promoted from a Student Trainee in Physical Science to GS-7 Environmental Scientist. Accordingly, Esquivel fails to prove, or create a genuine dispute of material fact, that the GS-7 Environmental Scientist position was filled by someone who is not Hispanic or female, or that she was not promoted because she is Hispanic or female.

*Esquivel v. McCarthy*, No. 3:15-CV-1326-L, 2016 WL 6093327, at *8 (N.D. Tex. Oct. 18, 2016).

unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII.'" *Thompson v. Somervell Cnty., Tex.*, 431 F. App'x 338, 341 (5th Cir. 2011) (quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (internal citations omitted)). "Adverse employment decisions are ultimate employment decisions such as hiring, granting leave, discharging, promoting, . . . compensating, or demoting. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (internal quotation omitted).[9]

"A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). Thus, an employer cannot retaliate against an employee if the employer's decisionmaker for the adverse employment decision did not know that the employee had engaged in protected activity at the time of the alleged retaliatory actions. *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (concluding decisionmaker could not have retaliated based on protected activity of which it was unaware)); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."). "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Owens*, 33 F.4th at 835 (quoting *Swanson v. GSA*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). "To establish causality, the

---

[9] Courts use the terms "adverse employment action" and "adverse employment decision" interchangeably. *See, e.g.*, *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) ("an adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating" (internal quotation omitted)).

protected activity and the adverse action must have "very close" temporal proximity, and 'a five month lapse is not close enough . . . to establish the causal connection element of a prima facie case of retaliation.'" *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 679 (5th Cir. 2021) (quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)).

Here, Defendants assert that Plaintiff (i) cannot meet the causation element of her retaliation claims and (ii) cannot demonstrate that SMU's legitimate, nonretaliatory reasons for denying her tenure are a pretext for retaliation." (Doc. 127, at 56). Plaintiff has presented no evidence in support of her retaliation claims.

First, it is unclear from the record and pleadings precisely *which* protected activity Plaintiff asserts prompted the alleged retaliation and *when* the protected activity began to occur. Plaintiff's pleadings make general references to engaging in protected activity—including by "complaining to the Human Resources Department and her superiors" or "complain[ing] too much about discrimination." (Doc. 12 at 132). But, such vague statements in her complaint, without any reference to an unlawful employment practice does not constitute protected activity. *See Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) ("This court ha[s] consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.") (internal quotation omitted).[10] There is no such corresponding evidence in the record to support such claims of protected activity. Neither Plaintiff nor Defendants direct the Court to evidence of a specific instance of Plaintiff engaging in a protected activity that occurred before Plaintiff's negative tenure recommendation.

Second, the record shows no evidence of a causal connection between any protected activity—assuming arguendo Plaintiff engaged in protected activity—and adverse employment

---

[10] Notwithstanding, "pleadings are not evidence of the facts alleged therein." *Pullman Co. v. Bullard*, 44 F.2d 347, 348 (5th Cir. 1930).

actions. Regarding SMU's adverse employment action of Plaintiff's negative tenure recommendation, the record shows SMU followed the Bylaws and Guidelines for the tenure process. Furthermore, the record is (i) devoid of evidence that the faculty discussed or otherwise relied upon Plaintiff's complaints of discrimination in making Plaintiff's negative tenure recommendation; (ii) devoid of evidence that Plaintiff received discriminatory treatment in comparison to similarly situated employees; and (iii) devoid of any other evidence that suggests Plaintiff's negative tenure recommendation was motivated by Plaintiff's engagement in any protected activity. Indeed, the record shows that the faculty was the decisionmaker for Plaintiff's denial of tenure, and no evidence in the record suggests the faculty considered or otherwise knew of Plaintiff's protected activities. *See Medina*, 238 F.3d at 684; *Manning*, 332 F.3d at 883 n.6.

Regarding SMU's alleged adverse employment action of an alleged failure to investigate Plaintiff's claims of hostile work environment and discrimination, the record contains no evidence of such failure. Instead, the record shows Defendants made efforts to address Plaintiff's claims of hostile work environment and discrimination: Defendants conducted investigations as enumerated above, held meetings regarding Plaintiff's concerns, and made changes to her courses—accommodating her specific requests. Notwithstanding, the record contains no evidence that such a failure to investigate Plaintiff's claims of hostile work environment and discrimination constituted an adverse employment action because no evidence in the record suggests that such an investigation would constitute an "ultimate employment decision[]." *Thompson*, 2 F.4th at 470. Thus, the Court concludes Plaintiff's allegation that SMU failed to investigate Plaintiff's claims of hostile work environment and discrimination—assuming arguendo that SMU failed such to complete such an investigation—was not an adverse employment action.

After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's allegations of retaliation based on (i) 42 U.S.C. §

1981; (ii) Title VII; and (iii) the TCHRA. That is, Plaintiff has failed to support—by summary judgment evidence—specific facts showing the existence of a genuine issue of material fact on the element of whether a causal connection existed between her protected activity and an adverse employment action. *See Ragas*, 136 F.3d at 458; *Autry*, 704 F.3d at 346–47.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to make out a prima facie case of retaliation. Thus, the Court must grant summary judgment in favor of Defendants. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's retaliation claims. The Court dismisses Plaintiff's retaliation claims based on (i) 42 U.S.C. § 1981; (ii) Title VII; and (iii) the TCHRA (Counts 12, 15, and 28).

