**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CHERYL BUTLER | § | |
| | § | |
| *Plaintiffs*, | § | Civil Action 3:18-cv-00037-E |
| | § | |
| vs. | § | |
| | § | |
| JENNIFER M. COLLINS, ET AL., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDATN'S MOTION TO DISMISS**

TO THE HONORABLE ADA BROWN:

Plaintiff Cheryl Butler ("Plaintiff") submits this memorandum responding to the motion to dismiss filed by filed by Defendants Jennifer M. Collins, Steven C. Currall, Roy P. Anderson, Paul Ward, Julie Patterson Forrester Rogers, and Harold Stanley ("Defendants").

**Law of the Case**

Defendants previously filed a motion to dismiss the claims of defamation, fraud, and conspiracy for failure to state a claim. (Doc. 16). Defendants made the same argument in their previous motion as they make in this one: lack of plausibility, statute of limitations, privileged statements to EEOC, and republication. Compare Doc. 16 to Doc. 245. This Court granted the first motion and the Fifth Circuit

reversed the order dismissing the claims. *Butler v. Collins*, No. 23-10072, 2025 WL 1753612, at *2 (5th Cir. June 25, 2025). The law of the case prevents reconsideration of the motion. The law of the case doctrine generally prevents reexamination of issues of law or fact decided on appeal either by the district court on remand or by the appellate court itself on a subsequent appeal. *Anderson v. Hutson*, 114 F.4th 408, 416–17 (5th Cir. 2024), cert. denied sub nom. *Hutson v. United States*, 146 S. Ct. 404 (cleaned up). The issues need not have been explicitly decided; the doctrine also applies to those issues decided by necessary implication. *Id.* The Fifth Circuit's decision settles the matter. Filing a new motion to dismiss for failure to state a claim after losing on preemption is an improper attempt to obtain the same result—dismissal—through a different procedural route.

**The Pleading Is Sufficient**

Regardless of law of the case, the pleading is sufficient. When considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). A complaint survives a Rule 12(b)(6) challenge if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability; it requires only that the factual allegations permit a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Butler's Second Amended Complaint—spanning 136 pages and 873 paragraphs, supported by recordings, written communications, and faculty testimony—satisfies that standard.

The Second Amended Complaint identifies the specific statements alleged to be false, the persons who made them, the audiences to whom they were published, the approximate dates, and the reasons the speakers knew the statements were false. *See, e.g.*, Doc. 12 ¶¶ 451–453 (Collins's November 2015 letter falsely stating the committee resigned because Butler "complained so much"); ¶¶ 455–58 (Anderson's tenure-meeting statement that Butler is "a pathological liar"); ¶¶ 564–606 (sixteen individually itemized defamatory statements with publishers, dates, and publication contexts). This is not a complaint that merely invokes the word "defamation." It identifies specific false statements of fact, published to third parties, injurious to Butler's professional reputation as a law professor. The fraud and fraudulent-concealment claims are equally well-pleaded. Butler identifies Collins as the speaker who denied the existence of the tenure report's accusations; the specific written denial in response to Butler's inquiry; the date of that communication; and the evidence—contemporaneous tape recordings of faculty meetings—showing that Collins knew the denial was false at the time she made it. Doc. 12 ¶¶ 607–612. That is textbook Rule 9(b) compliance. Because the defamation and fraud claims are adequately pleaded and survive, the derivative conspiracy claim survives as well.

*See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (civil conspiracy requires an underlying tort).

**<u>Statute of Limitations</u>**

The defamation claims survive the one-year statute of limitations for at least three independent reasons: (1) republication to new audiences reset the limitations period; (2) Defendants' fraudulent concealment tolled the period; and (3) the discovery rule applies because the defamatory statements were contained in a document Defendants deliberately withheld.