C.     *RA, ADA, and TCHRA Claims of Hostile Work Environment, Discrimination, Segregation, And Retaliation (Counts 16–22)*

"Both of these statutes prohibit employment discrimination against qualified individuals with disabilities . . . . The [RA] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts." *See Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citations omitted). Accordingly, these statutes are interpreted in the same manner. *See Frame v. City of Arlington*, 657 F.3d 215, 223–24 (5th Cir. 2011) (noting the RA and ADA are interpreted "*in pari materia.*"). The Court analyzes each of these claims together. Furthermore, TCHRA claims based on disability discrimination are interpreted in the same manner as ADA disability discrimination claims. *See Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018)

i.     *Plaintiff's claims for "segregation in the workplace" (Count 18) and "invasion of medical privacy" (Count 20) under the RA or ADA are not cognizable.*

The Court has located no language from the RA, ADA, or precedential case law that recognizes a cause of action for "segregation in the workplace" (Count 18) or "invasion of medical privacy" (Count 20) under the RA or ADA.  Correspondingly, Defendants assert they are entitled

to summary judgment on these causes of action because the Fifth Circuit has not recognized such claims based on the RA or ADA as actionable. Without support in the RA, ADA, or other precedent, the Court declines to recognize Plaintiff's "segregation in the workplace" and "invasion of medical privacy" claims as pleaded under the RA and ADA.[11] Assuming arguendo such claims were recognized, Plaintiff failed to provide summary judgment evidence to support such claims. As such, the record contains no evidence in support of such claims.

Thus, the Court must grant summary judgment in favor of Defendants. The Court GRANTS Defendants' Motion as to Plaintiff's "segregation in the workplace" and "invasion of medical privacy" claims based on the RA and ADA. The Court dismisses Plaintiff's corresponding claims (Counts 18 and 20).

ii.    *Plaintiff's claim for "associational discrimination" (Count 19) is not an "explicitly" recognized cause of action under RA or ADA.*

The Court has located no language from the RA, ADA or precedential case law that recognizes a cause of action for "associational discrimination" (Count 19). In unpublished opinions, the Fifth Circuit has not "explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor [has it] described what such a claim requires." *Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) (citing Grimes v. Wal-Mart Stores Texas, L.L.C., 505 F. App'x 376, 380 n.1 (5th Cir. 2013)). In *Spencer*, the Fifth Circuit explained:

> "[i]f such an action were viable, a prima facie case of associational discrimination would require that the Plaintiff show: 1) her qualification for the job, 2) an adverse employment action, 3) the employer's knowledge of the employee's disabled relative, and 4) that the adverse employment action occurred under circumstances

---

[11] The Court notes, however, that "segregation" is typically viewed under the ADA as a theory included within the term "discrimination." 42 U.S.C. § 12112(b)(1) (The term "discrimination" "includes limiting, segregating or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee."). Thus, such a claim would be subsumed by Plaintiff's disability discrimination claims—addressed hereunder (Counts 17 and 29).

raising a reasonable inference that the relativee's disability was a determining factor
in the employer's adverse action."

*Spencer*, 725 F. App'x at 267 (quoting *Grimes*, 505 F. App'x at 380). Defendants assert "[t]he

Court should determine that Plaintiff's associational discrimination claim based 'on her association

with an immediate family member' is not a valid ADA claim[.]" (Doc. 127, at 42). However, the

Court need not adjudicate the validity of such claims and pretermits discussion of the validity of

such claims. Unpublished opinions are not precedential before this Court. *See* Fed. R. App. P. 32.1;

U.S. Ct. of App. 5th Cir. R. 28.7 and 47.5.4 ("Unpublished opinions issued on or after January 1,

1996, are not precedent[.]").

Without support in the RA, ADA, or other precedent, the Court declines to recognize

Plaintiff's "associational discrimination" claim as pleaded under the RA and ADA. Assuming

arguendo such a claim was recognized, Plaintiff failed to provide summary judgment evidence to

raise a genuine issue of material fact. Under the test proposed in *Spencer* for "associational

discrimination," no evidence in the record raises a fact issue for elements one, three, and four. *See*

*Spencer*, 725 F. App'x at 267.

This opinion should not be construed as recognizing a cause of action for associational

discrimination under RA or ADA. Instead, this opinion is noting that, if such a cause of action

*were* recognized in the Fifth Circuit, Plaintiff would have failed her summary judgment burden.

Since the Fifth Circuit has not recognized such a claim for associational discrimination, the Court

must grant summary judgment in favor of Defendants. Therefore, the Court GRANTS Defendants'

Motion as to Plaintiff's "associational discrimination" claim based on the RA and ADA. The Court

dismisses Plaintiff's corresponding claim (Count 19).

     *iii.*     *No Evidence In The Record Exists To Support Essential Elements Of Plaintiff's Remaining RA, ADA, and TCHRA Claims: Disability-Based Harassment (Count 16); Disability Discrimination (Count 17); Failure-to-Accommodate (Count 21); and Retaliation (Count 22)*

               1)  Disability-Based Harassment (Count 16)

To establish a hostile-work environment, disability-based harassment claim under the ADA, Plaintiff must demonstrate:

> 1) that she belongs to a protected group; 2) that she was subjected to unwelcome harassment; 3) that the harassment complained of was based on her disability or disabilities; 4) that the harassment complained of affected a term, condition, or privilege of employment; and 5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Credeur v. Louisiana*, 860 F.3d 785, 795–96 (5th Cir. 2017) (citation omitted); *see Thompson*, 2 F.4th at 471 (affirming summary judgment against a plaintiff after the Court concluded employer's statements were no more than "a few harsh words"). "Further, the harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Credeur*, 860 F.3d at 796. The standard for a disability-based harassment claim is "fairly high." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 236 (5th Cir. 2001).

Defendants assert Plaintiff has neither (i) evidence of harassment nor (ii) evidence of harassment pervasive or severe enough to alter the conditions of her employment. Plaintiff has presented no evidence in support of her hostile work environment claims. No evidence in the record shows Plaintiff was subjected to unwelcome harassment based on a disability. After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's allegations of hostile work environment as based on the RA or ADA. The record is devoid of any evidence of the third through fifth essential elements of Plaintiff's hostile work environment claims.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and the Court must grant summary judgment in favor of Defendants. *See, e.g.*, *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 510 (5th Cir. 2003) ("It is not difficult to conclude on this slender evidence that no actionable disability-based harassment occurred). Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's hostile work environment claim based on the RA and ADA. The Court dismisses Plaintiff's hostile work environment claims based on the RA and ADA (Count 16).