**1. Republication to New Audiences Reset the Limitations Clock.**

Under Texas law, each communication of a defamatory statement to a new audience constitutes a new publication that restarts the statute of limitations. *See* Restatement (Second) of Torts § 577A (1977); *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 639 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Butler's complaint alleges that the defamatory statements were published on multiple occasions to audiences distinct from the original tenure-committee members: Dean Collins republished them to Provost Currall in May 2016 in her own report; the statements were republished to SMU's internal investigator Samantha Thomas in January through May 2017; and Professor Weaver disclosed the contents of the tenure report to an entirely new audience—Butler's husband and children—in Fall 2016. Doc. 12-5, Ex. E at 19–20. These disclosures to persons who had not been part of the original

tenure proceedings plainly constitute new publications. Defendants contend that all republications were to the "same audience." That contention misreads the complaint. Butler alleges publications to Provost Currall, to the internal investigator, and to Butler's own family members—none of whom were part of the original tenure vote. Accepting the complaint's well-pleaded facts as true, as the Court must, republication to new audiences is adequately alleged and the question of whether those audiences were in fact new is a fact question unsuitable for resolution on a motion to dismiss.

**2. Fraudulent Concealment Tolled the Limitations Period.**

When a defendant's fraudulent concealment prevents a plaintiff from discovering the existence of a claim, the limitations period is tolled until the plaintiff knew or should have known of the claim. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). To invoke the doctrine, a plaintiff must show (1) the defendant concealed the conduct forming the basis of the claim, and (2) the plaintiff failed to discover the claim despite exercising due diligence. *Id.*

Butler's complaint alleges both elements in detail. Dean Collins told Butler in writing that no defamatory accusations whatsoever had been made against her during the tenure process—a representation Butler could not readily contradict because SMU simultaneously withheld the tenure report itself. Doc. 12 ¶¶ 608–610. It was not until SMU filed its EEOC Position Statement in December 2017 that Butler first

learned the specific content of the defamatory statements. Doc. 12-5 at 3. Butler then submitted her retraction demand in July 2017—within one year of that first notice. The complaint thus pleads, with the specificity required by Rule 9(b), the who, what, when, and why of Defendants' fraudulent concealment: Dean Collins was the speaker; the concealment was the written denial that any accusatory statements existed; the denial was made upon receipt of Butler's inquiry following the tenure vote; and it was fraudulent because contemporaneous tape recordings confirm that Collins and other Defendants knew the statements had been made. Doc. 12 ¶ 604–606. A complaint need not prove fraudulent concealment; it need only plead it with particularity. Butler has identified the concealing actor, the false statement, the date, and the basis for inferring knowledge of falsity. That is all Rule 9(b) requires at the pleading stage.

### 3. The Discovery Rule Applies Because the Defamatory Statements Were Fraudulently Withheld.

Texas courts apply the discovery rule when the nature of the injury is "inherently undiscoverable." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). Plaintiff pleads the discovery rule and a defendant moves for summary judgment on the basis of limitations, the defendant must conclusively prove the date of accrual and negate the discovery rule. *Wheeler*, 95 S.W.3d at 637. To negate the discovery rule, Defendants have the burden to prove, as a matter of law, that there is no genuine issue of material fact about when Butler discovered or, through the

exercise of reasonable diligence, should have learned of the existence of the false statement. *See id.* Defendants have not met this burden.

Where a defendant deliberately withholds the document in which defamatory words appear, the plaintiff cannot reasonably discover the "exact words" of the defamation until that document is produced. A plaintiff cannot be expected to request retraction of words the plaintiff has never seen. The Defamation Mitigation Act requires a claimant to identify "with particularity the statement alleged to be false and defamatory." Tex. Civ. Prac. & Rem. Code § 73.055(d)(3). Where the defendant withholds the document containing the publication, the plaintiff lacks the information necessary to satisfy that requirement and cannot reasonably discover the precise defamatory language. Under Texas discovery-rule principles, an injury is not discoverable until it can be identified through reasonable diligence. *Childs v. Haussecker*, 974 S.W.2d 31, 40–44 (Tex. 1998). A defendant who conceals the publication cannot invoke statutory deadlines triggered by knowledge of the publication while simultaneously preventing access to the publication itself. See *Borderlon v. Peck*, 661 S.W.2d 907, 908–09 (Tex. 1983). Defamation claims under the Texas Defamation Mitigation Act preserve a plaintiff's right to demand retraction and seek exemplary damages until the plaintiff receives and reads the document containing the exact defamatory language.