### 2) Disability Discrimination (Counts 17 and 29)

As pleaded, Plaintiff's theory of disability discrimination under both the ADA and TCHRA is based on Defendants' failure to promote her to a tenured professor. The ADA prohibits employment discrimination against a qualified individual based on the individual's disability. 42 U.S.C. § 12112(a); *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Courts apply the same framework for an ADA claim that they apply for a TCHRA claim. *Williams*, 717 F. App'x at 444–45 ("Because TCHRA parallels the language of the [ADA], Texas courts follow ADA law in evaluating TCHRA discrimination claims. . . . The following ADA analysis therefore applies equally to the TCHRA.") (internal quotation omitted).

As discussed hereinabove, Plaintiff has presented no direct evidence of discrimination; thus, Plaintiff must satisfy the *McDonnell Douglas* burden-shifting framework. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: 1) that he has a disability; 2) that he was qualified for the job; and 3) that he was subject to an adverse employment decision on account of his disability." *Thompson*, 2 F.4th at 470 (citing *E.E.O.C. v. LHC*, 773 F.3d at 697).[12] "Adverse employment

---

[12] The Court notes that Plaintiff's Count 29 TCHRA disability discrimination claim, as pleaded, does not refer to any specific facts of an adverse employment decision. Nevertheless, the record contains evidence of only one employment action that constitutes an adverse employment action—Plaintiff's negative tenure

decisions are ultimate employment decisions such as hiring, discharging, promoting, []
compensating, or demoting." *Thompson*, 2 F.4th at 470. (internal quotations and citations omitted).
"Once a plaintiff establishes a prima facia case, the burden shifts to the employer to articulate a
legitimate nondiscriminatory reason for its actions. The plaintiff then has the burden to prove that
the employer's explanation was a pretext for discrimination." *Thompson*, 2 F.4th at 470. (internal
quotations and citations omitted).

It is undisputed that Plaintiff had a disability and suffered an adverse employment action—
Plaintiff's negative tenure recommendation. Defendants assert there is no evidence in the record
to support Plaintiff's second essential element of disability discrimination—whether Plaintiff was
qualified for tenure. (Doc. 127, at 47).

Plaintiff has presented no evidence in support of her disability discrimination claims. After
review of the record, the Court has found no evidence that would raise a genuine issue of material
fact as to any of Plaintiff's allegations of disability discrimination related to her denial of tenure
and promotion. To the contrary, as discussed hereinabove, the record shows Plaintiff was denied
tenure and promotion because her teaching fell short of the "high quality" tenure standard—that
is, Plaintiff did not qualify for tenure.

The record is otherwise devoid of any evidence of the second essential element of
Plaintiff's disability discrimination, denial of tenure and promotion claim. That is, Plaintiff has
failed to support by summary judgment evidence specific facts showing the existence of a genuine
issue on the element of whether she was qualified for a tenure position. *See Ragas*, 136 F.3d at
458; *Autry*, 704 F.3d at 346–47. Defendants do not challenge the third element of Plaintiff's
disability discrimination claim—whether the "adverse employment decision *on account of*

---

recommendation. Thus, the Court takes Plaintiff's negative tenure recommendation as the complained-of
adverse employment action in her TCHRA disability discrimination claim.

*[Plaintiff's] disability.*" *Thompson*, 2 F.4th 460 (emphasis added). Nevertheless, the record contains no evidence that Plaintiff's negative tenure recommendation occurred on account of her disability. Thus, Plaintiff has failed to raise a genuine issue of material fact as to both the second and third elements of her disability discrimination claims.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to make out a prima facie case of discrimination. Thus, the Court must grant summary judgment in favor of Defendants. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's disability discrimination—denial of tenure and failure to promote claims based on the ADA and TCHRA. The Court dismisses Plaintiff's disability discrimination claims (Counts 17 and 29).

### 3) Failure-to-Accommodate (Count 21)

"Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Credeur*, 860 F.3d at 792 (internal quotation omitted). A failure-to-accommodate claim requires a showing that: "1) the plaintiff is a qualified individual with a disability; 2) the disability and its consequential limitations were known by the covered employer; and 3) the employer failed to make reasonable accommodations for such known limitations." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (citing *Credeur*, 860 F.3d at 792). "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). If a plaintiff is not a qualified individual, the Court's inquiry ends. *Weber*, 989 F.3d at 323. To prove she is a qualified individual under ADA, Plaintiff must show either: (i) she could perform the essential functions of her job despite her disabilities; or (ii) that a reasonable accommodation

of her disabilities would have enabled her to perform the essential functions of the job. *Weber*, 989 F.3d at 324.

"'Essential functions' are those duties that are fundamental to the job at issue." *Kapche v. City of San Antonio*, 176 F.3d 840, 843 (5th Cir. 1999). The Fifth Circuit has explained:

> [A] job function may be considered essential if, for example, (1) the purpose of the position is the performance of that function, (2) only a limited number of employees are available among whom the performance of that function can be delegated, or (3) an employee is hired because of his expertise or ability to perform a specialized function. To aid in the determination of whether a function is essential, a court may consider as evidence a variety of factors including, but not limited to, (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, and (4) the work experience of both past and current employees in the job.

*Kapche*, 176 F.3d at 843 (footnotes omitted). Essential functions do "not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

"The ADA requires employers to make '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position[.]'" *E.E.O.C. v. LHC*, 773 F.3d at 698 (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). Under the ADA, the term "reasonable accommodation" may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111(9)(B). "'The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation.'" *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021) (quoting *E.E.O.C. v. Agro Distrib.*, LLC, 555 F.3d 462, 471 (5th Cir. 2009)).

Plaintiff's theory for her failure-to-accommodate claim was that "Defendants failed to make a reasonable accommodation in the form of a delayed vote on her application for tenure and promotion." (Doc. 12, at 123). Based on the complaint, Plaintiff appears to suggest that achieving tenure was the essential job function that she could perform, if only she had a reasonable accommodation in the form of a delayed tenure vote. (*See* Doc. 12, at 123). Defendants assert Plaintiff cannot show she is qualified under the ADA because (i) tenure is not an essential function of her job as a law professor, (ii) delaying the tenure vote is not a reasonable accommodation, and (iii) Defendants accommodated Plaintiff's disabilities regarding her essential functions in teaching.