Butler alleges "Dean Collins responded to Professor Butler in writing by denying that any such statements existed in the tenure report." ¶ 610. She further alleges, "Members of the Law Faculty testify on tape that Dean Collins and other defendants are lying about the defamatory and or discriminatory statements." ¶ 611. Butler alleges further facts of cover-up and concealment of defamatory statements in paragraphs 612-21 of the Second Amended Complaint. In Exhibit D to the complaint, Butler alleges, "Upon information and belief, Ms. Butler has additional claims of defamation that have not been uncovered because of the actions of SMU and its agents." Doc. 12-4.

Butler also alleges, "Upon information and belief, SMU not only placed false and defamatory character attacks in Professor Butler's employment file, without her knowledge, but then engaged several top administrators and the entire tenured law faculty in a bold scheme to deny that the defamatory content was ever placed in the tenure report in the first place." Doc. 12-5, Exhibit E.

In discovery, Defendants produced documents confirming the defamation and concealment. The claims of defamation are 1) character/honesty attacks—she is a liar, pathological liar, morally depraved, "crazy;" 2) fitness as a lawyer/professor—unfit to be an attorney or law professor, 3) lacks skill unique to profession; professional misconduct/dereliction—late grades, no-shows, failed to prepare exams, failed to order books; and 4) FMLA fraud—faked illness, forged medical

documents, lied about needing leave. Examples of documents produced by Defendants after the lawsuit supporting the defamation or concealment are an email showing the existence of a Faculty Tenure Box and information withheld from the Box (Appx. 6, Ex. 3) and an email to police considering Plaintiff as a threat (Appx 32, Ex. 14).

SMU withheld Butler's tenure report throughout her employment and through the administrative proceedings. The report was first effectively disclosed—though still not fully produced—when SMU quoted from it in SMU's EEOC Position Statement disclosed to Plaintiff in December 2017. Doc. 12-5. This after the filing of the lawsuit and before the Second Amended Complaint. Because Butler could not have discovered the exact defamatory words before that date, the limitations period did not begin to run until then and her claims are timely. The tenure report remains in Defendants' custody, and Defendants should not be permitted to benefit from a limitations bar attributable to their own withholding of the very document on which the claims are based. The statute of limitations does not begin on these statements until they are produced.

**The EEOC Privilege**

The Position Statement is the mechanism by which Defendants disclosed to Butler—for the first time—the same statements that had been made during the tenure process years earlier and concealed from her. Doc. 12-5 at 3 ("the newly discovered

defamatory statements, admitted to by Defendants in SMU's Position Paper, were unknown to Plaintiff because Defendants had fraudulently concealed the statements"). Defendants' use of the EEOC Position Paper as a sword cuts against them. Having submitted the Position Paper to impeach Butler's discrimination charge, Defendants cannot simultaneously invoke the privilege as a shield against defamation claims arising from that same document. The tape recordings referenced in the complaint, which corroborate the original tenure-meeting statements, provide an independent basis for the defamation counts that does not depend on the Position Paper at all.

**Right to Amend**

Granting leave to amend is appropriate when the trial court has dismissed the complaint for failure to state a claim. *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case," particularly when "the trial court has dismissed the complaint for failure to state a claim." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (quoting *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977)). *See also Amanduron v. Am. Airlines*, 416 Fed. Appx. 421, 424 (5th Cir. 2011). To the extent the Court finds the complaint insufficiently states a claim, Plaintiff requests an opportunity to amend to cure any defect.

WHEREFORE, Plaintiff requests that Defendants' motion be denied.

Respectfully submitted,

/s/ *Brian P. Sanford*

Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com
**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

Kenneth Royce Barrett
Tex. Bar. No. 01812200
KennethRoyceBarrettLaw@Yahoo.com
KRB Law
3740 Greenbriar #541873
Houston, TX 77254
281-433-0837
346-980-4615 (fax)

**ATTORNEYS FOR PLAINTIFF CHERYL BUTLER**

## CERTIFICATE OF WORD COUNT

Pursuant to the Court's Procedure for Cases Assigned to District Judge Ada Brown and Standing Order, I hereby certify that this Motion and Brief in Support contains 2201 words (excluding items such as case caption, table of contents, table of authorities, signature block, and certificates).

*/s/ Brian P. Sanford*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document has been served via electronic filing on June 5, 2026 to counsel of record.

*/s/ Brian P. Sanford*