Plaintiff has presented no evidence in support of her failure to accommodate disability claims. After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to the first element of Plaintiff's allegations of Defendants' failure to accommodate Plaintiff's disabilities under the ADA. To the contrary, the record shows that Plaintiff's achieving tenure was not an "essential function" in light of the *Kapche* factors, as (i) no evidence shows achieving tenure was "fundamental" or "essential" to Plaintiff's position as a teacher at SMU's school of law and (ii) the record of agreements between Plaintiff and SMU show that achieving tenure was based on several conditions for promotion and a faculty vote. *See Kapche*, 176 F.3d at 843.[13] Here, the record shows Plaintiff failed to meet the "high quality" of teaching standard to achieve tenure. Additionally, there is no evidence in the record that suggests that Plaintiff's requested delay of her tenure vote would have constituted a "reasonable accommodation." That is, no evidence in the record shows that a delayed vote on Plaintiff's

---

[13] Notwithstanding, Plaintiff's failure to respond to summary judgment also means that, for summary judgment purposes, she does not dispute Defendants' factual contention that "tenure is not an essential function of her job." (Doc. 127, at 44) (citing Doc. 128, at 118–19).

application for tenure would have constituted a "modification or adjustment" to Plaintiff's work environment, manner, or circumstances that would enable her to perform the essential functions of her job as a teacher. *See E.E.O.C. v. LHC*, 773 F.3d at 698; 29 C.F.R. § 1630.2(o)(1)(ii); 42 U.S.C. § 12111(9)(B).

Plaintiff has failed to support by summary judgment evidence specific facts showing the existence of a genuine issue on whether she was a qualified individual—(i) whether achieving tenure was an "essential function" of her job; or (ii) whether her acclaimed "reasonable accommodation" of delaying the vote on her tenure would have enabled her to perform an essential function of her job. The Court must conclude Plaintiff has failed to carry her summary judgment burden, and the Court must grant summary judgment in favor of Defendants. *See, e.g., Credeur*, 860 F.3d at 795 (affirming trial court's grant of employer's summary judgment to the employer after concluding plaintiff was not a qualified individual). Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's failure to accommodate claim. The Court dismisses Plaintiff's failure to accommodate claim (Count 21).[14]

#### 4)  Retaliation (Count 22)

Like her claims of retaliation under (i) 42 U.S.C. § 1981; (ii) Title VII; and (iii) the TCHRA, Plaintiff's theory of retaliation under the ADA is based on the adverse employment actions of the denial of tenure and a failure to investigate her claims of ADA discrimination. The ADA prohibits retaliation against those who exercise their ADA rights. *See Lyons*, 964 F.3d at 304. Plaintiff has presented no direct evidence of ADA retaliation; therefore, Plaintiff must satisfy

---

[14] The Court notes that Plaintiff's Count 29 based on TCHRA disability discrimination mentions, in a single sentence: "[t]he Plaintiff alleges that the Defendant failed to accommodate her disability and ultimately fired her in violation of Chapter 21 of the Texas Labor Code." The Court makes no determination as to whether Plaintiff properly pleaded a failure-to-accommodate claim under the TCHRA. However, on this record, such a claim would be subject to dismissal under the same analysis as her ADA failure-to-accommodate claim.

the *McDonnell Douglas* burden-shifting framework. *Lyons*, 964 F.3d at 304. The Fifth Circuit has

enumerated the elements for such a claim as follows:

> To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff
> must show that: (1) she engaged in an activity protected by the ADA, (2) she
> suffered an adverse employment action, and (3) there is a causal connection
> between the protected activity and the adverse action.

*Lyons*, 964 F.3d at 304. Notwithstanding that the protected activity must fall under activity

protected by the ADA, the second and third elements of an ADA retaliation follow the same

analysis as a retaliation claim asserted under Title VII. *Garner v. Chevron Phillips Chem. Co.,*

*L.P.*, 834 F. Supp. 2d 528, 540 (S.D. Tex. 2011).

Here, Defendants assert Plaintiff cannot meet the causation standard because Plaintiff's

engagement with activity protected by the ADA—requesting reasonable accommodations—

occurred *after* Plaintiff's negative tenure recommendation. Plaintiff has presented no evidence in

support of her retaliation claims.

Again, as with her retaliation claims under on (i) 42 U.S.C. § 1981; (ii) Title VII; and

(iii) the TCHRA, it is unclear from the record and pleadings precisely *which* protected activity

Plaintiff asserts prompted the alleged retaliation and *when* the protected activity began to occur.

Plaintiff's pleadings make general references to engaging in protected activity—including by

requesting accommodation under the ADA. *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676

(5th Cir. 2008) ("It is undisputed that making a request for a reasonable accommodation under the

ADA may constitute engaging in a protected activity."). But such vague statements in her

complaint, without any reference to an unlawful employment practice, does not constitute

protected activity. *See Paske*, 785 F.3d at 986.[15] Here, the only competent evidence in the record

---

[15]Again, the Court does not consider pleadings as evidence. *See Pullman Co.*, 44 F.2d at 348.

of Plaintiff engaging in protected activity under the ADA is her request for an accommodation, submitted to SMU for the first time on April 6, 2016.

As discussed above, the only adverse employment action Plaintiff suffered is her negative tenure recommendation, which occurred on January 13, 2016. Thus, the Court must conclude no temporal proximity existed between Plaintiff's April 6, 2016 engagement in protected activity and the January 13, 2016 adverse employment action, as the protected activity occurred *after* the adverse employment action. Otherwise, the record shows no evidence of a causal connection between any protected activity and Plaintiff's negative tenure recommendation. Indeed, the record is devoid of any other evidence that shows Plaintiff's negative tenure recommendation was motivated by Plaintiff's engagement in any activity protected by the ADA. Instead, the record shows that the faculty was the decisionmaker for Plaintiff's denial of tenure, and no evidence in the record suggests the faculty considered or otherwise knew of Plaintiff's protected activity under the ADA. *See Medina*, 238 F.3d at 684; *Manning*, 332 F.3d at 883 n.6.

After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's allegations of ADA retaliation. That is, Plaintiff has failed to support—by summary judgment evidence—specific facts showing the existence of a genuine issue of material fact on the element of whether a causal connection existed between her protected activity under the ADA and an adverse employment action. *See Ragas*, 136 F.3d at 458; *Autry*, 704 F.3d at 346–47.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to make out a prima facie case of ADA retaliation. Thus, the Court must grant summary judgment in favor of Defendants. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's ADA retaliation claim. The Court dismisses Plaintiff's retaliation claims based on the ADA (Count 22).

### D.      *FMLA Claims (Counts 23-26).*

"The FMLA grants 'an eligible employee' up to twelve weeks of annual unpaid leave for 'a serious health condition' that prevents him from performing the functions of his job." *Tatum v. Southern Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019); *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021). "An employer may not interfere with the exercise of any right provided under the Act, nor may it 'discharge . . . any individual for opposing any practice made unlawful' by the Act." *Tatum*, 930 F.3d at 713. "In the absence of direct evidence of discriminatory intent, [the Court applies] the *McDonnell Douglas* framework to determine the reason for an employee's discharge." *Tatum*, 930 F.3d at 713. (citations omitted).

> i.      *Plaintiff's claims for harassment (Count 24) and invasion of privacy (Count 25) and are not cognizable under FMLA.*

The Court has located no language from the FMLA or precedential case law that recognizes a cause of action for "harassment" (Count 24)[16] or "invasion of medical privacy" (Count 25) under the FMLA.  Correspondingly, Defendants assert they are entitled to summary judgment on these causes of action because neither the Fifth Circuit nor other district courts within the Fifth Circuit have recognized such claims based on the FMLA as actionable. *See Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. H-13-2902, 2015 WL 150727, at *4 n.60 (S.D. Tex. Jan. 12, 2015) ("Plaintiff has not cited to and the court has not found any case wherein a federal court has recognized a FMLA cause of action based on hostile work environment harassment."); *Wilson v. Nat'l Ass'n of Letter Carriers, Branch No. 2730*, No. CV 01-2736, 2006 WL 8455827, at *4 (E.D. La. May 4, 2006)("the FMLA does not create an actionable right to privacy under 29 C.F.R.

---

[16] The Court notes that Plaintiff's pleading on Count 24 asserts "harassment" and a "retaliation" causes of action under the FMLA. The Court addresses further addresses the "retaliation" claim, hereunder.

§ 825.307."). Here, Plaintiff has provided no briefing, authority, or evidence to support either cause of action for "harassment" or "invasion of medical privacy" under the FMLA.

Without support in the FMLA or other precedent, the Court declines to recognize Plaintiff's "harassment" and "invasion of medical privacy" claims as pleaded under the FMLA. Assuming arguendo such claims were recognized, the record contains no evidence in support of those claims, and Plaintiff failed to provide summary judgment evidence to support them.[17] Thus, the Court must grant summary judgment in favor of Defendants. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's "harassment" and "invasion of medical privacy" claims based on the FMLA. The Court dismisses Plaintiff's corresponding claims (Counts 24 and 25).

   ii.   *No Evidence in the Record Exists to Support Plaintiff's Claims of FMLA Interference (Counts 23 and 26) or FMLA Retaliation (Count 24).*

      1)   <u>FMLA Interference with FMLA Leave (Count 23)</u>

"A prima facie case of FMLA interference requires an employee to show that: 1) he was an eligible employee; 2) his employer was subject to FMLA requirements; 3) he was entitled to leave; 4) he gave proper notice of his intention to take FMLA leave; and 5) his employer denied the benefits to which he was entitled under the FMLA." *Campos*, 10 F.4th at 526 (citation omitted). The employee also must show that the violation prejudiced her. *Campos*, 10 F.4th 515, 526 (citation omitted). "Once the plaintiff states a prima facie claim, it is the employer's burden on summary judgment to articulate 'a legitimate non-discriminatory reason for the employment action at issue,' which then may be rebutted if 'the plaintiff raise[s] an issue of material fact that the

---

[17] Furthermore, even if the Court were to construe Plaintiff's FMLA harassment claim as a claim for hostile work environment under the ADA—as the *Smith-Schrenk* court construed such an FMLA harassment claim—there is no evidence in the record of harassment that would constitute such a claim, as discussed above regarding Plaintiff's Count 16. *See generally Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. H-13-2902, 2015 WL 150727, at *4-5 (S.D. Tex. Jan. 12, 2015).

employer's proffered reason was pretextual.'" *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) (quoting *Caldwell*, 850 F.3d at 245).

Whether SMU denied Plaintiff's benefits entitled under the FMLA, is an essential element of Plaintiff's FMLA interference with leave claim. *Campos*, 10 F.4th 515, 526. Defendants assert they are entitled to summary judgment on Plaintiff's FMLA interference claim because they did not deny Plaintiff any FMLA benefit for which she was entitled to receive. (Doc. 127, at 25–26). Plaintiff has presented no evidence in support of her claim. The Court has found no evidence in the record in support of this claim. To the contrary, the record shows that SMU did not deny Plaintiff any FMLA benefit: (i) Plaintiff informed SMU of a desire to take FMLA leave in Summer of 2015; (ii) Adams repeatedly sent Plaintiff instructions and forms to seek FMLA leave; (iii) Plaintiff submitted her FMLA forms on December 18, 2015; and (iv) SMU granted the full amount of FMLA leave Plaintiff was entitled to for calendar years 2015 and 2016.

Thus, the record shows—and Plaintiff does not dispute—that SMU granted the FMLA leave she was entitled to. After review of the record, the Court has found no evidence that would raise a genuine issue of material fact as to any of Plaintiff's allegations of Defendants' interference with her FMLA leave. Notwithstanding, there is no evidence in the record that shows SMU denied Plaintiff's benefits entitled under the FMLA—the fifth essential element to Plaintiff's FMLA interference with FMLA leave claim.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and the Court must grant summary judgment in favor of Defendants. *See Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001) (citations omitted) ("If an employee has received her entitlements under the FMLA, she does not have an FMLA claim regardless of the quality of the notice that she received."). Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's

interference with FMLA leave claim. The Court dismisses Plaintiff's interference with FMLA leave claim (Count 23).

2) FMLA Retaliation Claim (Count 24)

"The FMLA prohibits retaliation against those who exercise their FMLA rights." *Campos*, 10 F.4th at 527. "A prima facie showing of FMLA retaliation requires that a plaintiff show: 1) she was protected under the FMLA; 2) she suffered an adverse employment action; and 3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA." *Campos*, 10 F.4th at 527 (citation omitted). "The final element requires proof of a causal link." *Campos*, 10 F.4th at 527 (citation omitted). When considering the causal link, the Court "shall consider 'temporal proximity' between the FMLA leave, and the termination." *Mauder*, 446 F.3d at 583.

As discussed hereabove, the only adverse employment action Plaintiff suffered was not being promoted through the tenure process—Plaintiff's negative tenure recommendation. Defendants assert they are entitled to summary judgment on Plaintiff's FMLA retaliation claim because no evidence in the record shows a causal connection (i) between Plaintiff's FMLA leave or seeking protection under the FMLA and (ii) the decision to not promote Plaintiff through the tenure process. Plaintiff has presented no evidence in support of her claim. The Court has found no evidence in the record in support of this claim.

The record contains no evidence that Plaintiff's negative tenure recommendation involved the consideration of any FMLA request or protection under the FMLA. To the contrary, the record shows Plaintiff was denied tenure and promotion because her teaching fell short of the "high quality" tenure standard—Plaintiff did not qualify for tenure. The record is otherwise devoid of any evidence of the third essential element of Plaintiff's FMLA retaliation claim. That is, Plaintiff has failed to support by summary judgment evidence specific facts showing the existence of a

genuine issue on the element of whether "she was treated less favorably than an employee who had not requested *leave under the FMLA* or the adverse decision was made *because she sought protection under the FMLA*." *Campos*, 10 F.4th at 527 (emphasis added); *Mauder*, 446 F.3d at 585 (affirming dismissal of FMLA retaliation claims after determining plaintiff's "explanations are conclusory and he has produced no evidence in the record that he was discharged because he requested FMLA leave.").

Furthermore, the undisputed facts show Defendants—through the First and Second Tenure Committees—contemplated that Plaintiff may have not qualified for tenure before Plaintiff requested FMLA leave. Defendants are not required to change course simply because Plaintiff asked for and received all the FMLA leave she was entitled to take. *See Mauder*, 446 F.3d at 584 (citing *Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). Defendants' decision to "proceed[] along lines previously contemplated, though not yet definitively determined, is no evidence whatever of retaliatory causality." *Clark*, 532 U.S. at 272.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to make out a prima facie case of FMLA retaliation. Thus, the Court must grant summary judgment in favor of Defendants. *See Mauder*, 446 F.3d at 584. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's FMLA retaliation claim. The Court dismisses Plaintiff's FMLA retaliation claim (Count 24).

### 3)   FMLA Interference with Job Restoration (Count 26)

"The FMLA provides, in part, that an employee 'shall be entitled, on return from [a qualified] leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 925 (5th Cir. 1999) (quoting 29 U.S.C. § 2614(a)(1)). "An

employee is not entitled to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013) (quoting 29 U.S.C. § 2614(a)(3)(B)). "However, the FMLA does not impose a strict liability standard requiring employers, in all circumstances, to reinstate employees following their FMLA leave." *Hester*, 11 F.4th at 306.

> Accordingly, an employee claiming a violation of his right to reinstatement must actually be entitled to the position to which he seeks reinstatement. . . . Thus, although denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment had already been extinguished—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the [FMLA].

*Hester*, 11 F.4th at 306 (internal quotations and citations omitted).

Defendants have sought summary judgment on this claim. In her pleading, Plaintiff complains that she was not reinstated to teaching in the classroom and that she did not receive reimbursement for "standard work expenses related to research." Here, the record is devoid of evidence in support of Plaintiff's FMLA interference with job restoration claim. To the contrary, the record shows (i) Plaintiff did not teach during the spring 2016 semester—during her second period of her FMLA leave; (ii) SMU paid Butler during this period; and (iii) SMU paid Plaintiff for her terminal year—the Fall 2016 to Spring 2017 school year. The record shows that, during this final school year, Plaintiff was free to work on her research and other scholarship of her choosing. Plaintiff presented no evidence in support of her FMLA interference with job restoration claim. Thus, there is no evidence in the record that she was entitled to reinstatement specifically to a teaching position with SMU or receipt of expenses of any kind as a condition of her work. Otherwise, the record is devoid of evidence that Plaintiff, during the fall 2016 to spring 2017 school

year, did *not* receive "equivalent employment benefits, pay, [or] other terms and conditions of employment." *Nero*, 167 F.3d at 925.

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to make out a prima facie case of FMLA interference with job restoration. Thus, the Court must grant summary judgment in favor of Defendants. *See Mauder*, 446 F.3d at 584. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's FMLA interference with job restoration claim. The Court dismisses Plaintiff's FMLA interference with job restoration claim (Count 26).

### E.     *Burden Shifting, Pretext, and Causation*

The court acknowledges that Plaintiff failed to provide summary judgment evidence to support—or otherwise raise a genuine issue of material fact on—any of her discrimination or retaliation claims. As discussed above, Plaintiff has failed to make out a prima facie case for discrimination and retaliation as required and the burden does not shift to the Defendants. *See, e.g.*, *Haynes v. Pennzoil Co.*, 207 F.3d 296, 301 (5th Cir. 2000) (ending its analysis and affirming district court's grant of summary judgment after concluding plaintiff "failed to establish a prima facie case of racial discrimination under Title VII"); *Owens* 33 F.4th at 835 (applying the *McDonnell Douglas* framework to a retaliation claim under Title VII and 42 U.S.C. § 1981). Nevertheless—assuming arguendo that Plaintiff met her burden to show a prima facie case—it is undisputed that Defendants presented a "legitimate, non-discriminatory reason" for denying Plaintiff's negative tenure recommendation. *Owens*, 33 F.4th at 835; *Eversley*, 843 F.2d at 174. Here, the record shows Defendants' decision was based on Plaintiff failing to meet the "high quality" standard of teaching required for tenure under SMU's Bylaws and Guidelines.

Thus, the burden shifts back to Plaintiff to show Defendants' reason for the negative tenure recommendation was pretextual. Under the third step of the *McDonnell Douglas* framework, the

burden would shift back to Plaintiff to present evidence proving the reasons stated by the employer were not its true reasons, but were a pretext for discrimination, or the reasons were not credible. *Reeves*, 530 U.S. at 143, 120 S. Ct. 2097; *Owens*, 33 F.4th at 825. Under the third step of the mixed-motive framework, the plaintiff must "offer sufficient evidence to create a genuine issue of fact that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Castay v. Ochsner Clinic Found.*, 604 F. App'x 355, 356 (5th Cir. 2015) (internal quotation omitted).

       *i.*      *Pretext Under McDonnell Douglas*

      To establish pretext under the third step of *McDonnell Douglas*, a complainant "may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981)). On discrimination claims, the plaintiff "must counter with substantial evidence" that the employer's proffered reason is pretextual. *Owens*, 33 F.4th at 825 (addressing discrimination claims under 42 U.S.C. § 1981 and Title VII). On claims of retaliation, Plaintiff must show that the adverse employment action would not have occurred "but for" her engagement in protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (adjudicating retaliation claim under Title VII); *Mayberry v. Mundy Cont. Maint. Inc.*, 197 F. App'x 314, 317 (5th Cir. 2006) (adjudicating a retaliation claim under 42 U.S.C. § 1981 and Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (adjudicating retaliation claim under the ADA). The "but for" causation standard is more difficult to prove than prima facie causation. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("This court has explicitly held that the "causal link" required in prong three of the prima facie case for retaliation is not as stringent as the "but for" standard."); *see Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808-09 (5th Cir. 2007)

(discussing "very close" temporal proximity as potentially sufficient to meet prima facie standard but insufficient to meet "but for" causation standard).[18]

Here, Plaintiff has failed to present any evidence showing Defendants' reasons for denying her tenure were pretextual or unworthy of credence. *See, e.g.*, *Hassen v. Ruston La Hosp. Co., LLC*, 932 F.3d 353, 357 (5th Cir. 2019) ("[The plaintiff] doesn't present any new evidence or point to any overlooked evidence that, if true, would prove that the hospital's stated reasons are mere pretext. . . . Thus, [the plaintiff] hasn't carried her burden."). The record shows that Plaintiff's March 2014 contract renewal and both tenure committees raised concerns regarding Plaintiff's teaching months before Plaintiff's negative tenure recommendation. Furthermore, in lieu of Plaintiff's failure to respond to Defendant's Motion, the Court considers the facts of Plaintiff's failure to achieve the "high quality" of teaching, required for tenure, as undisputed. *Eversley*, 843 F.2d at 174.

Plaintiff has failed to direct the Court to evidence that Defendants' acts relating to an adverse employment action were pretextual or unworthy of credence, and the Court has found no such evidence in the record. Thus, no substantial evidence exists in the record to support Plaintiff's claims of discrimination. Furthermore, Plaintiff has failed to direct the Court to evidence that the adverse employment action—Plaintiff's negative tenure recommendation—would not have occurred but for Plaintiff's engagement in protected activity, and the Court has found none in the record. Thus, the record is devoid of any evidence that would support Plaintiff's burden under the third step of the *McDonnell Douglas* framework. Considering Plaintiff's discrimination and

---

[18] *See generally*, *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019) ("Plaintiffs who could prove but-for causation at the prima facie stage would essentially be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis." (internal quotation omitted))

retaliation claims, the Court must conclude SMU's reason for Plaintiff's negative tenure recommendation were neither pretextual nor otherwise unworthy of credence.

ii.    *FMLA Retaliation and Causation ("But For" and Mixed-Motive Causation Standards)*

Should a plaintiff make out a prima facie claim for FMLA retaliation, the analysis proceeds to burden-shifting. *See Campos*, 10 F.4th at 527. However—provided (i) the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action and (ii) the burden shift back to the plaintiff—courts in the Fifth Circuit do not necessarily follow the "but for" causation standard of the *McDonnell Douglas* framework in FMLA retaliation cases. *See Wheat v. Fl. Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 (5th Cir. 2016) ("Neither [the Fifth Circuit], nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims."). "[I]t is unclear whether a mixed-motive causation standard is ever proper for FMLA retaliation claims." *Adams v. Memorial Hermann*, 973 F.3d 343, 353 (5th Cir. 2020). In *Richardson v. Monitronics International, Incorporated*, the Fifth Circuit endorsed the mixed-motive causation standard as one option a district court may apply to FMLA retaliation claims. 434 F.3d 327, 334 (5th Cir. 2005). However, *Richardson's* viability is "dubious" in light of two recent Supreme Court cases suggesting the mixed-motive causation standard might not be proper for FMLA retaliation claims. *Adams*, 973 F.3d at 353 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352, 174 L. Ed. 2d 119 (2009); *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362-63 (2013)); *see also Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389-90 & n.11 (5th Cir. 2013) (noting that *Gross* and *Nassar* "limited the applicability of the mixed-motive framework" in other employment discrimination statutes but leaving the question of their effect on FMLA claims "for another day"). The Fifth Circuit stated "only that a court ought to apply the

'mixed-motive framework in appropriate cases.'" Adams, 973 F.3d at 353 (quoting *Richardson*, 434 F.3d at 334). "A court may give a mixed-motive instruction if it has before it substantial evidence that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action." *Adams*, 973 F.3d at 352–53 (internal quotation omitted).

> In discussing the mixed-motive framework, the Fifth Circuit has explained:

> To survive a motion for summary judgment under that framework, the employee must first set forth a prima facie case of FMLA retaliation. *Id*. at 390. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer does so, "the burden shifts once more to the employee to offer sufficient evidence to create a genuine issue of fact that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Id*.

*Castay*, 604 F. App'x at 356 (citing *Ion*, 731 F.3d at 380).

As discussed above, Plaintiff failed to assert a prima facie case of FMLA retaliation. Assuming *arguendo* that Plaintiff met her prima facie burden on her FMLA retaliation claim, Plaintiff nevertheless fails to meet either (i) the "but for" causation standard under the *McDonnell Douglas* framework or (ii) the "mixed-motive" causation standard.[19] Again, no evidence in the record shows that the adverse employment action—Plaintiff's negative tenure recommendation— would not have occurred "but for" Plaintiff's engagement in protected activity under the FMLA. The record shows Plaintiff received a negative tenure recommendation because she failed to meet SMU's "high quality" standard for teaching. There is no evidence of the record of another motive for Plaintiff's negative tenure recommendation. That is, there is no substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played

---

[19] In lieu of precedent from the Fifth Circuit, the Court declines to address which causation standard is appropriate for FMLA retaliation claims. Furthermore, as there is no evidence in the record to support Plaintiff's FMLA retaliation claim, the Court need not reach such a determination.

a role in the challenged employment action. *See Adams*, 973 F.3d at 354. No evidence in the record creates a genuine issue of fact that the employer's reason—Plaintiff's failure to achieve the "high quality" standard for teaching—is but one of the reasons for its conduct, another of which was discrimination. Indeed, the Plaintiff has presented no evidence of discrimination to the Court, and the Court has found no evidence of discrimination in the record. The Court must conclude Plaintiff's FMLA retaliation claim involves neither pretext nor mixed-motives.[20]

## F.    *Title IX Claim (Count 30)*

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). As pleaded, Plaintiff's Title IX claim appears to be based on sex discrimination. "Title IX does not afford a private right of action for employment discrimination on the basis of sex in federally funded educational institutions." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Title VII provides the exclusive remedy for individuals alleging employment *discrimination* on the basis of sex in federally funded educational institutions." *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) (emphasis added); *see, e.g*, *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1118 (5th Cir.), cert. denied, 211 L. Ed. 2d 28, 142 S. Ct. 101 (2021) (discussing the same and distinguishing employment discrimination and employment retaliation).[21]

---

[20]  "If a district court does not have substantial evidence before it supporting a conclusion that both a legitimate and illegitimate motive may have played a role in the employment action, then the court would not abuse its discretion in determining that the case does not involve mixed motives." *Wilson v. L&B Realty Advisors, LLP*, No. 3:20-CV-2059-G, 2022 WL 102564, at *17 (N.D. Tex. Jan. 11, 2022) (citing *Adams v. Mem'l Hermann*, 973 F.3d 343, 354 (5th Cir. 2020)).

[21]  "Despite the general rule, Fifth Circuit precedent provides that there are some exceptions to Title VII preemption of Title IX claims made by employees of federally funded institutions." *Stollings v. Tex. Tech. Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *12 (N.D. Tex. Aug. 25, 2021). However, none of the exceptions apply to this case.

Defendants assert that Plaintiff's Title IX claim falls within the exclusivity of Title VII employment discrimination based on sex in federally funded educational institutions. *See Lakoski*, 66 F.3d at 754). Plaintiff has presented no evidence in support of her Title IX claim. The Court has found no evidence in the record in support of Plaintiff's Title IX claim.

As pleaded, Plaintiff's allegations appear to be based on the kind of employment discrimination Title VII was designed to address rather than the sex-based discrimination in education programs or activities that Title IX was designed to prohibit. *See Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 276 (5th Cir. 2017) (adjudicating a student's sexual harassment claim against a school district). Moreover, Plaintiff failed to provide evidence that her Title IX allegations could be tied to any of the exceptions to Title VII's exclusivity. *See, e.g.*, *Taylor-Travis*, 984 F.3d at 1118 (explaining the test for a Title IX retaliation claim that is not covered by Title VII).

The Court must conclude Plaintiff has failed to carry her summary judgment burden, and Plaintiff has failed to assert a valid Title IX claim. Thus, the Court must grant summary judgment in favor of Defendants. *See Lakoski*, 66 F.3d at 753. Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's Title IX claim. The Court dismisses Plaintiff's Title IX claim (Count 30).

## IV.  CONCLUSION

Although Defendant's summary judgment evidence supports a few elements of Plaintiff's various prima facie burdens, the record before the Court is not sufficient to carry Plaintiff's burdens on any of her claims. Plaintiff does not otherwise raise a genuine issue of material fact on her claims. The Court is therefore persuaded that summary judgment in favor of Defendants is appropriate. *See, e.g.*, *Sterling v. United States*, No. 3:18-CV-0526-D, 2020 WL 1529184, at *2 (N.D. Tex. Mar. 31, 2020) (dismissing claims on summary judgment due to absence of evidence in support of claims); *Associates Health & Welfare Plan v. Mack*, 3:98-CV-1725-G, 1999 WL

102813, at *1 (N.D. Tex. Feb. 19, 1999) (dismissing claims on summary judgment due to absence of evidence in support of claims). For the above reasons, Defendants' Motion for Summary Judgment (Doc. 126) is GRANTED. All of Plaintiff's remaining counts (Counts 9 to 30) are hereby dismissed with prejudice.

**SO ORDERED.**

January 19, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE